**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| BOARD OF REGENTS, THE UNIVERSITY OF TEXAS SYSTEM; and TISSUEGEN, INC., <br><br>    Plaintiffs, <br><br> v. <br><br> BOSTON SCIENTIFIC CORP., <br><br>    Defendant. | Case No. 1:17-CV-01103-LY |

**DEFENDANT BOSTON SCIENTIFIC CORPORATION'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(B)(3)**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. THERE IS NO DISAGREEMENT THAT VENUE IS IMPROPER UNDER THE PATENT VENUE STATUTE ............................................................................................. 1

III. PLAINTIFFS' CLAIMS ARE NOT COVERED BY THE ELEVENTH AMENDMENT NOR OTHER SOVEREIGN IMMUNITY CONSIDERATIONS .......... 2

    A. Eleventh Amendment Sovereign Immunity Does Not Apply to Plaintiffs' Claims Against BSC ................................................................................................ 3

    B. The Patent Venue Statute Is Not Unconstitutional ................................................. 7

IV. CONCLUSION .................................................................................................................... 8

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*A123 Systems, Inc. v. Hydro-Quebec*,
   626 F.3d 1213 (Fed. Cir. 2010) ................................................................................................7

*Alden v. Maine*,
   527 U.S. 706 (1999) ................................................................................................................4, 5

*Biomedical Patent Management Corp. v. California, Department of Health Services*,
   505 F.3d 1328 (Fed. Cir. 2007) ................................................................................................7

*Clark v. Barnard*,
   108 U.S. 436 (1883) ..................................................................................................................3

*College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*,
   527 U.S. 666 (1999) ..............................................................................................................7, 8

*Ex parte Ayers*,
   123 U.S. 443 (1887) ..................................................................................................................5

*Fed. Maritime Comm'n v. S.C. State Ports Auth.*,
   535 U.S. 743 (2002) ..............................................................................................................4, 5

*Gunter v. Atlantic Coast Line R.R.*,
   200 U.S. 273 (1906) ..................................................................................................................3

*Hess v. Port Auth. Trans-Hudson Corp.*,
   513 U.S. 30 (1994) ....................................................................................................................5

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) ................................................................................................2

*Kimel v. Fla. Bd. Of Regents*,
   528 U.S. 62 (2000) ................................................................................................................4, 5

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*,
   535 U.S. 613 (2002) ..................................................................................................................3

*Nellcor Puritan Bennett, Inc. v. Smiths Med. Int'l Ltd.*,
   No. 3:04-cv-01934-VRW (N.D. Cal. Dec. 9, 2004) .................................................................7

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ................................................................................................................5, 6

*Port Auth. Trans-Hudson Corp. v. Feeney*,
    495 U.S. 299 (1990)..................................................................................................5, 6

*Regents of the University of California v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997)..........................................................................3, 4, 5, 6

*Regents of University of New Mexico v. Knight*,
    321 F.3d 1111 (Fed. Cir. 2003)...........................................................................3, 6, 7

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996)......................................................................................................5

*Stonite Prods. Co. v. Melvin Lloyd Co.*,
    315 U.S. 561 (1942)....................................................................................................1

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1515 (2017).............................................................................................1, 2

*Tegic Communications Corp. v. Board of Regents of the University of Texas System*,
    458 F.3d 1335 (Fed. Cir. 2006)..................................................................................7

**STATUTES**

28 U.S.C. § 1400(b) .........................................................................................................1, 2

28 U.S.C. § 1406(a) ............................................................................................................1

**OTHER AUTHORITIES**

U.S. Const. amend. XI ...........................................................................................1, 3, 4, 5, 6

I.      INTRODUCTION

When federal venue is improper, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  In its Motion to Dismiss, Defendant Boston Scientific Corporation ("BSC") explained that under the patent venue statute and recent Supreme Court decision *TC Heartland*, venue is not proper in this District, because BSC neither resides here nor has a regular and established place of business here.  Plaintiffs Board of Regents, the University of Texas System ("Board of Regents") and TissueGen, Inc. ("TissueGen") do not contest that venue is improper under the patent venue statute.  Plaintiffs instead argue that "the exclusive provision controlling venue in patent infringement proceedings" does not control venue in this patent infringement proceeding because Board of Regents' sovereign immunity allows Plaintiffs to ignore the patent venue statute.  Siding with Plaintiffs here then requires finding:  (1) Eleventh Amendment sovereign immunity protections apply to a party which has voluntarily availed itself of federal court, in contravention to Supreme Court and Federal Circuit precedent; (2) sovereign immunity allows a plaintiff in federal court to ignore federal venue requirements and prevent transfer, arguments with no reliable precedent; (3) the patent venue statute is unconstitutional, based on case law that contradicts such an argument; and (4) a private entity may claim the benefits of sovereign immunity, an argument Plaintiffs never present.  None of these are tenable, much less all of them.

II.     THERE IS NO DISAGREEMENT THAT VENUE IS IMPROPER UNDER THE PATENT VENUE STATUTE

Venue in patent cases is dictated by the patent venue statute, 28 U.S.C. § 1400(b), "the exclusive provision controlling venue in patent infringement proceedings." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1515, 1518 (2017) (*quoting Stonite Prods. Co. v.*

*Melvin Lloyd Co.*, 315 U.S. 561, 563 (1942)). Under § 1400(b), venue in patent infringement cases is proper only in a district where either (1) "the defendant resides" or (2) "the defendant has committed acts of infringement and has a regular and established place of business." In *TC Heartland*, the Supreme Court clarified that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." 137 S. Ct. at 1517. And the Federal Circuit has explained that "a regular and established place of business" requires a defendant to have a "physical place in the district." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Plaintiffs' Complaint does not even refer to § 1400(b), much less plead allegations that would make venue proper under § 1400(b). (*See generally* Doc. No. 1.) Nor could it. As explained in BSC's Motion to Dismiss, BSC does not reside in this District because it is incorporated in the District of Delaware. (Doc. No. 11 at 2–4.) And it does not own or lease a place of business here. (Doc. No. 11 at 4–5.) Plaintiffs' Response in Opposition to BSC's Motion to Dismiss only refers to the patent venue statute in passing and does not attempt to refute BSC's argument that venue is improper under § 1400(b). (*See generally* Doc. No. 14.)

### III. PLAINTIFFS' CLAIMS ARE NOT COVERED BY THE ELEVENTH AMENDMENT NOR OTHER SOVEREIGN IMMUNITY CONSIDERATIONS

Unable to refute BSC's argument that venue is improper under the patent venue statute, Plaintiffs instead claim that Board of Regents' sovereign immunity allows them to disregard the patent venue statute and select a venue that is improper. As discussed in BSC's motion to dismiss, and as discussed further below, this assertion is wrong as a matter of law. In response to BSC's motion, Plaintiffs now argue that if a state can be required to comply with the patent venue statute, the statute must be unconstitutional. This argument also should be rejected.

### A. Eleventh Amendment Sovereign Immunity Does Not Apply to Plaintiffs' Claims Against BSC

Claims brought by a State in federal court are not subject to sovereign immunity under the Eleventh Amendment: "[W]here a state voluntarily become [sic] a party to a cause, and submits its rights for judicial determination, it would be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment." *Gunter v. Atlantic Coast Line R.R.*, 200 U.S. 273, 284 (1906) (*citing Clark v. Barnard*, 108 U.S. 436, 477 (1883)); *see* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted *against* one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." (emphasis added)). As the Supreme Court has noted, it would be "anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (holding that a state's removal of suit to federal court constituted waiver of its Eleventh Amendment immunity).[1]

As discussed in BSC's Motion to Dismiss, the Court of Appeals for the Federal Circuit explicitly rejected the same Eleventh Amendment venue argument made by Plaintiffs here in *Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997), *cert. denied*, 523 U.S. 1089 (1998).[2] As Plaintiffs argue here, the University of California ("UC")

---

[1] Although Plaintiffs themselves cite this statement from *Lapides*, (Doc. No. 14 at 5), they fail to note the next sentence of *Lapides*, which points out that "a Constitution that permitted States to follow their litigation interests freely asserting both claims in the same case could generate seriously unfair results." 535 U.S. at 619.

[2] In patent suits, "the question of Eleventh Amendment waiver is a matter of Federal Circuit law." *Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1124 (Fed. Cir. 2003).

3

argued that the state entity had only waived its sovereign immunity to suit in the specific federal district in which it had filed suit. The Federal Circuit rightly concluded that there was no "waiver" issue at all, insofar as the state entity itself had filed suit: "[W]e need not determine whether UC waived its immunity only in California, because this case does not create an Eleventh Amendment jurisdictional issue concerning which the question of waiver even arises. This case only involves UC's patent infringement claims and Lilly's defenses; it does not involve any claim or counterclaim against UC that places UC in the position of the defendant." *Id.* at 1565.

Plaintiffs' attempts to distinguish this action from *Eli Lilly* are unavailing. Their first attempt to do so centers on the assertion of "sovereign rights," unmoored from the Eleventh Amendment that would allow a state entity and its business partners unfettered power to choose federal venue wherever personal jurisdiction exists. (Doc. No. 14 at 10.) There is no support cited (or available) for this proposition. "[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel*, 528 U.S. at 73. But states do not have an unconditional right to select federal venue for a forum in which to bring suit, even where venue is improper under federal law. Plaintiffs also assert that, "[u]nlike *Eli Lilly*, it cannot be said that this case lacks claims against a sovereign." (Doc. No. 14 at 10.) BSC, however, has not filed any counterclaims against the Plaintiffs. There are no claims against any sovereign entity before the Court.

Lastly, Plaintiffs' contention that the Supreme Court's decision in *Alden v. Maine*, 527 U.S. 706 (1999), and/or the Federal Circuit's decision in *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743 (2002), somehow altered or limited the holding of *Eli Lilly* is without merit. Neither case involved an examination of the proper federal venue for

4

suit against a state entity. Indeed, neither case involved suits originally filed in federal court. In both, state entities were defendants seeking to avoid adjudication of complaints against them, one in state court, *Alden*, 527 U.S. at 712, and one in a federal agency, *Federal Maritime Commission*, 535 U.S. at 747–49. In short, Plaintiffs' attempts to distinguish *Eli Lilly* are premised upon mischaracterizations of *Eli Lilly*, the facts of this case, and case law subsequent to *Eli Lilly*.

The case law that Plaintiffs introduce in support of their position fares no better. In particular, the cases cited by Plaintiffs merely stand for the accepted proposition that the Eleventh Amendment provides each state with "sovereign immunity from suits *against* the State in federal courts." (Doc. No. 14 at 3 (emphasis added).)[3] None of the cases involve a state entity that voluntarily availed itself of the court system. And none of the cases involve a state entity that claimed that the Eleventh Amendment permitted it to file suit in an otherwise improper venue. Plaintiffs cite to the Court's statement in *Pennhurst* that "[a] State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." (Doc. No. 14 at 4 (*citing* 465 U.S. at 99).) Venue, however, was not at issue in *Pennhurst*. The Court's discussion of "where" a State may be sued referred to the distinction between federal and state courts, not between federal venues: "For this reason, the Court consistently has held that a State's waiver of sovereign immunity *in its own courts* is not a waiver of the Eleventh Amendment immunity *in the federal courts*." 465 U.S. at 99 n.9 (emphasis added). Moreover,

---

[3] *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743 (2002); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000); *Ex parte Ayers*, 123 U.S. 443 (1887); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (1990).

the state entities claiming sovereign immunity were *defendants*, not plaintiffs that availed themselves of the prerogative to bring suit in federal court. *Id.* at 92.

*Feeney* is equally inapposite, if not more so, and certainly does not stand for the proposition that "a State may control the venue in which it litigates." (Doc. No. 14 at 4 (*citing* 495 U.S. at 307).) Whether federal venue was proper was not at issue in *Feeney*. Instead, like *Pennhurst*, the case concerned whether jurisdiction was proper in *any* federal court. *Feeney*, 495 U.S. at 300–01 ("These cases call upon the Court to determine whether the Eleventh Amendment bars respondents' suits in federal court against an entity created by New York and New Jersey . . . ."). And as in *Pennhurst*, the state entity claiming sovereign immunity was a defendant hailed into federal court, not the plaintiff. *Id*. at 301–02.[4]  In *Eli Lilly*, the Federal Circuit rightly rejected the plaintiff's' reliance on *Feeney* and *Pennhurst*: "[T}he [Supreme] Court did not construe the Eleventh Amendment to apply to suits in which a state is solely a plaintiff, as UC is here. In fact, we do not believe that the Court has ever so construed the Eleventh Amendment. This is because the Eleventh Amendment applies to suits 'against' a state, not suits by a state." *Eli Lilly*, 119 F.3d at 1564.

Plaintiffs also wrongly claim that waiver of sovereign immunity "applies only to compulsory counterclaims in that forum." (Doc. No. 14 at 5.)  For this proposition, Plaintiffs cite *Regents of University of New Mexico v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003).  In *Regents*, however, the issue of the proper "forum" turned — as in the cases discussed above — on whether the state entity was susceptible to a counterclaim in any federal court, not whether it

---

[4] Plaintiffs cite the Court's statement to the effect that "issues of venue are closely related to those concerning sovereign immunity." *Feeney*, 495 U.S. at 307.  The cited language, however, explained the extent to which a state venue statute can evidence a state statutory waiver of sovereign immunity to suit in federal court.

could only be sued in a specific federal venue. *See* 321 F.3d at 1124–26 (referencing "federal court" but not "venue").[5]

### B. The Patent Venue Statute Is Not Unconstitutional

Lastly, Plaintiffs argue that unless they are allowed to ignore the patent venue statute, the Board of Regents "must waive its rights to choose the forum and instead seek redress in a forum outside of the State's borders" which — they claim — would be "an untenable affront to State dignity."[6] (Doc. No. 14 at 7.)  In making this argument, Plaintiffs appear to assert that transfer to another venue would be unconstitutionally coercive because it would expose a state entity to counterclaims in another federal district.  Like the cases discussed above, however, *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999), dealt with the issue of whether a state entity was amenable to suit in any federal district; the court was not considering whether a federal suit was properly brought in the particular venue. 527 U.S. at 690 ("[W]e hold that the federal courts are without jurisdiction to entertain this suit against an arm of the State of Florida."). *College Savings Bank* goes on to

---

[5] The other cases Plaintiffs cite are readily distinguishable. *Tegic Communications Corp. v. Board of Regents of the University of Texas System*, 458 F.3d 1335 (Fed. Cir. 2006), involved a "new action brought by a different party" against the state entity, which was seeking to avoid federal jurisdiction, not the requirements of federal venue.  458 F.3d at 1343.  Both *Biomedical Patent Management Corp. v. California, Department of Health Services*, 505 F.3d 1328 (Fed. Cir. 2007), and *A123 Systems, Inc. v. Hydro-Quebec*, 626 F.3d 1213 (Fed. Cir. 2010), involved distinct suits against the state entity, wholly separate from the original suit filed by the state entity.  The state entities were once again defendants in the separate suits and asserted sovereign immunity to avoid federal jurisdiction.  626 F.3d at 1219–20.  Lack of waiver in both cases was predicated on the existence of the separate actions against the state entity.  *Id.*  No separate action against Plaintiffs exists here.  No counterclaims have been asserted against Plaintiffs.  Plaintiffs are not attempting to avoid federal jurisdiction.  Plaintiffs' sovereign immunity is inapplicable.

[6] Notably, the Board of Regents has previously filed patent infringement actions outside of Texas, apparently without this concern.  *See* First Amended Complaint for Patent Infringement, *Nellcor Puritan Bennett, Inc. v. Smiths Med. Int'l Ltd.*, No. 3:04-cv-01934-VRW (N.D. Cal. Dec. 9, 2004), ECF No. 37 (patent infringement suit in the Northern District of California in which the Board of Regents was a plaintiff).

7

confirm "the unremarkable proposition that a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts." 527 U.S. at 681 n.3.  Plaintiffs did so here by filing suit against BSC in this District.  Because venue is improper in this district (as Plaintiffs appear) to concede, the action should be dismissed.

## IV. CONCLUSION

For the reasons set forth in BSC's Motion to Dismiss and those discussed above, BSC respectfully requests the Court dismiss the Complaint for improper venue without leave to amend.  In the alternative, BSC respectfully requests the Court transfer this action to the U.S. District Court for the District of Delaware.

Dated: February 22, 2018

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Christopher M. Odell*
Christopher M. Odell
Texas Bar No.: 24037205
christopher.odell@arnoldporter.com
700 Louisiana Street, Suite 4000
Houston, Texas  77002-2755
Telephone: +1 713.576.2400
Fax: +1 713.576.2499

John E. Nilsson
District of Columbia Bar No.: 492381
john.nilsson@arnoldporter.com
Matthew M. Wolf
District of Columbia Bar No.: 454323
matthew.wolf@arnoldporter.com
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Fax: +1 202.942.5999

Attorneys for Defendant
BOSTON SCIENTIFIC CORP.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on February 22, 2018.

                                            */s/ Christopher M. Odell*
                                            Christopher M. Odell