```
1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3

4    BOARD OF REGENTS, THE              )
     UNIVERSITY OF TEXAS SYSTEM et      )
5    al.,                              )     Case No.
             Plaintiffs,               )     18-392-GBW
6      v.                              )
                                       )
7    BOSTON SCIENTIFIC CORP.,          )
                                       )
8                 Defendant.

9
                             - - - -
10

11                           Wilmington, Delaware
                             Thursday, January 2, 2023
12                            Pretrial Conference

13                           - - - -

14

15    BEFORE:   HONORABLE GREGORY B. WILLIAMS
                UNITED STATES DISTRICT COURT JUDGE
16

17                           - - - -

18

19

20

21

22

23

24

25
                             Michele L. Rolfe, RPR, CRR
```

APPEARANCES:

          STAMOULIS & WEINBLATT LLC
          BY: STAMATIOS STAMOULIS, ESQ.

                    -and-

          SHORE CHAN DEPUMPO LLP
          BY: CHIJIOKE OFFOR, ESQ.
              COREY LIPSCHUTZ, ESQ.
              MICHAEL SHORE, ESQ.

                    Counsel for Plaintiffs

          FARNAN LLP
          BY: MICHAEL FARNAN, ESQ.

                    -and-

          FAEGRE DRINKER BIDDLE & REATH LLP
          BY: TIMOTHY GRIMSRUD, ESQ.
              CHAD DROWN, ESQ.
              LAUREN BARTA, ESQ.
              DAVID GROSS, ESQ.
              KATHERINE RAZAVI, ESQ.
              EVAN KLINE-WEDEEN, ESQ.

                    Counsel for Defendant

```
 1
 2                            - - - - -
 3                    P R O C E E D I N G S
 4            (REPORTER'S NOTE: The following pretrial conference
 5    was held in Courtroom 6B, beginning at 3:00 p.m.)
 6                    THE COURT:  All right.  Good afternoon.  You may
 7    be seated.
 8                    All right.  We are here for the final pretrial
 9    conference in Board of Regents versus Boston Scientific.
10    Civil Action No. 18-392.
11                    Let's start by having counsel put your
12    appearances on the record.
13                    MR. STAMOULIS:  Good afternoon, Your Honor.
14                    Stamatios Stamoulis here on behalf of the
15    plaintiffs.  With me at counsel table are Michael Shore and,
16    the Chijioke Offor and Corey Lipschutz.
17                    Thank you, Your Honor.
18                    MR. FARNAN:  Good afternoon, Michael Farnan for
19    Boston Scientific.  With me today are Tim Grimsrud, Chad
20    Drown, Lauren Barta, David Gross, Kate Razavi, Evan
21    Kline-Wedeen who are from Faegre Drinker.  And from Boston
22    Scientific Matt Truitton.
23                    THE COURT:  All right.  Good afternoon, all.
24                    All right.  So we have a number of things to get
25    to today.  The first thing that I wanted to talk about or
```

1     deal with was to the UT's application for judicial notice.

2     There's a statement of uncontested facts and that's sort of

3     where you deal with those type of issues.

4              To the extent that a fact has not been agreed

5     to, UT must prove it at trial.

6              Next issue is dealing with sequestering of

7     corporate representatives.  For that, I'm going to grant

8     UT's request.  Representatives are permitted to attend trial

9     pursuant to Federal Rule of Evidence 615(2).

10             MR. SHORE:  Your Honor, may I point out one

11    thing to the Court quickly?

12             THE COURT:  Yes.

13             MR. SHORE:  I have been doing this 32 years, and

14    I understand now that every year you see something new.  So

15    the request for judicial notice, I'm not sure if you're

16    aware of this, every fact in it was a fact that Boston

17    Scientific admitted in response to the complaint.  In

18    32 years, I have never seen a party refuse to stipulate to

19    facts that they have already admitted to be true in their

20    response to a complaint.  So I just want to make sure the

21    Court was aware that what they are telling us that we have

22    to go prove and spend our very limited amount of time that

23    we're provided to do are facts that they have admitted.  I

24    think it's an effort to force us to waste time, I think

25    it's -- I have never seen in it 32 years of practicing law

1    for someone to admit facts in the response to a complaint

2    and then refuse to stipulate to the facts that they

3    admitted.

4            So, I just want --

5            THE COURT:  You tried to get them to include

6    those facts in the uncontested facts?

7            MR. SHORE:  Yes; and they refused and they are

8    not contested, they are admitted.  And so that is amazing to

9    me that we now have to go through -- I understand the Court

10   has limited time, you have a busy docket, but one of the

11   reasons why the rules are if we have to go prove facts that

12   they refuse to admit, they have to pay our attorneys' fees.

13   That's the rules.  Here we have to prove facts that they've

14   admitted.

15           Now there may be a few -- I just got a note from

16   my colleague, there may be a few, a very few, but the vast

17   majority of facts that are that judicial notice are facts

18   that they've admitted to and refused to stipulate.

19           THE COURT:  Okay.  So let's do this, you guys

20   have time.  Certainly if there are facts that are clearly

21   admitted to in the pleadings, those facts -- UT should not

22   be required to prove those facts, so what I would suggest is

23   that the parties meet and confer further about this, try to

24   reach agreement on those statements of fact that are clearly

25   admitted.  If there a couple that there are some question

```
 1    about, then we can deal with those, then those seem

 2    reasonable for UT to be able to -- to have to prove at

 3    trial.  But if there are some that are clearly admitted, if

 4    there's a fact in the complaint and in your answer you say

 5    admitted, then let's not waste time like that.

 6              And to the extent, you know, we have issues like

 7    that where I feel -- we get to trial and I feel one party is

 8    being unreasonable, I'm going to reserve the right to charge

 9    time against that party for that, whether it deals with

10    objections or issues that should have been sort of agreed to

11    in advance, etc.

12              So moving on to the next issue --

13              MR. GRIMGRUD:  Your Honor, just for the record,

14    we disagree with the characterization of how they

15    characterize our pleading, but we'll meet and confer and

16    definitely try to resolve any issues.

17              THE COURT:  Okay.

18              MR. GRIMGRUD:  Per your instructions.

19              THE COURT:  All right.  Next deals with the

20    request for a surrebuttal in closing argument by Boston

21    Scientific.  The plaintiff gets rebuttal and we'll stop it

22    at that -- after UT's rebuttal, that's where it will stop.

23              Next scope of accused products, it's unclear to

24    the Court whether there's still an issue as to including

25    substantially similar products and the products that UT
```

1    accuses of infringement, whether that's still something

2    that's an issue.  And if so, I want to hear how that impacts

3    the trial, if at all.

4              MR. OFFOR:  Yes, Your Honor, I do believe it is

5    still an issue.  The University of Texas.

6              We are alleging that the Synergy products, both

7    those that were sold 2015 and later, are at issue as well as

8    their clinical products that were in the United States and

9    used in the clinical trials beforehand, so going back to

10   2011, our full damages period.

11             THE COURT:  But don't you have to identify the

12   specific products.  How is the jury going to determine if

13   what substantially similar products are and whether or not

14   those products infringe?

15             MR. OFFOR:  Yes, Your Honor, we've identified

16   them as Synergy -- let me say this differently.  They are

17   the same products, from our understanding, and from the

18   evidence that we have as the synergy commercial products.

19   They just go by the name -- they have a Synergy clinical and

20   a Synergy first human use.

21             THE COURT:  Okay.  So those are the products

22   that Synergy clinical and Synergy first human house.

23             MR. OFFOR:  Or FHU.

24             THE COURT:  Okay.  So you will specifically

25   identify them?

1           MR. OFFOR:  Yes.

2           THE COURT:  So when we instruct the jury, they

3    won't just be stuck with substantially similar products.

4           MR. OFFOR:  Yes.

5           THE COURT:  Okay.

6           MR. DROWN:  Good afternoon, Chad Drown from

7    fakery drinker.

8           What we understand the accused products are the

9    Synergy stents that are identified in their infringement

10   contentions and identified in their expert reports

11   infringement opinion.  Those are Synergy stents.

12          There's not substantially similar products that

13   are floating about that nobody knows what they are talking

14   about that are addressed.  And so we should just be

15   identifying Synergy stents as the accused products that are

16   at issue in the case.  It's pretty simple.  That's what

17   their expert said, we believe, and that's what's at issue in

18   the case.  They shouldn't be talking about substantially

19   similar products.  And that's why we didn't want to have a

20   description here in the pretrial order of accused products

21   that included something about some vague notion of

22   substantially similar products.

23          THE COURT:  Okay.  So are you saying that they

24   haven't previously identified Synergy clinical and Synergy

25   first human use?

1          MR. DROWN:  I would have to first double when he

2    can infringement contentions in Dr. Pitt's report, but they

3    would have to represent to the Court that those specific

4    products are in fact in those.  And we can double check

5    that.  But we think the products are the Synergy stents.

6    And if he, Dr. Pitt, specifically identified something else,

7    then we can deal with that, but we don't want to have a

8    pretrial order that has a vague thing about substantially

9    similar products.

10          THE COURT:  All right.  Okay.

11          MR. OFFOR:  Your Honor, in paragraph 3 of our

12    complaint, we identify the products that were sold after

13    2015 and we also say the products that were used in the

14    clinical trials as well.  And through discovery, we've

15    discovered that those -- the names that they go by are

16    Synergy clinical and Synergy first human use.  And so those

17    are at issue.  We have interrogatory responses that admit

18    that those things were -- those products, certain of those

19    products were imported in 2012, I believe it's a response to

20    interrogatory 21.  And so we have the evidence of that, we

21    brought this up before.

22          THE COURT:  Okay.  So are there any specific

23    instructions where you've identified those products and

24    where, you know, there's some disagreement between the

25    parties?

1          In reading the instructions, I don't remember

2     seeing Synergy clinical and Synergy first human use

3     anywhere.

4          MR. OFFOR:  Yeah, it's not in the instructions,

5     but in the characterization of the product, we said that it

6     includes these Synergy stents -- that is what they call

7     them -- and there's certain of them that we have damages

8     numbers for, because they were sold after 2015 commercially.

9     And then there's other stents that we know from the

10    testimony that were in, and we believe that they go by the

11    name "Synergy."  They've said they haven't changed anything

12    about the Synergy coding, which is the portion that we are

13    accusing of infringement, so they are a part of this case

14    and they've been on notice of that.

15          THE COURT:  Okay.

16          All right.  So you say that these products are

17    included in the term "Synergy stents"?

18          MR. OFFOR:  As we've defined it and I believe

19    there's a dispute there on how to define that term, but

20    that's -- our definition should include that.

21          THE COURT:  All right.  And how do you guys

22    respond to that?

23          MR. DROWN:  I guess the argument now is they say

24    Synergy stents are the accused products and not -- and all

25    substantially similar products, so we can take that and put

1     that away.

2              And now they are saying Synergy stents are the

3     ones that were sold commercially and then -- but that

4     includes some clinical one and some other grouping of stents

5     is how I understand what they're saying now.

6              I'm not aware of infringement contentions that

7     deal with Synergy stents other than the commercially sold

8     version, Your Honor.  We can look at that, we're looking at

9     the infringement contentions now and we're not seeing that.

10    They haven't shown us or you that today, but we can check

11    that.

12             But what I think we've gotten to some resolution

13    is that the pretrial order can say Synergy stents are what's

14    accused of infringement and delete the substantially similar

15    portion.

16             THE COURT:  Yeah, I think that's what -- at

17    least you've agreed that Synergy stents is the term that

18    will be used.  What included in that you guys will work out.

19             All right.  With respect to the allocation of

20    time for trial, that's going to stay what we previously gave

21    you.  So that's not going to change.

22             In terms of resolution of disputes, the pretrial

23    order provides that the parties must bring disputes about

24    deposition designations, exhibits and demonstratives to the

25    Court's attention.  So the Court is instructing the parties

1    to do the following:  To jointly notify the Court via

2    e-mail, both to the Court's e-mail address, which will be

3    provided with a cc -- with also including the direct e-mail

4    address of my law clerk that's on this case, Joe Liss, and

5    he will give you his e-mail address, of any objections to

6    witnesses, deposition designations or other evidence to be

7    presented that trial day before 6 a.m. on that trial day.

8            And the parties should arrive at the Court each

9    day no later than 9 a.m. prepared to discuss any outstanding

10   issues with the Court before we get started with the jury at

11   9:30.

12           With respect to copies of deposition

13   designations and witness binders, instead of two copies, the

14   Court is instructing the parties that the Court requires

15   three copies of all witness binders and deposition

16   designations; one for the court reporter, one for the clerk

17   and one for the judge.

18           Next issue is with respect to the phasing, the

19   two phases in this trial and the witnesses.  I didn't see

20   any designation about what witnesses will be used in phase

21   one and phase two, whether there are any distinctions, so I

22   wanted to clarify whether the parties anticipate objections

23   to use of certain witnesses or evidence in phase one.

24           MR. DROWN:  Your Honor, I can address that on

25   behalf of the defendants.

1          We have provided, under the pretrial exchange

2    process, an updated list in good-faith of witnesses that we

3    intend to call live, just this week I think we did it.  And

4    we included phased witnesses.

5          THE COURT:  Okay.

6          MR. DROWN:  So we included in our first phase

7    witnesses, it was:  Dominic Allocco, a Boston Scientific

8    witness.  Aparna Bhave, a Boston Scientific witness as will

9    call live.  Then we had Yen-Lane Chen, a may call live

10   witness from Boston Scientific.  And our expert, technical

11   expert Dr. Mooney.

12          We have not received a phased version of that

13   from the plaintiffs of what witnesses are going to be in

14   phase one and what witnesses are going to be in phase two.

15   And that would be, of course, helpful.

16          One issue we do want to just put out there is

17   that Mary Beth Moynihan from Boston Scientific will not be

18   coming in phase one, she is a phase two witness, that's the

19   knowledge intent witness that they -- their representative

20   met with.  And they want to talk to her about knowledge and

21   intent because one of their employees, that the Boston

22   Scientific person that they sent a presentation to.

23   Knowledge, intent that whole issue is in the second phase,

24   as Your Honor as ordered, so Mary Beth Moynihan will not be

25   coming in phase one.

1            The other thing we want to let the Court know

2    and the plaintiffs is that as we continue to try to narrow

3    the case and streamline things, we're not going to be

4    calling at trial live Yen-Lane Chen from -- she's a former

5    Boston Scientific engineer.  She'll just be by deposition.

6    She's not going to be called live.

7            So we've provided the grouping of phases.  And

8    then we have the second phase, we have second phase

9    witnesses as well.  We can let Your Honor know what those

10   are, but if we get to that phase, there will be a damages

11   expert, we have a physician that we can talk about.

12           In one thing that we can raise now or later,

13   Your Honor is -- and they may have the same issue, but these

14   physician experts are actual physicians, interventional

15   cardiologists that do these heart surgeries.  And we do have

16   a scheduling issue for our interventional cardiologist who

17   has a full patient surgery schedule that he's cutting out

18   time for in this case that we can talk about, potentially,

19   if there's a second phase having to do a -- calling him out

20   of order.  It may be we don't have to call him out of order,

21   but he has a limited window that he can break away from

22   surgeries, fly here and fly back the same night.

23           THE COURT:  Okay.  We can deal with that if and

24   when necessary.

25           MR. SHORE:  Your Honor, we'll supplement and

1    provide a list broken into phase one and phase two.

2           One of the issues that is going to come up is

3    that we have subpoenaed Boston Scientific to bring people to

4    the Court capable of testifying on certain subjects.  They

5    have refused and said that they are not going to honor that

6    subpoena and we can talk about that later.

7           The second issue that is going to come up as far

8    as first phase, second phase -- I know we have a bifurcated

9    case on willfulness and damages, but they've also -- since

10    the invalidity is in the first phase, we have to be able to

11    show copying because copying is a response to an invalidity

12    challenge.  So that is one of the reasons why we are talking

13    about these Synergy human use or Synergy trial products;

14    using the patented invention is infringement, not just

15    selling and offering to sell, but using it.

16           They got detailed disclosures of the invention

17    in 2009, and it is our position they've used that to

18    actually copy the invention through the trials.  And we need

19    to be able to show that they got the invention disclosed to

20    them and that through their clinical trials they literally

21    copied it, which is why it looks exactly like our invention

22    in the end.  So that's an issue that will come up because,

23    as I'm sure the Court knows, actual copying is one of the

24    rebuttals to an invalidity case.  And we believe we have

25    here an actual copying case.

1          So we need to figure out in our bifurcation -- I

2     mean, we need to be able to show that they got the patent,

3     they got a presentation on the patent, they got all the

4     information about the patent.  They cited the patent in

5     their own patent applications, they actually made arguments

6     to overcome other patents in the same family in their own

7     patent applications.  And we believe that that

8     circumstantial evidence of actual copying especially since

9     their research and development devices, as to the polymer

10    fiber, look exactly like their finished devices.

11         So I'm not sure how the Court -- we can handle

12    that or how to do that, I'm obviously -- I respect your

13    decision on bifurcation, but we have an actual copying

14    response to their invalidity case, so -- we have evidence

15    that they actually copied the invention.  So that's

16    something I think the Court needs to be aware of.

17         I'm not asking you to reconsider your

18    bifurcation, I'm just telling you that this issue is going

19    to come up and we're going to have to at some point deal

20    with it.

21         As far as the witness issue you just brought up,

22    we'll tell them which ones we plan to put in phase one and

23    which ones are solely in phase two, and which ones will be

24    in both, because several of our witnesses will be in both

25    phases.

```
 1                    THE COURT:  Okay.
 2                    MR. DROWN:  Your Honor, if I may?
 3                    THE COURT:  Yes.
 4                    MR. DROWN:  So, Your Honor, we just heard an
 5      argument that we've heard for the first time regarding
 6      bifurcation, and that is they plan to present copying
 7      evidence as a secondary factor for invalidity.
 8                    Secondary factors for invalidity relate to an
 9      obviousness defense.  If we prove -- if we make a prima
10      facie showing of obviousness, they can present evidence of
11      secondary factors, such as long-felt need or copying and the
12      like to try to rebut obviousness.
13                    Your Honor asked the parties in an order to
14      identify the evidence that would be part of -- not part of a
15      first phase in our bifurcation briefing.  We did that.
16                    In the bifurcation briefing, I'm not aware,
17      number one, of them mentioning anything about copying
18      evidence.  And we think the reason they didn't do that and
19      they're trying at the last minute today to try to say
20      they're going to present copying evidence is because of
21      this, Your Honor.  The reason they didn't do it in their
22      briefing -- if I may approach?
23                    THE COURT:  Yes.
24                    MR. DROWN:  The reason they didn't do it in
25      their briefing and their first time today, Your Honor, is
```

1    because we asked during discovery hey, are you actually

2    going to present copying evidence in this case?  We have an

3    interrogatory, it's an Interrogatory No. 5, and I'll read

4    it:  To the extent plaintiffs allege with respect to any

5    asserted claim that there exist any secondary considerations

6    of nonobviousness, within the meaning of *Graham v. John*

7    *Deere*, explain in detail the basis for the allegations,

8    including further information.

9              This is their answer:  Should Boston Scientific

10   establish the prima facie evidence of obviousness of claim 1

11   or any of the asserted claims of the '296 patent, plaintiffs

12   may rely on at least the following objective indicia or

13   secondary considerations of nonobviousness:  Teaching away

14   by prior art.

15             That's it.  That's not even a secondary

16   consideration under the law, but they didn't identify

17   anything about copying.

18             It gets worse.  The Court actually issued a

19   scheduling order and said, hey, if you want to have anything

20   about secondary considerations, there's a schedule for that,

21   and there's an expert report deadline for that.  It's --

22   they can submit a limited reply by defendant to any expert

23   report on objective indicia of nonobviousness, they can

24   submit a reply expert report.  When that deadline came and

25   went, they didn't submit one.

1           So in discovery they didn't say anything about

2    copying, in their expert reports and expert discovery they

3    didn't say anything about copying.  When we talked about

4    bifurcation and which evidence would be where, they didn't

5    say anything about copying.

6           And now they are trying to save their knowledge

7    and intent of the '296 patent evidence to try to get it into

8    the first phase somehow by now trying to say they are going

9    to show copying.  And we don't think under Rule 26(a) and

10   Rule 37(c) that that's permitted, Your Honor.

11          And we have -- so there's no reason why they

12   couldn't have done it if they wanted to during discovery,

13   fact discovery or expert discovery, and so we don't think

14   there should be any mention whatsoever of our knowledge,

15   supposed knowledge of the patent, the fact that we had some

16   meeting with them, the fact that they sent some

17   presentation, anything.  They can't sneak this in through

18   some secondary factors.

19          THE COURT:  Okay.  Are you able to identify

20   anywhere in discovery or in your briefing or anything prior

21   to the deadline that the Court set forth where you've

22   identified copying would be a secondary consideration that

23   could have some bearing on invalidity?

24          MR. SHORE:  Yes, it's in our opening expert

25   report.  And also they -- and, again -- yes; the short

1  answer to the question is, yes, it's in our opening expert

2  report.

3          And, second, also, this is rebuttal topic, so

4  we -- until they put on whatever evidence they have of

5  invalidity, we're not required to tell them what we're going

6  to rebut to something we haven't seen.  So what they're

7  complaining about is they're saying that they want us to

8  disclose everything in rebuttal to their case before we see

9  their case in court.  But there was definitely discussion in

10 Dr. Pitt's report, and if it comes to the time -- maybe

11 that's how we spend the 30 minutes before trial that day if

12 that's what they are going to argue.  But we can point out

13 in Dr. Pitt's report he talked about what they did was a

14 copy and they basically took the information they had and

15 then suddenly, after many years, talk about long-felt need,

16 after many years of failing in research and development,

17 after buying another company called Lab Code, that did it a

18 different way that failed, they ended up magically using

19 exactly what the University's patent disclosed, that had

20 been disclosed to them in 2009.

21         So if they come up and they start talking about

22 whatever their invalidity case is going to be -- and, again,

23 I haven't seen it yet, but whatever their invalidity case is

24 going to be, we should be able to rebut it, especially on

25 cross-examination of their own experts with whatever it is,

1    because this whole copying thing can just come in through

2    cross-examination.

3              So, again, this is rebuttal to their invalidity

4    case.  And if you believe, when the time comes, if we can't

5    show you that we presented this in a fair way in discovery

6    so that they could be prepared for it, then obviously you

7    will make your rulings based upon the record.  But I think

8    to make the ruling now is premature, I'm just bringing it up

9    to you in fairness so you will be highlighted on the issue

10   about witnesses.

11             THE COURT:  I understand.

12             MR. DROWN:  Your Honor, the idea that you don't

13   have to tell somebody in an interrogatory response evidence

14   that you may use until the person is on the stand rebutting

15   something at trial is completely contrary to the Federal

16   Rules of Evidence and the cases regarding disclosure and

17   discovery.  We've asked them in interrogatory what secondary

18   factors are you going to rely on and they never said

19   copying, period.  Then when the time -- when their expert

20   report came to rebut our expert -- our expert has a --

21   probably over a 100-page report on invalidity; they know

22   exactly what he was going to say.

23             When it came time to respond to that with an

24   expert report from Dr. Pitt from their side where our expert

25   -- they didn't say anything about secondary factors.  So

1    they don't get to do it at the first time at trial.

2              And our concern, our concern, Your Honor, is in

3    the opening statement, for example, they just say, they just

4    turn to the jury and we don't have time to stop it because

5    they've already said it, and Boston Scientific knew of the

6    patent, let me tell you, they knew of this.  And they

7    shouldn't be able to do it.  That's exactly what Your

8    Honor's bifurcation order was dealing with is we're not

9    having willfulness knowledge of the patent evidence in the

10   first phase.  And we don't want that to happen, we want Your

11   Honor's order to be honored, and for them to follow the

12   discovery rules where they didn't say it in discovery.

13             THE COURT:  Okay.  I hear both sides.

14             So what I'm going to ask both sides to do is to

15   submit a letter brief on this issue of no more than five

16   pages on or before the end of the day of this coming

17   Wednesday.  And we'll start with having UT submit its

18   opening letter brief on or before the end of the day on

19   Tuesday, and then we'll have Boston Scientific submit its

20   answering letter brief on or before the end of the day on

21   Wednesday.

22             All right.  With respect to trial exhibits, I

23   understand there are a number of exhibits that are -- appear

24   on both sides' exhibit list and there are some that are

25   different.  So the Court is instructing the parties that to

the extent that there are common exhibits, those should go
on a joint exhibit list and you should -- so in the end the
Court wants one exhibit list:  The joint exhibits, and then
to the extent that there are only exhibits that the
plaintiff will use, you'll have plaintiffs -- you know,
whether you say PTX or however you designate it, and to the
extent there are Defendant's Exhibits, DTX.  But to the
extent that there are common exhibits, those are the ones I
want you guys to coordinate on to make sure that they are
paginated and that both of you are referring to the common
exhibit page, the pagination as opposed to however they may
have appeared if they were separate.  So that's easier for
the Court to follow, it will be easier for the jurors to
follow.

            With respect to time during the trial days, so
on the first day we will start at 9:00 a.m.  On the
subsequent days, we'll start with the jury at 9:30, but
we'll -- at 9 o'clock we'll deal with any issues that we
need to deal with.

            Typically we'll have a 15-minute break for the
jurors in the morning, followed by a lunch break of around
45 minutes to an hour, depending on when we stop, and a
15-minute break in the afternoon as well.  And we will
typically try to break for lunch at one o'clock and then
we'll finish the day at 5:30.  The goal is to try to get the

1    case to the jury by midday on Friday.  So that's sort of

2    what we're shooting for.

3                All right.  So now let's go -- we're going to go

4    to -- in a minute to the voir dire, but before I jump to

5    that, there's an overall issue that we need to deal with,

6    and this is the -- how we refer to the plaintiff.

7                I know there's a dispute whether we refer to the

8    plaintiff as "University" or "Board of Regents," and so what

9    the Court proposes is that we just refer to the plaintiff as

10   "UT," and then it's not University, it's just UT.  It

11   doesn't say University.

12               So what's Boston Scientific's feeling on that?

13               MR. GRIMGRUD:  We would say on that, Your Honor,

14   that UT stands for University of Texas, and that's a -- as a

15   technical matter, the plaintiff -- it is the Board of

16   Regents, the Board of Regents owns the patents, they say,

17   not the University of Texas, so that's where -- our

18   preference would be Board of Regents just because we think

19   that more accurately answers who the plaintiff and the

20   patent owner is.

21               THE COURT:  I'm not going to refer to it as

22   "Board of Regents," so we'll come up with something else.

23   So how about -- with that, we'll refer to it as "UTBOR"

24   and -- but that's just, you know, seems cumbersome, you

25   know, as I'm reading instructions, so that's kind of -- so

1    that's the -- it's either going to be "UT" or "UTBOR."

2              MR. GRIMGRUD:  Yeah, UTBOR, we could also UT

3    Board, either of those, or both are fine.

4              THE COURT:  What's your...

5              MR. SHORE:  I'm a little -- honestly, I'm a

6    little confused.  The witnesses are going to respond,

7    especially witnesses who work for the University of Texas

8    System -- and by the way it's the University -- it's the

9    Board of Regents of the University of Texas System, which is

10   a mouthful, but whether we refer to them in examinations as

11   the "University" -- I mean, no one refers to them as the

12   Board, I mean, it's just not how it's done.

13             But I think we can explain to the jury if you

14   hear UT, the Board, or the Board of Regents, it's all the

15   same, it's all the same person, so if something comes out of

16   a witness' mouth or a lawyer's mouth you just explain, you,

17   not us --

18             THE COURT:  Yeah, because we can't control how

19   the witnesses refer to them.

20             MR. SHORE:  Right.  So I think the way to do it

21   is that you instruct the jury we have a party here of a long

22   cumbersome name, the Board of Regents of the University of

23   Texas System, and sometimes you'll hear it referred to as

24   the "University" or "UT" or "the Board," but you need to

25   understand that all of those mean the same thing.

1              And, of course, the way you instruct them in

2    your instructions, that way -- however you do it, they'll

3    know that if it was referred to in the evidence as "the

4    Board" or "UT" or the "University," it's all the same thing.

5    I think that's what we want to make sure the jury

6    understands is that however they hear it, it all refers to

7    the same thing.

8              THE COURT:  Okay.  All right.

9              MR. GRIMGRUD:  And, Your Honor, we can clarify,

10   you know, with witnesses that it's the Board of Regents and,

11   you know, as necessary, clarify that during the trial.

12             THE COURT:  Yeah.  We can -- like I said, we'll

13   say whether it's "University, UT, UTBOR, Board of Regents"

14   it's all talking about the plaintiff in this action.

15             MR. GRIMGRUD:  Thank you, Your Honor.

16             THE COURT:  All right.  Moving to the voir dire.

17   I made some markups.

18             Going to number two.  So in the instructions

19   here we refer to them as "UT Board," and like I said -- so

20   the first time I say this, then that's when I'll tell them

21   you may also hear it referred to as "University, UT, Board

22   of Regents," it's all the same, referring to the plaintiff

23   in this action.

24             So I'm going to skip when -- the whole UTBOR,

25   Board of Regents sort of disputes that, appears throughout.

1   That's how we're going to handle that.

2            So with -- on number two, the first substantive

3   dispute, we're going to -- plaintiff's suggested two

4   sentences, we're going to accept that first sentence and not

5   accept the second sentence.

6            Moving to page 3 with respect to the question,

7   just edited what's being deleted in the question in number

8   three is being picked up in question four.  So question

9   three will just ask:  Do any of you know any of these

10  attorneys or law firms I have just named.  And then question

11  four will say:  Have any of you, or any member of your

12  immediate family, such as a spouse, parent, child or

13  sibling, had any business dealings with or been employed by

14  any of these attorneys or law firms.

15           New question 5, which will capture the old

16  questions 5, 6 and 7 will say:  Have you or any member of

17  your immediate family ever had a business relationship with,

18  been employed by or owned stock in UTBOR, TissueGen or

19  Boston Scientific?

20           Then we'll pick up with 8 and that will now

21  become question 6 and so on.  9 is 7.  What was proposed by

22  defendants' question 10 is a no.  We're not going to include

23  that.

24           What was proposed as question 12 by plaintiffs

25  is a no.  We're not going to include that.

1          The end of that question 12:  Have any of you or

2    your immediate family ever been employed by the United

3    States Patent and Trademark Office or have any training or

4    work experience with patents, copyrights or intellectual

5    property... that will be asked.

6          13 we revised:  Have you or any member of your

7    immediate family ever applied for or obtained a United

8    States foreign patent?

9          Question 15 we revised is:  Have you or any

10   member of your immediate family ever been a party to a

11   patent license or negotiated a license agreement?

12         What was proposed as question 17 is a no.

13         Question 18 will be:  Do you have any knowledge

14   or experience with medical devices, coronary stents or

15   drug-eluting stents.

16         And what was questions proposed as 20 through 24

17   are no's.

18         And question 28 is a no.

19         So we'll revised it according to that and handed

20   it out.

21         All right.  And how we're going to handle voir

22   dire is that, you know, I'll read it and we'll record the

23   "yes" answers in response to each question.

24         When we get to the end, the Courtroom Deputy

25   will begin to seat the panel for any folks that have

1    answered "no."

2            For the folks that answered "yes," to the extent

3    we need them, we'll bring them back to the jury room and

4    counsel will ask follow-up questions.

5            So next we'll move on to the preliminary

6    instructions.  Pass markups of those out.  This is phase

7    one.

8            First substantive dispute had to do with number

9    three, United States patents.  Plaintiff wants a copy of the

10   sample patent contained -- okay.  Well, first, in the first

11   sentence:  "This case is about..." and Boston Scientific

12   proposed "patents, which is an area unfamiliar to many

13   people" and plaintiffs proposed just "patents," and we'll

14   just say "patents."

15           And the ultimate sentence of that paragraph:

16   During the video reference will be made to a sample patent,

17   a copy of the sample patent will be contained in the juror

18   notebooks for you to follow along.

19           So in the juror notebooks, there will be the

20   copy of the sample patent that's referred to in the video as

21   well as copy of the '296 patent.

22           Moving onto instruction number 7, Burdens of

23   Proof.  The first substantive dispute had to deal with

24   preponderance of the evidence.  And plaintiffs slightly is

25   what's consistent with the jury instruction in the case law,

1    so it will read:  "UTBOR and TissueGens' claims would have

2    to make the scales tip slightly on their side."

3            Moving to that next paragraph, which has to do

4    with clear and convincing evidence that Boston Scientific

5    has the burden to prove.  I didn't accept either parties'

6    proposal for that.  I tracked the language that comes from

7    the case law to make it precise.

8            So that third sentence will read:  "When a party

9    has the burden of proving any claim or defense by clear and

10   convincing evidence, it means evidence that is highly

11   probable that a fact is true."  And then we'll pick up with

12   "This is a higher standard of proof..."  and keep the rest

13   of that.

14           Next dispute is in instruction number 10, Note

15   Taking.  Plaintiffs wanted to include four matters in the

16   juror notebooks.  We'll go with the first three; a copy of

17   the '296 patent, a listing of the Court's claim

18   constructions, copy of the sample patent discussed in the

19   video.  We won't include pictures of witnesses.

20           That second sentence we'll pick up with "... you

21   have been given a note pad and a pen..."  and continue.

22           Moving to the next substantive dispute that had

23   to deal with instruction number 13, Course of the Trial.

24   And the substantive dispute is the last sentence.  In there,

25   we will go with plaintiff's language that will read:

1    "Finally, plaintiffs, UTBOR and TissueGen, may offer

2    rebuttal witnesses to Boston Scientific's claims and

3    defenses."

4              In instruction 14, Trial Schedule.  The only

5    edit, it's minor, it's in the third paragraph instead of

6    saying "After about 30 to 45-minute break for lunch," we'll

7    just say "After about a 45-minute break for lunch."

8              What I didn't see in these instructions is

9    anything about advising the jury about phasing or

10   bifurcation.

11             MR. SHORE:  The University thinks the jury

12   should be informed about the bifurcated status of the case.

13   We think it could be potentially prejudicial to one or both

14   parties, depending on the jury's view, if they are wondering

15   why are we not being asked to do this, what normal jurors

16   think is done in a trial.

17             The way I would phrase that -- and I have seen

18   it phrased, although admittedly in State Court, was to

19   simply tell the jury the Court has divided this case into

20   two phases.  The first phase, you know, being infringement

21   and the validity of the patent.  And the second phase being

22   damages if you find the patent to be infringed invalid.  It

23   doesn't need to be anything more than.

24             I also had a judge in Boston actually tell the

25   jury why it was bifurcated.  Saying that there's certain

1    evidence that the Court did not want the jury to impact

2    their decisions on other issues and that evidence is going

3    to be separated and related to a second phase of the trial.

4            However you want to explain it to the jury, it's

5    your ruling.  However you want to explain it to the jury, I

6    think those would be your words, it's your court and we'll

7    comment on them if we think it's something beyond the pale,

8    but I wouldn't expect it to be.

9            THE COURT:  Okay.

10           MR. GROSS:  Your Honor, David Gross.  I just

11   wanted to mention this -- answer the question the Court just

12   asked on bifurcation and what to tell the jury.

13           And our thought, Your Honor, is what's most

14   important is that the jurors know they may have to be here

15   next week.  So what would be bad is if the jury thinks if

16   there's a verdict on Friday, there's no possibility -- you

17   know, they are done.  So most important that they know the

18   potential length of the overall trial will include certain

19   days, the next week.  To me that -- to us, Your Honor,

20   that's actually, from the Court's perspective, most

21   important because if they think they're free and clear and

22   they are not, then we actually have a problem here.

23           THE COURT:  Right.  Right.  Yeah, that's why --

24   that's the reason why I asked the question, because --

25           MR. GROSS:  Exactly, Your Honor.

1          THE COURT:  So if the Court just told them that

2     the matter has been -- is going to be -- has been separated

3     into two parts and that they will need to deliberate after

4     each part and leave it as that, as general as that, that way

5     they don't know what the effect of how they rule in the

6     first phase, how that affects the second phase.  We'll leave

7     that to when we get to the instructions between the two

8     phases.  I think that's a benign instruction and doesn't

9     prejudice either side.

10          MR. GROSS:  Your Honor, if I may give a tiny bit

11     of pushback on how that's phrased, I just want to suggest

12     one thing to the Court.

13          I think as an Officer of the Court what's

14     important is they know they might be here next week, that's

15     -- in other words, are you available for these days?  And

16     once we hear yes, we know they are available.  I think

17     what's actually going to happen is we're going to have a

18     liability phase, we know that's going to happen, and we may

19     have a second phase.

20          The Court may make rulings, the jury may make a

21     ruling, there may not be a second phase, so I was only going

22     to suggest to the Court that we don't say, like, you will

23     have two phases, there's going to be a first phase and a

24     second phase, because they might not have a second phase.

25     So -- they might not.

1           So I would just suggest to the Court that we say

2     there's going to be a liability phase and there may be

3     another phase.  And simply they understand that -- because

4     they may be thinking oh, so we're going to decide this and

5     then I'm going to be -- next week is going to be a second

6     phase and there may not be a second phase, Your Honor.

7     That's all I'm --

8           THE COURT:  Yeah, but when you start parsing it

9     like that that gives one side some benefit that -- than the

10    other side.

11          So, again, I'm going to use -- I'll decide how I

12    do it, but I'm going to use language that is benign and that

13    ensures that the jury understands that it's two phases.

14          MR. GROSS:  Understood.  In other words, if

15    something -- if there's a certain -- we --

16          THE COURT:  So if you guys want to meet and

17    confer and come up with some language that you both can

18    agree to, please do so and get it to me.  If not, then I'll

19    come up with the language.

20          MR. GROSS:  Understood, Your Honor.  I think we

21    understand where the Court is coming from.

22          MR. SHORE:  Obviously we do not want the jury

23    informed that they get to go home early if they find for the

24    defense.  That's the primary reason why plaintiffs don't

25    like bifurcation, so if we could have a neutral, there's two

1          phases, the Court -- the case should last no longer than

2          through next Wednesday or whatever the day is, it will be in

3          two phases.

4                    I also would like to say to the Court when we

5          see the outcome, the Court may want to have the second phase

6          irregardless of what happens in the first phase because if

7          we go up on appeal and you want to have the damages finding

8          in there anyway, because if there's some sort of reversal --

9          instead of reversal and remand, we can get a reversal and

10         render.  So there's way too much that's unknown at this

11         point in time to tell the jury that you get to go home if

12         you find for the defendant.

13                    THE COURT:  All right.  So with respect to any

14         proposed language that the parties agreed to, if the parties

15         could get that to the Court by the end of the day on this

16         coming Wednesday as well.

17                    So next we're going to move to the final jury

18         instructions for phase one.

19                    First dispute of substance is 1.12.  And on page

20         14 with respect to the end of the second paragraph that's

21         started on page 13, with respect to the issue of

22         preponderance of the evidence.  Again, that's plaintiff's

23         language that we're -- that tracks the standard slightly on

24         will be used.

25                    With respect to the disagreement about clear and

1    convincing evidence, I didn't accept either's proposed

2    insertion.  Instead that paragraph will read:  In addition

3    to denying plaintiffs', UTBOR and TissueGen, claims that it

4    infringes Boston Scientific asserts that the asserted claims

5    of the '296 patent are invalid.  The party challenging the

6    validity of a patent, in this instance Boston Scientific,

7    has the burden to prove that the asserted claims are invalid

8    by clear and convincing evidence.  "Clear and convincing

9    evidence" means evidence that is highly probable that a fact

10   is true.  Proof by clear and convincing evidence is a higher

11   burden than proof by a preponderance of the evidence.

12            And then we'll pick up with:  You may have heard

13   of the beyond a reasonable doubt burden of proof on page 17.

14            Moving to -- 2.1 is just the designation sort of

15   issue, sort of substance there.

16            2.2 the substantive dispute deals with question

17   number 2.  So that is pursuant to the Court's bifurcation

18   order that's something that should -- is going to be decided

19   in phase two.

20            With respect to question two in phase one, it

21   will be whether plaintiffs, UTBOR and TissueGen, have proven

22   by a preponderance of the evidence that -- and here's a

23   question that I have for UT.  Who the third parties are that

24   UT will be showing infringed?

25            MR. SHORE:  The active infringement is by the

1   hospitals who sell them to patients within their place and

2   physicians who use them to place them within patients, so

3   it's a sale and a use inducement.

4           I will tell you that we are considering and very

5   well may and will make our decision this -- early next week,

6   by next Wednesday, we may drop the inducement claim

7   entirely.

8           THE COURT:  Okay.

9           MR. SHORE:  And the other third party is Boston

10  Scientific Limited.

11          THE COURT:  Right.  So the way I drafted it,

12  question number two, is:  Whether plaintiffs', UTBOR or

13  TissueGen, have proven by a preponderance of the evidence

14  that physicians, Boston Scientific Limited, a BSC

15  subsidiary, or other third parties directly infringe one or

16  more of claims 1, 11, 12, 17 and 26 of the '296 patent."

17  But I just didn't know who those third parties are.

18          MR. SHORE:  You can drop everything out of that

19  for sure except Boston Scientific Limited.  And we may drop

20  that one as well, but we'll let you know by next week.

21          THE COURT:  So I can just say Boston Scientific

22  Limited?

23          MR. SHORE:  Right.

24          THE COURT:  Okay.  So I can drop physicians and

25  other third parties?

1            MR. SHORE:  Yes.

2            THE COURT:  All right.  So that will be question

3    two.

4            And then question three will be -- is already

5    there, so there's no dispute about that.

6            Moving to 3.2, there's a dispute about fiber in

7    the construction there.  And the Court's construction was

8    and is:  This term shall have its plain and ordinary meaning

9    to a person of ordinary skill in the art, which is a

10   thread-like structure of any length or shape.

11           With respect to the dispute concerning the first

12   and second phases being admissible, that's going to come

13   out.  I agree with Boston Scientific that can come out.

14           With respect to instructions 3.3 and 3.4, the

15   Court came up with its revised instruction.

16           Did you pass that out, Joe?

17           Okay.  So infringement generally -- well, you

18   guys have it, you can read.  Either side have anything with

19   respect to 3.3 or 3.4 that they want to discuss?

20           We got these instructions from sort of combining

21   the parties' proposals and also borrowing from the

22   instruction that Judge Noreika used in the *Complete Genomics*

23   case.

24           MR. DROWN:  Your Honor, on instruction 3.1 just

25   seeing it today -- sorry 3.3, we can look at it closer and

1   have further comments, if we do.  But one thing we thought

2   might be helpful, I don't -- just quickly looking back, it

3   might be helpful in the last sentence of the first paragraph

4   to say:  Must determine whether UT and TissueGen have proven

5   literal infringement of... and then identify which claims

6   are independent and which ones are dependent, because then

7   it goes on to explain the issue of dependent and independent

8   claims, just so it's clear right there which ones are

9   independent.  And I think it's -- claim 1 is the only

10  independent claim and the other ones are dependent.  If we

11  could just insert that there.

12              THE COURT:  What's your response to that?

13              MR. SHORE:  I would say TissueGen had proven

14  literal infringe of independent claim 1 and dependent claims

15  11, 17 and 26.

16              THE COURT:  Okay.

17              MR. SHORE:  And then later when you explain what

18  independent and dependant means, I think that clears it up.

19              MR. DROWN:  And then finishing that sentence, it

20  would be dependant claim 12.

21              THE COURT:  Okay.  We'll incorporate those

22  additions, that sounds like both sides agree to now.

23              All right.  Anything else on -- that takes care

24  of 3.3.

25              Anything with respect to 3.4?

```
 1              MR. SHORE:  Your Honor, I just want to make it
 2     clear, and I think I could speak for both sides, we're not
 3     waiving any objections later to the charge conference, but
 4     sitting here today, informing the Court what I think appears
 5     to be acceptable edits.
 6              THE COURT:  Okay.
 7              All right.
 8              MR. DROWN:  Not right now, Your Honor.
 9              THE COURT:  All right.  Thank you.
10              MR. SHORE:  I would have one thing -- I'm sorry.
11     I think it is a little bit confusing to use the word
12     "elements" for both things that are in the patent and
13     "features" that are not.
14              So what I would put is:  However, the presence
15     of other features in the accused products beyond the
16     elements claimed in the patent does not avoid infringement
17     as long as every claimed element is there.
18              Because what is not an element -- what is not a
19     claim element, I don't believe should be referred to as an
20     "element," I think that's a little bit confusing.
21              And you could call it features or attributes or
22     whatever you want to, but I would prefer not to have the
23     word "element" used for things that are not in the patent.
24              THE COURT:  Yeah, I'm fine with that.
25              Are you fine with that change?
```

1          MR. DROWN:  That's fine, Your Honor.

2          THE COURT:  Okay.

3          All right.  Next moving to instruction 4.1

4     Invalidity/Burden of Proof.  We'll accept the first

5     sentence.  And then with respect to the parties' dispute

6     concerning the clear and convincing evidence issue, we're

7     going to use the same language that we used in 1.12.  And so

8     that paragraph will read:  A party challenging the

9     invalidity of a patent, in this instance Boston Scientific,

10    has the burden to prove that the asserted claims are invalid

11    by clear and convincing evidence.  "Clear and convincing

12    evidence" means evidence that is highly probable that a fact

13    is true.  Proof by clear and convincing evidence is a higher

14    burden than proof by a preponderance of the evidence.

15          MR. SHORE:  I just want to make sure that wasn't

16    a scriveners error where "preponderance" was written on this

17    page.  I now understand the ...

18          THE COURT:  Okay.  So, next 4.2.  There's a

19    dispute concerning the level of education and experience

20    with respect to a person of ordinary skill in the art and

21    what the jury should consider.

22          Boston Scientific proposed three additional

23    factors that are found in some instructions in Northern

24    District of California's model patent jury instruction, and

25    we're going to accept Boston Scientific's proposal there.

1    And it will be five factors.

2             Next is 4.3, Invalidity/Prior Art.  For that,

3    we're going to accept plaintiff's proposal there.

4             4.4, there's no dispute there.

5             Next 4.5, the first dispute appears in the

6    second paragraph, plaintiffs proposed "in the field of

7    invention."  Boston Scientific proposed "in the field of

8    biodegradable polymer fibers."  And the Court is going to go

9    with "in the field of invention."

10            The next paragraph, third paragraph, that last

11   sentence, that last phrase will say:  "So-called objective

12   evidence or secondary considerations, which I will describe

13   shortly."

14            So with respect to the plaintiffs' proposed

15   insertion on page 40 with respect to the indicia of

16   nonobviousness, secondary considerations, let's have UT

17   identify the objective indicia of nonobvious on which UT

18   will present evidence, and eliminate from the list any of

19   which -- on which UT will not present evidence.

20            MR. SHORE:  When would you like that done, Your

21   Honor?  Keep it to the Wednesday close of business

22   timeframe?

23            THE COURT:  Yeah.  I mean, I can read them all,

24   but I just think if you're not going to present evidence on

25   some of them, then, you know, what's --

1          MR. SHORE:  Some of these will be presented

2   through cross-examination.

3          THE COURT:  Okay.  We'll leave it all then.

4          MR. DROWN:  Your Honor, this is -- the issue

5   that we talked about with respect to bifurcation where we

6   asked them what secondary considerations are you relying on

7   and they only said teaching away.  Teaching away literally

8   isn't even on this list because it is not a secondary

9   consideration.  They disclosed no secondary consideration.

10         So what we propose, Your Honor, consistent with

11  the letter briefing, is in that letter briefing they

12  identify where they disclosed in discovery the secondary

13  considerations they would be relying on.  And if they didn't

14  disclose any, we will respond on -- they'll do that on

15  Tuesday, we'll respond on Wednesday.

16         And we think if they didn't disclose any, they

17  don't get a secondary considerations jury instruction

18  because that's the law.

19         MR. SHORE:  Your Honor, we'll do that.  But I

20  would point out again this is a rebuttal case --

21         THE COURT:  Yeah, I understand.  I'll rule.

22  I'll rule.  Yeah, this is subject to the additional

23  briefing.

24         So if I rule it stays, we're going to leave the

25  whole list; if I rule that it comes out, it goes to that --

1    this is something that comes out and it will come out.

2              MR. SHORE:  And I'd also point out, Your Honor,

3    after we present that first half of the case, both of us,

4    through direct and cross, if anything is not supported, it

5    won't get submitted to the jury.  So, you know, we totally

6    understand that.

7              THE COURT:  Okay.  4.6 in the first paragraph,

8    the second sentence we're going to go with Boston

9    Scientific's proposal that the inventor actually invented

10   the claimed subject matter.  And then we'll pick up with the

11   undisputed.

12             MR. SHORE:  Your Honor, the only thing we would

13   ask on that is the word "actually" be eliminated there.  It

14   adds nothing other than a point of emphasis that is

15   unnecessary to the issue for the jury.

16             It should be whether the inventor invented the

17   subject matter.

18             THE COURT:  All right.  The Court is fine with

19   that edit.

20             In the second paragraph, we're going to go

21   with -- we'll start it with:  To succeed... which Boston

22   Scientific proposed.

23             Then in the fourth paragraph on page 43, which

24   starts with the written description, we will -- the Court

25   accepts the plaintiffs' insertion there.

1            And on page 44, the proposed insertion at the

2    end, Boston Scientific, is not accepted.

3            Moving to 5.5, the Court has no opinion.  All

4    the Court is going to read is the first paragraph;

5    plaintiffs' proposed insertion is not accepted.

6            So that completes the final jury instructions

7    for phase one.

8            Next we'll go to the proposed verdict form for

9    phase one.

10           Question number one will read:  Did UTBOR and

11   TissueGen prove by a preponderance of the evidence that

12   Boston Scientific's Synergy stents infringe any of the

13   following claims of the '296 patent?

14           Yes is a finding in favor of UTBOR and

15   TissueGen; no is a finding in favor of Boston Scientific.

16   And the claims will be listed.  The jurors answer yes or no.

17           Question two will be:  Did plaintiffs, UTBOR and

18   TissueGen, prove by a preponderance of the evidence that

19   Boston Scientific Limited, a BSC subsidiary, directly

20   infringed one or more of claims 1, 11, 12, 17 and 26 of the

21   '296 patent?

22           And again those claims will be listed.  Yes is a

23   finding of UTBOR and TissueGen; no is a finding in favor of

24   Boston Scientific.

25           Yes?

1                    MR. SHORE:  So my only concern here, Your Honor,

2      is stents don't infringe.  Stents may be covered by the

3      patented claims, but the act of infringement is selling,

4      offering to sell, importing, etc.  So Boston Scientific

5      infringes, stents don't infringe.  Stents may be covered by

6      the claims of the patent, but the actions of infringement

7      are actions of Boston Scientific.  A stent doesn't sell

8      itself or import itself or whatever.

9                    THE COURT:  So you're going back to question

10     one?

11                   MR. SHORE:  I'm going back to question one in

12     that I just think that that is --

13                   THE COURT:  So your proposed amendment is that

14     evidence that Boston Scientific infringed?

15                   MR. SHORE:  Correct.

16                   THE COURT:  Okay.

17                   MR. SHORE:  I don't want the jury to be confused

18     that a stent -- if a stent is covered by the claims, it may

19     not infringe.  A stent doesn't infringe until it is

20     imported, sold, offered to sell, used, etc.

21                   THE COURT:  You'll have the opportunity to

22     explain what you mean by infringe in your arguments, your

23     closing argument, your opening argument, etc.

24                   What's your response to just making it Boston

25     Scientific infringed?

1           MR. DROWN:  I think we can reflect on that

2   issue, Your Honor.

3           I think that bigger issue we have with this

4   overall verdict form is question two.  This first phase is

5   supposed to be about direct infringement.  Do these stents

6   meet all the limitations of the claim.

7           The second question that they've imposed relates

8   to inducement.  And all this is getting at, Your Honor, is

9   for inducement, a third party has to commit an act, such as

10  the use of a stent or the sale of a stent.  The third party

11  has to commit the directly infringing act.  That's all this

12  is trying to get at.

13          We think it's not appropriate for the first

14  phase, because the first phase is literally does this stent

15  have all the limitations.  If it does, then in the second

16  phase they can prove that Boston Scientific with knowledge

17  and intent committed acts to cause third parties to directly

18  infringe; meaning, to cause third parties to use it, to

19  cause third parties to sell it.

20          THE COURT:  Well, the term "infringement" in

21  phrase one of the third parties, whether or not the third

22  parties infringed.  So, I mean, will Boston Scientific

23  stipulate to third party direct infringement if the jury

24  finds that Boston Scientific directly infringed?

25          MR. DROWN:  Well, the issue is does the stent

1    have all the limitations, that's the direct infringement

2    question.

3              Boston Scientific sells the stents, so

4    obviously...  But the question for direct infringement is do

5    they have all the limitations.  To then ask do third parties

6    use them and that's how they infringe, that's not part of

7    a -- that's an inducement question.  Because if you're going

8    to -- because here's the thing, Your Honor, is what's

9    confusing about this verdict form is we have the first

10   question, if the answer is "no" to the first question, there

11   must be an instruction that says do not answer the second

12   question, or you must answer "no" to the second question

13   because if they don't -- if they answer "no" to the first

14   question, they have to answer "no" to the second question,

15   because that means the Synergy stent does have all of the

16   limitations.  And if we don't have an instruction -- if

17   we're going to add this second question in the first phase,

18   it's incredibly confusing not to have an instruction of

19   either if you answer "no" to question one skip question two

20   and answer question three.

21              THE COURT:  Okay.

22              MR. DROWN:  Or you must answer "no" to question

23   two.

24              But we don't think this should be in the first

25   phase at all because it adds confusion.  It adds nothing to

1   the case, which is why they're probably going to drop it,

2   but it should be skip question two or you must answer "no"

3   to question two if you answer "no" to question one.

4   THE COURT:  Okay.

5   MR. SHORE:  Okay.  Thirty-two years, a new one.

6   Now he wants to trifurcate the case.  So whether or not the

7   stents or the accused products practice the claims of the

8   patent is an element of infringement, but it is not

9   infringement.  Infringement is the act of buying, selling,

10  importing, whatever.

11  So the way this should be done, I believe, is

12  ask whether or not Boston Scientific infringed, and they

13  know to infringe the Synergy stents have to practice the

14  claims because those are the accused products.  But they

15  also -- they can sell.  And you actually could have a

16  situation where Boston Scientific doesn't infringe, but they

17  induce others to infringe, because if the product practices

18  the claim and Boston Scientific doesn't sell in the United

19  States, offer to sell in the United States, etc., but they

20  induce someone else to take those actions, then you can have

21  an inducement without infringement by Boston Scientific.

22  So unless we're going to trifurcate this, the

23  way this should be is did Boston Scientific infringe and

24  then the second one is did Boston Scientific -- you know,

25  get others or induce others.

1            And like I said, we can drop out physicians and

2      we can drop out other third parties and just say Boston

3      Scientific Limited, you know, did they induce Boston

4      Scientific Limited.  But the idea that we are first going --

5            THE COURT:  Well, inducement, we're not --

6      inducement is phase two.

7            MR. SHORE:  Well, I'm talking about that they

8      took actions or -- I'm trying to read the Court's language

9      here.

10           Did plaintiffs prove by a preponderance of the

11     evidence that Boston Scientific Limited directly infringed

12     one or more claims?  So that would be the second question.

13           THE COURT:  Right.

14           MR. SHORE:  That's infringement, that's phase

15     one.

16           THE COURT:  All right.

17           Okay.  But you were saying inducement, which I

18     know is phase --

19           MR. SHORE:  I'm sorry, it's whether -- unless

20     they directly infringe, they never get to inducement.

21           THE COURT:  Okay.  So the Court will keep

22     question two the way it is.

23           Question one we'll change to evidence that

24     Boston Scientific infringed any of the claims of the '296

25     patent.

1               Question two will be as the Court read.

2               And then this question -- plaintiffs' question

3       number three, Boston Scientific's question number two will

4       be the third question.

5               Did Boston Scientific prove by clear and

6       convincing evidence any of the following claims of the '296

7       patent are invalid.

8               MR. DROWN:  Your Honor, if I may?

9               I just want to make sure -- be very clear about

10      this.   There is a claim for direct infringement against

11      Boston Scientific Corporation, that is question one.

12              There is a claim for indirect infringement by

13      inducement against Boston Scientific Corporation.  The way

14      indirect infringement works is Boston Scientific is alleged

15      to be the indirect infringer by inducing a third party to

16      directly infringe.  And that second question that you have

17      on the verdict form is about indirect infringement.  Because

18      in order for them to prove indirect infringement, they have

19      to prove that Boston Scientific did something that caused a

20      third party to --

21              THE COURT:  To directly infringe.

22              MR. DROWN:  To directly infringe.

23              THE COURT:  Right.

24              MR. DROWN:  So the second question is an

25      indirect infringement question.

1             And we don't think it should be in the first

2    phase, because it's confusing to have it in the first phase.

3    Because if the jury finds no infringement, no direct

4    infringement on question one by Boston Scientific

5    Corporation, there can be no direct infringement by a third

6    party for inducement because the product doesn't have all

7    the limitations.

8             The argument from counsel that well, there could

9    be a situation where Boston Scientific doesn't sell the

10   product, but they are liable for indirect infringement,

11   that's never been the case in this case.  Boston Scientific

12   is making and selling the Synergy stent.  The question for

13   question one is simply direct infringement; meaning does the

14   Synergy stent technically have all the limitations of the

15   asserted claims.  And if the answer to that is "no," the

16   answer to question two has to be "no" as well.

17            THE COURT:  Okay.  So -- all right.  Well, the

18   Court will take that under advisement and --

19            MR. DROWN:  Thank you, Your Honor.

20            THE COURT:  -- give it further consideration.

21            MR. SHORE:  Do you want to hear anything else

22   from me, Your Honor?

23            THE COURT:  You can respond.

24            MR. SHORE:  What he said was just technically

25   incorrect.  Whether the elements are present is an element

1    of infringement.  It is not infringement.  And we -- and so

2    you can have the question of whether both of those Boston

3    Scientific entities infringe belongs in claim 1 -- I mean,

4    in phase one.

5            And irregardless of whether they say one does or

6    the other does or both do, you would go to phase two because

7    if one of them infringes, there's damages.  And whether or

8    not they're induced that can come in in phase two, but you

9    have to show infringement in phase one.  We can't go to

10   phase two to prove inducement and infringement.

11           THE COURT:  Understood.

12           All right.  So next we have the preliminary jury

13   instructions, phase two.

14           First dispute is in instruction number 1, the

15   Introduction.  Looks like plaintiff tracked largely from the

16   instruction used by Judge Connolly in the *Magnolia* case, and

17   Boston Scientific proposed to add some stuff to it.

18           We're going to go with the plaintiffs' proposed

19   there with some edits in that last sentence that will read:

20   For Boston Scientific's infringement, which you found during

21   the first phase of the case.

22           Moving to instruction 3, the substantive dispute

23   had to do with preponderance of the evidence and, again,

24   slightly on.  So that takes care of those instructions.

25           Moving to the final jury instructions, phase

1    two.   The 1.2 issues presented in phase two, in number 2,

2    that's going to read:   Whether plaintiffs, UTBOR and

3    TissueGen, have proven by a preponderance of the evidence

4    that Boston Scientific induced infringement by others.

5             So there we're accepting Boston Scientific's

6    proposed language.

7             MR. SHORE:   Your Honor, the only thing we would

8    say -- I'm sorry, I shouldn't talk before I get to the

9    microphone.   We would -- instead of "others," we would say

10   the other Boston Scientific entity.   That's the only other

11   thing there is.

12            THE COURT:   Okay.   So you want to say --

13            MR. SHORE:   Boston Scientific Limited.

14            THE COURT:   Okay.

15            All right.   Three and four proposed by

16   plaintiffs are no's, we're not going to go with those.

17            So number three will be whether plaintiffs,

18   UTBOR and TissueGen, have proven by a preponderance of the

19   evidence the amount of money damages adequate to compensate

20   them for Boston Scientific's infringement.

21            Moving on to 1.3, Burdens of Proof.   Again, the

22   preponderance of the evidence is slightly -- tips slightly

23   to their side in each instance.

24            Moving to instruction number 2, Willful

25   Infringement.   Boston Scientific's proposal is most

1    appropriate.

2              With respect to number 3, instruction number 3,

3    Induced Infringement, this is going to depend upon the

4    Court's decision, but this one is going to have to be

5    revised.

6              MR. SHORE:  This goes back, again, to the Boston

7    Scientific Limited issue, where we just allege inducement by

8    their subsidiary.

9              THE COURT:  Right.  Yeah, this one is going to

10   have to be revised after the Court issues its ruling with

11   respect to the briefing, then the parties should meet and

12   confer about this one and submit a -- hopefully a jointly

13   revised one, but whatever issues remain, the Court will

14   consider.

15             Moving to 4.1, Damages Generally.  The first

16   paragraph, the second sentence will include the proposal by

17   Boston Scientific by instructing you on damages.  I am not

18   suggesting which party should win this case on any issue.

19             MR. SHORE:  The only thing we'd raise there,

20   Your Honor, is in a bifurcated case, I'm not really sure

21   that sentence is necessary because there's already been a

22   decision that if they reach this that the University has won

23   the case on infringement and validity.  So maybe the way to

24   do it is by instructing you on damages, I'm not suggesting

25   any particular amount of damages, if any, should be awarded.

1          THE COURT:  No, we're going to keep it the way

2    it is.

3          MR. SHORE:  Okay.

4          THE COURT:  4.2.  The dispute had to do with the

5    last sentence that Boston Scientific proposed, and we're not

6    going to include that sentence.

7          Same in 4.3, not going to include that last

8    sentence.

9          4.4, that's just about designation.

10          So 4.6, next, and that will stop after the

11    sentence:  "An acceptable alternative must be a product

12    that's licensed under the patent or that does not infringe

13    the patent."  And that's where we'll cut that off.

14          4.7, the Court revised 4.7, it passed out a copy

15    of the Court's proposed revision.

16          You don't have to tell me your thoughts now, but

17    the parties can get back to the Court by end of the day next

18    Wednesday as to any comments with regard to this.  Just meet

19    and confer about this and see if you can come to an

20    agreement.  And the UT will be the UTBOR, I understand.

21          That completes the final jury instructions for

22    phase two.

23          Next we have the proposed verdict form for phase

24    two.  And it was easier for the Court to work from Boston

25    Scientific's proposed verdict form.  So question one will

read:  Did UTBOR and TissueGen prove by a preponderance of

the evidence that Boston Scientific induced infringement of

any of the following claims of the '296 patent?  "Yes" is a

finding in favor of UTBOR and Boston Scientific; "no" is a

finding in favor of Boston Scientific -- I mean, "yes" is a

finding in favor of UTBOR and TissueGen; "no" is a finding

in favor of Boston Scientific.

          Question two:  Did you UTBOR and TissueGen prove

by a preponderance of the evidence that Boston Scientific's

infringement of any of the claims of the '296 patent was

willful?  "Yes" is a finding of favor of UTBOR and

TissueGen; "no" is a finding in favor of Boston Scientific.

          Question three, it will be:  Did UTBOR and

TissueGen prove by a preponderance of the evidence that

UTBOR made reasonable efforts to ensure that TissueGen

complied with marketing requirements?  "Yes" is a finding in

favor of UTBOR and TissueGen; "no" is a finding in favor of

Boston Scientific.

          Question four, will be:  Did UTBOR and TissueGen

prove by a preponderance of the evidence that they complied

with the marketing requirement?  "Yes" is a finding in favor

of UTBOR and TissueGen; "no" is a finding in favor of Boston

Scientific.

          Question five will be:  Did UTBOR and TissueGen

prove by a preponderance of the evidence that they gave

1     Boston Scientific actual notice of infringement before the

2     filing of this lawsuit on November 20, 2017?  "Yes" is a

3     finding in favor of UTBOR and TissueGen; "no" is a finding

4     in favor of Boston Scientific.

5           And "yes" if the actual date of infringement

6     was.  "No."

7           Question number six:  What amount of damages

8     have the -- what amount of the damages have UTBOR and

9     TissueGen proven by a preponderance of the evidence that

10    they're entitled to as a reasonable royalty for Boston

11    Scientific's infringement of the '296 patent?

12          All right.

13          MR. SHORE:  The only real issue I have is

14    there's a dispute in the case whether the marking

15    requirement was even triggered.  And so that issue I think

16    is the correct issue for the jury.  If the marking

17    requirement was triggered, then it's undisputed that there

18    was no marking of any products that predate.

19          So that's really -- when you say did they

20    enforce the marking requirement or did they take reasonable

21    efforts, we don't believe there was any reasonable efforts

22    necessary because there was never a public sale, there was

23    never -- the marking requirement was never triggered.  And

24    so that I think is the real question for the jury is whether

25    a marking requirement ever arose at all.

1              And the way this reads:  Did they prove that

2       they made reasonable efforts to ensure that TissueGen

3       complied?  There was no compliance required according to the

4       University and TissueGen because the only thing that was

5       done was there was some samples that were sent out in their

6       confidentiality agreements, it was never a public sale, etc.

7              THE COURT:  The language I used came from your

8       proposed question, so I took your question.

9              MR. SHORE:  Yeah, I know.  And unfortunately for

10      me, I don't think that's right.  And so what -- it may be a

11      slight difference, but it's a major difference; in that, if

12      there's no marking requirement that's triggered, then there

13      is no diligence that's required to ensure people mark.  I

14      mean the diligence is did UTBOR enforce the marking

15      requirement when it was required.

16             THE COURT:  But, see, you're trying to -- you're

17      making a legal argument about whether marking was triggered

18      that you haven't teed up anywhere else.

19             MR. SHORE:  That is absolutely correct.  And

20      factually -- and I think this is part of the motion in

21      limine, which we'll get to later, but factually to us it's

22      pretty much undisputed there were no public sales.  And they

23      didn't identify any public sales under *Arctic Cat*, so maybe

24      this is something we do at the charge conference saying this

25      shouldn't be submitted at all because they never identified

1    any specific products under *Arctic Cat*, and it's undisputed

2    that there were no public sales.  I don't understand why

3    marking is even here.

4              But the issue is whether a marking requirement

5    ever triggered.  And there was no triggering of a marking

6    requirement because what triggers a marking is a public

7    sale.

8              THE COURT:  Well, again, I used the language

9    from your proposed instruction.

10             MR. SHORE:  Sometimes we make mistakes.

11             THE COURT:  If you want to confer with opposing

12   side, this is phase two verdict form, something changes, you

13   know, parties are free to meet and confer --

14             MR. SHORE:  Thank you.

15             THE COURT:  About things.

16             MR. SHORE:  We'll do that.

17             THE COURT:  All right.

18             MR. DROWN:  Your Honor, I think for all of

19   these, including all of the phase two instructions and the

20   verdict form, obviously I think Your Honor is intending that

21   we'll have a formal opportunity to object to the

22   instructions on the record and suggest changes.  And I think

23   we should do it that way as opposed to quickly reacting

24   today to them, if that's fair, Your Honor.  We could do that

25   Wednesday or Thursday of next week with the objections as

```
 1    opposed to individual times.
 2              MR. SHORE:  We will meet and confer and get back
 3    to you, Your Honor, how about that?
 4              MR. DROWN:  I wasn't --
 5              THE COURT:  Yeah, just meet and confer, but I
 6    think -- I mean, the verdict form is -- the things that
 7    we've talked about is what the Court is going to do unless
 8    you guys agree to something else.
 9              MR. DROWN:  Understood.  We just want to make
10    sure for purposes of appeal that we have --
11              THE COURT:  Yeah, you'll have your time.  You
12    can do that.
13              MR. DROWN:  If they want to remove question
14    three, we didn't propose it, so they can remove question
15    three on the second phase of the verdict form.
16              THE COURT:  Right.  I understand.  All right.
17              All right.  So that takes care of the verdict
18    sheet in phase two.
19              Next we're going to move to the motions in
20    limine.
21              So with respect to everything except the voir
22    dire, the parties should incorporate the revisions that the
23    Court has provided, and anything that you guys agree to
24    between now and next Thursday, and then resubmit those
25    documents to the Court by the end of the day on next
```

1    Thursday.

2              An electronic version should be send to the

3    Court's e-mail as well as Mr. Liss's e-mail, Word versions

4    so they can be manipulated.

5              All right.  So moving to the motions in limine.

6    First, going to UT's motion in limine.  UT's motion in

7    limine number one seeking to exclude unrelated -- allegedly

8    unrelated settlements and disputes is denied.

9              UT's arguments go to the weight of the evidence.

10   UT can challenge the weight given to such agreements and the

11   hypothetical negotiation framework during its

12   cross-examination.

13             Going to UT's motion in limine number two,

14   seeking to exclude alleged irrelevant clinical evidence.

15   That motion is denied.

16             Federal Rule of Evidence 402 permits omission

17   only of relevant evidence.  While Rule 403 provides the

18   Court may exclude relevant evidence if its probative value

19   is substantially outweighed by danger of unfair prejudice,

20   confusing the issues or misleading the jury.

21             Here, UT's damages case is that the patented

22   invention offered and anticipating clinical benefit to

23   patients at the time of the invention -- and Boston

24   Scientific marketed its stent accordingly.  Boston

25   Scientific's expert opines that, "There has never been a

significant clinical benefit proven by clinical trials for utilizing a drug-eluting stent with a bioabsorbable polymer compared to a durable one.

That opinion clearly relates to the time of the hypothetical negotiation and is not unfairly prejudicial.

Also, UT has failed to identify unfairly prejudicial evidence it seeks to exclude that is actually based on the alleged 2018 clinical trials.

Moving on to UT's motion in limine number three. Seeking to exclude alleged pre-*Markman* evidence, that motion is granted in part, denied in part.

UT's motion in limine presents three issues, the first deals with "miscible." The parties agree to construe "miscible as "Incapable of dissolving into one another."

And construed "first phase" as "The polymer portion of the fiber."

And "second phase" as "The discrete drug containing regions dispersed throughout the fiber."

In its October 6th memorandum order, the Court explained that Boston Scientific understood when it agreed to the construction of "miscible," that miscible referred to phases rather than substances.

The Court will not allow Boston Scientific to change the object of the miscible inquiry.

In a footnote, the Court dismissed Boston

Scientific's attempt to equate phases and substances

because, one, the attempt was made for the first time in

Boston Scientific's reply brief.  And, two, UT disputes as a

factual matter that the miscibility of PLGA, the polymer,

and everolimus, the drug, results in the admissibility of

the phases that contain PLGA and everolimus.

The Court excludes Boston Scientific's expert

testimony to the extent Boston Scientific's expert attempts

to testify that the miscibility of PLGA and everolimus is

inconsistent with the claimed term since Boston Scientific

agreed to a construction of miscible based on phases.

However, the Court does not exclude Boston

Scientific's expert's testimony to the extent the expert

asserts that the miscibility of PLGA and everolimus causes

the PLGA rich and everolimus rich phases to be miscible.

Such an argument is consistent with the parties' agreed upon

construction of miscible.

With respect to fiber.  On November 17th, the

Court construed "fiber" as taking its plain and ordinary

meaning to a person of ordinary skill in the art, which is

"A thread-like structure of any length or shape."

The Court explained that Boston Scientific may

not argue that the fiber recited in claim 1 must have a

common molecular orientation.  During the *Markman* hearing on

November 7th, Boston Scientific stated that:  "We're not

1    saying the method of manufacturing in of itself is a

2    limitation."

3            Boston Scientific agrees that it will not argue

4    that a fiber must have a common molecular orientation.

5            Further, Boston Scientific has maintained

6    multiple times before this court that it does not claim that

7    the method of manufacturing limits claim 1.  Thus, the Court

8    grants UT's motion to the extent that Boston Scientific

9    argues where its experts assert that either fibers must have

10   a common molecular orientation or that claim 1 is limited by

11   a method of manufacturing.

12           Boston Scientific may argue that the accused

13   products manufacturing process causes its polymer coating

14   not to form a thread-like structure.

15           With respect to the impeachment of Dr. Pitt, the

16   Court agrees with Boston Scientific that Boston Scientific

17   may impeach Dr. Pitt with its prior expert opinions.

18           Dr. Pitt may, of course, respond to such

19   questions by explaining that certain opinions were given

20   prior to the Court's claim construction order.

21           If Boston Scientific raises an opinion from

22   Dr. Pitt to which this impeachment defense applies, the

23   Court -- Dr. Pitt should be given an opportunity to explain

24   the reason for his changing opinions, so it will be more

25   than a yes/no response.

1            Moving to Boston Scientific's motions in limine.

2    Boston Scientific's motion in limine number one is denied,

3    subject to parameters that I will detail.

4            On November 17th, the Court construed "fiber" as

5    taking its plain and ordinary meaning to a person of

6    ordinary skill in the art, which is "A thread-like structure

7    of any length or shape."

8            Boston Scientific argues that Dr. Pitt's

9    feelings were neither justified nor harmless -- well, let me

10   start here.  Boston Scientific seeks to preclude Dr. Pitt

11   from testifying at trial that the coding applied to Boston

12   Scientific's accused Synergy stent as thread-like.  Whether

13   the coating is thread-like was at issue before the Court's

14   claim construction because Dr. Pitt opined in a prior case

15   the *Ethicon* case, that fiber as used in the '296 patent

16   means thread-like.  And because Boston Scientific's expert,

17   Dr. Mooney, opined that the accused products here do not

18   infringe because their coating is not thread-like.

19           In Dr. Pitt's supplemental infringement report

20   and declaration in opposition to Boston Scientific's summary

21   judgment, again failed to discuss the issue.  Boston

22   Scientific argues that Dr. Pitt's feelings were neither

23   justified nor harmless under the *Pennypack* factors because

24   Boston Scientific would be significantly prejudiced by new

25   thread-like opinions at trial, and there's no possibility to

1    cure the prejudice.  And Dr. Pitt's choice to omit testimony

2    about thread-like was strategic.

3              Boston Scientific adds that Dr. Pitt's reports

4    never in any form assert that coating of the Synergy stents

5    is thread-like or that "stents" included polymer strips.

6              UT argues that Dr. Pitt's expert report fairly

7    notified Boston Scientific of Dr. Pitt's opinion that

8    Synergy stents include ultra thin, serpentine, drug-loaded

9    polymer strips that are fibers which are thread-like

10   structure of any length or shape.

11             UT asserts that Dr. Pitt's April 1, 2022 report

12   provided his opinions that the accused Synergy stent is

13   coated with fibers, in view of the Court's constructions and

14   confirmed that certain stent specimens have polymer strips

15   that conform to the serpentine path of the underlined stent

16   rings.

17             UT also notes that the Court's construction of

18   "fiber" occurred after the close of expert reports.  In the

19   original *Markman* hearing, Judge Noreika explained that the

20   real dispute is not over whether a fiber is thread-like, as

21   in defendant's proposed construction, but rather whether the

22   term "fiber" can encompass what the defendants say is

23   coating.

24             Under Federal Rule of Civil Procedure

25   26(a)(2)(b)(i), expert reports must contain a complete

1    statement of all opinions the witness will express and the

2    basis and reason for them.

3            Under Rule 37(c)(1), a party may not use

4    information or a witness at a trial if the party failed to

5    provide such information consistent with Rule 26(a) unless

6    the failure was substantially justified or is harmless.

7            The Third Circuit applies the *Pennypack* factors

8    to determine if a failure was substantially justified or

9    harmless.  One, the prejudice or surprise in fact of the

10   party against whom the evidence would have been presented;

11   two, the ability of that party to cure the prejudice; three,

12   the extent to which the presentation of the evidence would

13   disrupt the orderly and efficient trial of the case; and,

14   four, bad-faith or willfulness in failing to comply with the

15   Court's order; and, five, the importance of the excluded

16   evidence.

17           In its June 14, 2022 summary judgment briefing,

18   Boston Scientific asserted that a polymer fiber is a

19   thread-like or filamentous polymer structure that at least

20   includes common orientation of the polymer molecules.

21           While the Court found that a genuine dispute of

22   material fact would remain even if the Court adopted Boston

23   Scientific's proposed claim construction, the Court did not

24   find any reference to a thread-like structure in the

25   relevant section of Dr. Pitt's declaration submitted in

1    response to the summary judgment motion.

2           On October 18, 2022, Dr. Pitt submitted a

3    supplemental declaration, but UT points to no opinion from

4    Dr. Pitt that anywhere asserts that the fibers which coat

5    the accused Synergy stent are thread-like.

6           Instead, UT argues that Dr. Pitt's report fairly

7    notifies the defendant of Dr. Pitt's opinion that Synergy

8    stents include ultra thin, serpentine drug-loaded polymer

9    strips that are fibers, which are thread-like structures of

10   any length or shape within the scope of the asserted patent.

11          UT points to D.I. 249-9 at 61, and at page 70,

12   note five and page 76, note 10, paragraphs 28 to 35 as

13   examples of opinions that should have alerted Boston

14   Scientific to Dr. Pitt's opinion that the fiber coating --

15   that the fibers coating the stents were thread-like.

16          Therein, Pitt opined that Boston Scientific's

17   use of the words "filaments, fibers, wires and ribbons" in a

18   patent application appear to be consistent with the words

19   that are used in-house at Boston Scientific to describe the

20   fibrous pattern disposed on the luminal surface of the

21   Synergy stents.

22          Dr. Pitt also opined that on the "outer surface

23   of the stent," there is a "continuous length of fiber," that

24   "formed on" the serpentine column of the Synergy stent."

25          Pitt further opined that the accused products

1    included an ultra thin bioabsorbable polymer, that the PLGA

2    rich domain of the accused products is a continuous, solid

3    web of polymer material, that one of the accused stents has

4    a length-to-length ratio of 163, including a biodegradable

5    polymer fiber format, that the coatings on the side of the

6    stent can be compared to a ribbon, and that Boston

7    Scientific had described the fibers as a "string," and

8    measured their "string length."

9          Under the *Pennypack* factors, the Court should --

10   the Court will permit Dr. Pitt to testify that the polymer

11   coating of the accused Synergy stent contains a fiber that

12   meets the limitation in claim 1 of the '296 patent, that it

13   contains at least one biodegradable polymer fiber.

14         Dr. Pitt's prior opinions put Boston Scientific

15   on notice that Dr. Pitt thought that the polymer coating on

16   Boston Scientific's stent infringed claim 1 of the '296

17   patent, even if construed as requiring a fiber that is

18   thread-like.

19         Thus, if there is any surprise or prejudice to

20   cure, it is minimum.  Further, UT demonstrated no bad-faith

21   since Pitt gave his opinions based on Judge Noreika's

22   initial construction of the term "fiber."  However, if

23   Boston Scientific were to ask Dr. Pitt whether he had at any

24   point in this case opined that the polymer coating on Boston

25   Scientific's accused stents is thread-like, Dr. Pitt would

1    have to answer no.

2              For these reasons and subject to the parameters

3    the Court has set forth, the Court denies Boston

4    Scientific's motion in limine number one.

5              Moving to Boston Scientific's motion in limine

6    number two, which seeks to exclude certain evidence and

7    testimony unrelated to the structure of the accused Synergy

8    stent.  That motion in limine is also denied with the caveat

9    Federal Rule of Evidence 402 limits admissible evidence to

10   relevant evidence.  While Rule 403 provides that the Court

11   may exclude relevant evidence if its probative value is

12   substantially outweighed by danger of unfair prejudice,

13   confusing the issues or misleading the jury.

14             Evidence is relevant if it has any tendency to

15   make a fact more or less probable than it would be without

16   the evidence, and the fact is of consequence in determining

17   the action.

18             UT seeks to use the Strickler patent both to

19   show that Boston Scientific admits that an implied coating

20   on similar products to the accused products are fibers and

21   to show that Boston Scientific was aware of the '296 patent.

22             UT connects the Strickler patent to Boston

23   Scientific via the role of Boston Scientific's attorney that

24   oversaw the Strickler patent's prosecution for Cymed.

25             UT seeks to use the particulate matter documents

1    to show Boston Scientific's understanding of the coating

2    found on the Synergy stent as a whole being a fiber.

3                UT states Boston Scientific told the FDA that

4    particulates released from the accused Synergy stent are

5    patterned to a shape of the underlying stent geometry with

6    resulting structure resembling a ribbon.  Thus, in both

7    cases, UT seeks to use evidence for proper purposes and

8    provides a reason that the evidence is relevant.

9                However, a direct infringer's knowledge or

10   intent is relevant.  Here, knowledge of intent for induced

11   infringement and willfulness will only be part of the second

12   phase of the trial.  Therefore, UT may not present evidence

13   of Boston Scientific's knowledge of the '296 patent in phase

14   one.

15               With respect to Boston Scientific's motion in

16   limine number three seeking to exclude evidence and

17   testimony related to TissueGen's compliance with 35 U.S.C.

18   287 marking and pre-suit damages.

19               Let me ask UT two questions before I rule on

20   this.

21               Does UT contend that it marked any products sold

22   before this suit was filed with the '296 patent?

23               MR. SHORE:  Yes; with a small explanation.

24   There was never a mark placed on a device because it's a

25   coating.  Some of these samples were provided to a third

party under an NDA and that nondisclosure agreement in it
and that work included a license to the technology,
including the technology of the '296 patent.

So the person or the entity that was receiving
these samples was actually a sublicensee and there was no
requirement to mark.  These were samples, they were not sold
to the public and they were provided under a nondisclosure
agreement.

There were other things given out at a trade
show, but those items didn't have any drug in them.  So they
didn't infringe because there was no drug in the fiber, in
the samples that were disclosed.  So we haven't seen them
under *Arctic Cat* identify any specific products, not one.
They haven't identified a single public sale.  There have
been no public sales, there were no public sales, and
there's no evidence of a public sale.  So to us the entire
marking issue is -- to us it's a red herring.  It's a -- you
know, it's a rabbit trail -- or rabbit hole, whatever they
call it.

But, no, we don't believe that the marking
requirement was ever triggered.  But to the extent it was
triggered, the patent was disclosed to some of the people
who received products under an NDA.  And so if they're going
to argue that those particular products were unmarked, we're
going to get up on -- I don't think as a matter of law that

1    you have to mark something that you provide to a licensee on

2    the patent under an NDA.

3              So this is not a situation where there were

4    things put on the market, advertised, sold, the usual

5    marking issue, that does not exist here.  And under *Arctic*

6    *Cat,* they have still never identified a product number,

7    because there were no product numbers.  There were no part

8    numbers, product numbers, whatever you want to call it.

9    These were private transactions pursuant to consulting

10   agreements or pursuant to NDAs that were not public and I

11   don't think anyone is even alleging that they were public.

12              THE COURT:  All right.  I understand.

13              So --

14              MR. DROWN:  Your Honor --

15              THE COURT:  Do you want to respond?

16              MR. DROWN:  Yeah, I think it makes sense to

17   answer directly Your Honor's question, and that is, you

18   asked:  Do they contend that they ever marked anything?  And

19   the answer is no.  They said that earlier in the hearing.

20              Dr. Nelson, what they call the lead inventor

21   here, there are actually a number of inventors, specifically

22   was asked that question at his deposition.  And we have it

23   right here.

24              I have no evidence to support that we ever

25   labeled -- ever put on the packaging the '296 patent.  And

1    you know why he said that?  He said ignorance.  That's in

2    our brief.

3                    "QUESTION:  Why did TissueGen not label any of

4    its fibers with the '296 patent?

5                    "ANSWER:  Ignorance, I guess."

6                    Just so Your Honor has an answer to your

7    question, the answer is they never marked anything.

8                    THE COURT:  Okay.  So I have heard enough, I'm

9    going to rule, okay.

10                   MR. SHORE:  There was no marking on packaging.

11                   THE COURT:  So with respect to Boston

12   Scientific's motion in limine number three, the Court is

13   going to deny this motion in limine.

14                   Boston Scientific seeks to preclude UT from

15   introducing evidence that certain fibers made or sold by

16   TissueGen are not embodiments of the '296 patent and any

17   evidence or argument concerning pre-suit damages.  Boston

18   Scientific argues that UT stated during discovery that

19   TissueGen had made several fiber products that were prepared

20   according to processes described in the '296 patent, a

21   statement UT later rescinded.  And that Boston Scientific

22   then served notice identifying four unmarked fibers made by

23   TissueGen that appeared to be embodiments of the '296 patent

24   claims.

25                   Boston Scientific argues that UT provided no

evidence or expert opinion to dispute either that the
identified fibers were marked or the identified fibers did
not practice the claims of the '296 patent.

Boston Scientific argues that UT should not be
allowed to introduce lay witness testimony to prove the --
to prove that the identified fibers do not practice the '296
patent at trial.

Boston Scientific further argues that compliance
with Section 287 is the patentees' burden, not Boston
Scientific's burden, so it did not have to plead section 287
marking as an affirmative defense.

Also Boston Scientific argues that TissueGen
paid royalties on the fibers identified and thus must have
sold them.

UT admits that counsel to Boston Scientific
suggested that four products practice the '296 patent of a
VEGF loaded emulsion fiber sold by TissueGen to Dr. Pedran
Bluni an emulsion fiber loaded with lidocaine for Teva
pharmaceutical industries.  Fibers prepared for Edge
Therapeutics and biodegradable drug-loading fiber products
made, offered for sale and/or sold under the TissueGen ELUTE
trademark.

However, UT argues that the ELUTE trademark
referred to multiple products regardless of whether they
contain any drug, the syringes of VEGF gel were sold from

TissueGen to UT, the samples sent to Teva were sent abroad for testing and the samples sent to Edge were for testing under a confidential development contract.

UT also argues that Boston Scientific never included a specific unmarked product in its section '296 defense in its answer to first-amended complaint for patent infringement filed after the close of fact discovery.

Second, UT argues that no sales occurred and that Boston Scientific was provided with actual notice of infringement before 2013.

Third, UT argues that it can present a fact witness to show that public samples did not contain drug and that test samples were designed with drug and continuous channel rather than discrete regions.

The legal standard is if a patentee fails to mark a patented product, no damages shall be recovered by the patentee in any action for infringement except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which again damages may be recovered only for infringement occurring after such notice.  Thus, once a patentee begins making or selling a patented article, the notice requirement attaches.  And that comes from the *Arctic Cat* decision.

The alleged infringer must initially articulate, produce, not prove, the product it believes are unmarked,

patented articles subject to section 287.

Next the patentee bears the burden to prove the products identified do not practice the patented invention.

Here, with respect to was notice given of a failure re-mark -- whether notice was given of a failure to re-mark.  The alleged infringers initial burden of production is a low bar and need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practiced the patent.  It is a burden of production not one of persuasion or proof.  At least one District Court found that identifying a product, even if it has hundreds of different versions meets this burden.

Another court found that identification of specific products of infringement contentions in a related case and by agreement meet the low bar.

Here, Boston Scientific asks UT to identify each past or present product of UT that incorporates or embodies any invention claimed in the patent-in-suit and to identify the dates during which each product was marked under 35 U.S.C. section 287.

TissueGen stated in a revised interrogatory response that it has been involved in several technical development projects which included, one, providing drug-loaded fibers, drug compositions to Dr. Pedran Bluni

1      and paying UT a royalty of $514.06 or five percent of

2      revenue.

3                   Two, working with Teva on developing a

4      biodegradable polymer fiber loaded with lidocaine and paying

5      UT $1,500 or five percent of revenue.  Another payment of

6      $3,140.

7                   And, three, developing a fiber loaded with a

8      protein called aprotanin (phonetic) with Edge and paying UT

9      $13,732.50 with three percent revenue.  And then another

10     paid $3,124.50.

11                  Dr. Kevin Nelson admitted the TissueGen did not

12     mark any of its products with the '296 patent during his

13     March 15, 2022 deposition.

14                  On January 26, 2022, Boston Scientific informed

15     UT that UT and their licenses were engaged -- and their

16     licensees were engaged in the making, offering for sale or

17     selling within the U.S. articles falling within the scope of

18     the claims of the '296 patent and identified, one, VEGF

19     loaded emulsion fiber sold by TissueGen to Dr. Pedran Bluni.

20     Two, emulsion fiber loaded with lidocaine for Teva

21     Pharmaceutical Industries.  Three, fibers prepared for Edge

22     Therapeutics.  And, four, biodegradable drug-loaded fiber

23     products, made, offered for sale and/or sold under the

24     TissueGen ELUTE trademark.

25                  Thus, the Court finds that Boston Scientific met

1    its burden of production.  UT's interrogatory responses make

2    clear that the first three were specific products and that

3    each resulted in royalty payments to UT.

4            The ELUTE trademark identifies a specific family

5    of problems while UT alleges that the ELUTE trademark was a

6    house mark for fibers TissueGen could make not a specific

7    product regardless of how or whether they contained any

8    drug.  UT's notice specifically identified biodegradable

9    drug-loaded fiber products with that house trademark.  Such

10   a clearly identifiable product set could not permit the

11   large-scale fishing expedition that *Arctic Cat* one court

12   feared.

13           With respect to whether UT has met its burden of

14   proof, UT argued that it must be allowed to prove no sales

15   occurred and that they controlled confidential test samples

16   or sent them abroad.  Boston Scientific's response that UT

17   cannot pursue a contention that they did not sell the

18   identified fibers because they did not disclose that in

19   discovery and because TissueGen paid royalties on the

20   identified fibers, which is only required for sales.

21           Further, Boston Scientific argues that UT cites

22   no law supporting a confidential sale or manufacturing

23   exception to marking.

24           TissueGen must pay royalties only on UT net

25   sales for licensed products.  A sale is a bona fide

1    transaction for which consideration is received or expected

2    for the sale, use, lease, transfer or other disposition of a

3    UT licensed product.  Boston Scientific does not contest

4    that sending a product abroad is sufficient to exempt it

5    from the marking requirement.  And UT says it sent the

6    products sold to Teva abroad.

7              UT offers no reason why sales under a

8    confidential development contract are exempt from the legal

9    marking requirement.  However, UT contends that it can prove

10   no sales occurred.  If UT could prove that it never made any

11   sales of unmarked products, which seems likely, given its

12   royalty payments, UT could win on the marking issue.

13             Thus, under these parameters, the Court will

14   deny Boston Scientific's motion in limine number three.

15

16             Let me correct the record.  I should have said

17   that if UT could prove that it never made any sales of

18   unmarked products, which seems unlikely, given its royalty

19   payments, UT could win on the marking issue.

20             Thus, the Court, for the reasons stated and the

21   parameters set forth, the Court denies Boston Scientific's

22   motion in limine number three.

23             All right.  So that takes care of all of the

24   motions in limine.  And that's all I had on my agenda, with

25   the exception of juror lunches.

1          The Court is no longer able to pay for juror's

2    lunches and so the Court asks the parties to pay and take

3    care of the logistics for delivering the juror's lunches

4    during the trial.

5          Both sides fine with that?

6          MR. GRIMGRUD:  Yeah, that's fine, Your Honor.

7          MR. SHORE:  Yes, Your Honor.

8          THE COURT:  Okay.

9          All right.  That's all I have on my agenda.

10   Anything else that we need to discuss?

11         MR. GRIMGRUD:  We had one other issue, Your

12   Honor, that we wanted to raise.  The plaintiffs -- it

13   relates to a model that the plaintiffs disclosed to us

14   recently that they're intending to use at trial.  There is a

15   process in the proposed pretrial order for dealing with

16   objections to demonstratives.  This one, they gave us notice

17   of, they say it's a model of the Synergy stent.  We think

18   there's all sorts of evidentiary problems with it, we don't

19   think it's representative of the stent at all, that there's

20   foundational issues, undisclosed expert opinion issues, 403

21   issues, relevance issues, a lot of other issues.  So we

22   wanted to just give the Court a head's up about that.  We

23   thought perhaps this would be an issue where it makes sense

24   to maybe raise it sooner to the Court with some short

25   briefing process rather than waiting for the objection

1    period, you know, under the pretrial order.

2              THE COURT:  Okay.  So why don't the parties meet

3    and confer about that demonstrative, see whether you can

4    come up with some acceptable alternative.  If not, then

5    submit a letter of no more than three pages, both sides.

6    Since Boston Scientific is opening the -- you submit first

7    and then UT will have -- submit its responsive -- its

8    answering, three-page letter brief 24 hours after Boston

9    Scientific submits its.

10             MR. GRIMGRUD:  Yes, Your Honor.  And I'm sorry

11   if I missed it, is there a time where we should submit ours,

12   a date?

13             THE COURT:  So you should --

14             MR. GRIMGRUD:  Or just meet and confer?

15             THE COURT:  If you guys can't resolve it.

16             MR. GRIMGRUD:  Okay.

17             THE COURT:  Then submit it -- the opening by the

18   end of the day on Thursday.

19             MR. GRIMGRUD:  Okay.

20             THE COURT:  And that'll give UT to Friday to

21   submit its answering.

22             MR. GRIMGRUD:  Understood.  Thank you, Your

23   Honor.

24             MR. SHORE:  Your Honor, the only thing I would

25   add to that is that under the Court's order, we're supposed

1      to provide, I believe, demonstratives 48 hours before their

2      use or something to that effect.

3                    THE COURT:  But this is one that you already

4      gave notice of, so they flagged it.

5                    MR. SHORE:  Fifty-one days in advance.  We

6      didn't just give them notice, we invited them to inspect,

7      which they declined.  And if I -- may I approach, Your

8      Honor?

9                    THE COURT:  I don't need to get into the merits

10     of it right now.  Let's just have you guys meet and confer.

11     If you can agree, you can agree.  If you can't, then submit

12     your respective positions and we'll --

13                   MR. SHORE:  I just want to make clear, 51 days.

14                   THE COURT:  I understand.  I understand.

15                   MR. SHORE:  The other -- there's two other small

16     issues, one I'll handle and the other Mr. Lipschutz will

17     handle.

18                    How does the Court want to handle bills, bill of

19     review, proffers of evidence?  In other words, if there's a

20     point where we run out of time, which I don't think we will,

21     but I hope we don't, or if -- as far as the Court granting

22     motions in limine, if there's evidence that we believe that

23     we should have been able to offer, if we want to make an

24     offer, do you want those in writing or do you want us to

25     come in before trial and put the witness on?

1            You don't have to answer this now, but we would

2     like to know for the purposes of making sure we have the

3     right witnesses here, who we may need to make a bill or an

4     offer, just let us know, if you will, how you'd like to

5     handle that.

6            THE COURT:  You should give me, you know, as

7     much notice, advanced notice as possible if you see the

8     issue coming up.  And you should, to the extent possible,

9     yeah, do it in writing in advance.

10           Again, with respect to the dispute resolution

11    procedure, to get anything that you anticipate happening

12    being an issue during the next --

13           MR. SHORE:  I just didn't know if you wanted it

14    in question and answer with the witness or if you wanted it

15    simply as a proffer in writing saying if we had been

16    allowed, this is what we would have put on.

17           And sometimes --

18           THE COURT:  Well, it depends upon the

19    circumstance.

20           MR. SHORE:  Okay.

21           All right, thank you, Your Honor.

22           And then Mr. Lipschutz has one issue on a

23    subpoena.

24           THE COURT:  Okay.

25           MR. LIPSCHUTZ:  Good evening, Your Honor.  Corey

1    Lipschutz.

2            As Mr. Shore hinted at earlier, plaintiff served

3    a trial subpoena directed towards Boston Scientific

4    Corporation, it was served under Delaware registered agent.

5            The subpoena seeks trial testimony.  And we

6    conferred already with opposing counsel on the subpoena and

7    it identifies several topics of testimony that we seek

8    Boston Scientific to produce a corporate representative on.

9            In our meet and confer, as well as the

10   objections that have been served by Boston Scientific, they

11   oppose this and contend the subpoena is improper.

12           With respect to the subpoena, there's four

13   issues that the Court really needs to confront or deal with

14   to determine the propriety of the subpoena.

15           First, can plaintiffs call Boston Scientific,

16   the opposing party, during its own case-in-chief.  And the

17   answer is yes, it's well established a party can call an

18   adverse witness.  The authority for that is Federal Rules of

19   Evidence 611(c), which states when a party calls a hostile

20   witness, an adverse party where a witness identified with an

21   adverse party, so that's clearly identified in the rules.

22           Second, that presents the issue of what's the

23   proper means for us as plaintiffs to compel and command the

24   attendance of witnesses, because witnesses are not

25   necessarily required to sell it to trial unless they are

1    compelled by subpoena.  And case law does dictate that the

2    proper mechanism to obtain compliance that an opposing party

3    shows up at trial is through a subpoena, even though

4    subpoenas aren't necessary to compel opposing parties to

5    respond to discovery, they are necessary to get their

6    attendance at trial.

7                The plain text of Rule 45(c)(1) makes clear, a

8    subpoena may command a person to attend trial.  And the word

9    "person," as used throughout the Federal Rule of Civil

10   Procedure, includes both natural persons as well as --

11               THE COURT:  All right.

12               All right.  So it's getting six o'clock and I

13   want to give the court reporter a break.  So let me just

14   hear from Boston Scientific about what's the issue in

15   complying with this subpoena?

16               I understand your argument.

17               MR. DRAWN:  Yes, Your Honor.  I think we should

18   just do what Your Honor suggested with the other things

19   by -- they can file a motion, they can file their brief

20   supporting it and we can respond.

21               But here's the issue:  This is a trial subpoena

22   where they are trying to compel Boston Scientific, like a

23   30(b)(6) deposition, to designate a human being to come to

24   trial and be prepared to testify on listed-specific topics.

25   Absolutely unsupported by the rules.  Rule 30 doesn't allow

1     you to do this.  There's a bunch of cases that say this -- I

2     have never seen a court do this at any trial, so we think

3     the Court can knock this down right now, but if you want to

4     have briefing on it, there's no basis to compel a company to

5     bring a human being and be prepared at trial to testify on

6     topics like we're in the middle of discovery, so...

7               THE COURT:  Did you do this during discovery on

8     these topics?

9               Did you illicit this during discovery?

10              MR. LIPSCHUTZ:  Yes, Your Honor, we do have

11     30(b)(6) testimony from defendants on --

12              THE COURT:  On these topics?

13              MR. LIPSCHUTZ:  On these topics, but we wish to

14     compel a live witness.  And contrary to the authority -- to

15     the position stated by Boston Scientific, there is in fact

16     case law that supports this position of subpoenaing a

17     party -- an opposing party through the use of designation of

18     topics when they are a corporate entity.

19              THE COURT:  Okay.  So let's have the parties

20     submit their respective letter briefing on this topic.  And

21     let's have UT submit its opening letter brief, no more than

22     three pages, on this topic before the end of the day on

23     Wednesday.  And then Boston Scientific gets to submit its

24     answering letter brief, no more than three pages, before the

25     end of the day on Thursday.  And then the Court will --

1           MR. LIPSCHUTZ:  We're happy to follow that

2    schedule, Your Honor.  We just point out typically the

3    mechanism in this case would be the party opposing the

4    subpoena would typically seek a motion to quash, so it may

5    make sense for Boston Scientific to go first.  If you

6    prefer, we're happy to submit briefing as you said, but it

7    would seem typical for the parties seeking to quash the

8    subpoena to go first.

9           THE COURT:  Well, all right, let's have -- yeah,

10   because they did serve you with a subpoena --

11          MR. DROWN:  We objected to it.

12          THE COURT:  Okay.  But it's your burden to quash

13   the subpoena, so let's have you start with the opening and

14   then have UT submit its answering brief on Thursday.  So

15   Boston Scientific by end of the day Wednesday, UT by end of

16   the day on Thursday.

17          MR. LIPSCHUTZ:  Yes, Your Honor.

18          THE COURT:  All right.  So that is all that

19   we're going to cover today.  We'll expect the revised

20   instructions and documents that we've gone over today,

21   consistent with the schedule that I gave you and the

22   briefing on the issues that we've identified as being in

23   dispute according to the schedule that I've given the

24   parties, and I would urge the parties to meet and confer and

25   try to resolve some of these issues.  Because you have a

1    limited amount of time at trial and the Court is going to

2    stick to that time allotted, so the more time we take for

3    disputes and arguments and stuff, the less it's going to

4    take from your time to try this case.  And you got two

5    phases that you need to get tried, so... maybe.  So that's

6    just the Court imploring you to try to agree to as much as

7    you can get done.

8            So I want to thank everybody's time today.  Good

9    job on both sides on the issues.  And we'll see you in I

10   guess two weeks.

11           ALL COUNSEL:  Thank you, Your Honor.

12           MR. SHORE:  Your Honor, I will get in trouble if

13   I don't pass this on -- this can be on or off the record,

14   but Judge Albright in Waco told me to pass along to you his

15   greetings and salutations and goodwill, and so I'm doing so.

16           THE COURT:  All right.  Thank you.  Tell him I

17   said hi.

18           (Whereupon, the following proceeding concluded

19   at 6:04 p.m.)

20               I hereby certify the foregoing is a true

21   and accurate transcript from my stenographic notes in the

22   proceeding.

23                         /s/ Michele L. Rolfe, RPR, CRR
                              U.S. District Court

24

25

## $

**$1,500** [1] - 79:5
**$13,732.50** [1] - 79:9
**$3,124.50** [1] - 79:10
**$3,140** [1] - 79:6
**$514.06** [1] - 79:1

## '

**'296** [31] - 18:11, 19:7,
29:21, 30:17, 36:5,
37:16, 45:13, 45:21,
50:24, 51:6, 57:3,
57:10, 58:11, 66:15,
70:12, 70:16, 71:21,
72:13, 72:22, 73:3,
74:25, 75:4, 75:16,
75:20, 75:23, 76:3,
76:6, 76:16, 77:5,
79:12, 79:18

## /

**/s** [1] - 90:23

## 1

**1** [13] - 18:10, 37:16,
39:9, 39:14, 45:20,
53:3, 53:14, 64:23,
65:7, 65:10, 67:11,
70:12, 70:16
**1.12** [2] - 35:19, 41:7
**1.2** [1] - 54:1
**1.3** [1] - 54:21
**10** [3] - 27:22, 30:14,
69:12
**100-page** [1] - 21:21
**11** [3] - 37:16, 39:15,
45:20
**12** [5] - 27:24, 28:1,
37:16, 39:20, 45:20
**13** [3] - 28:6, 30:23,
35:21
**14** [3] - 31:4, 35:20,
68:17
**15** [2] - 28:9, 79:13
**15-minute** [2] - 23:20,
23:23
**163** [1] - 70:4
**17** [5] - 28:12, 36:13,
37:16, 39:15, 45:20
**17th** [2] - 64:18, 66:4
**18** [2] - 28:13, 69:2
**18-392** [1] - 3:10
**18-392-GBW** [1] - 1:5

## 2

**2** [4] - 1:11, 36:17,
54:1, 54:24
**2.1** [1] - 36:14
**2.2** [1] - 36:16
**20** [2] - 28:16, 58:2
**2009** [2] - 15:17, 20:20
**2011** [1] - 7:10
**2012** [1] - 9:19
**2013** [1] - 77:10
**2015** [3] - 7:7, 9:13,
10:8
**2017** [1] - 58:2
**2018** [1] - 63:8
**2022** [5] - 67:11,
68:17, 69:2, 79:13,
79:14
**2023** [1] - 1:11
**21** [1] - 9:20
**24** [2] - 28:16, 83:8
**249-9** [1] - 69:11
**26** [4] - 37:16, 39:15,
45:20, 79:14
**26(a** [2] - 19:9, 68:5
**26(a)(2)(b)(i** [1] - 67:25
**28** [2] - 28:18, 69:12
**287** [5] - 72:18, 76:9,
76:10, 78:1, 78:21

## 3

**3** [5] - 9:11, 27:6,
53:22, 55:2
**3.1** [1] - 38:24
**3.2** [1] - 38:6
**3.3** [4] - 38:14, 38:19,
38:25, 39:24
**3.4** [3] - 38:14, 38:19,
39:25
**30** [3] - 20:11, 31:6,
87:25
**30(b)(6** [2] - 87:23,
88:11
**32** [3] - 4:13, 4:18,
4:25
**35** [3] - 69:12, 72:17,
78:20
**37(c** [1] - 19:10
**37(c)(1** [1] - 68:3
**3:00** [1] - 3:5

## 4

**4.1** [2] - 41:3, 55:15
**4.2** [2] - 41:18, 56:4
**4.3** [2] - 42:2, 56:7
**4.4** [2] - 42:4, 56:9
**4.5** [1] - 42:5
**4.6** [2] - 44:7, 56:10

**4.7** [2] - 56:14
**40** [1] - 42:15
**402** [2] - 62:16, 71:9
**403** [3] - 62:17, 71:10,
82:20
**43** [1] - 44:23
**44** [1] - 45:1
**45** [1] - 23:22
**45(c)(1** [1] - 87:7
**45-minute** [2] - 31:6,
31:7
**48** [1] - 84:1

## 5

**5** [3] - 18:3, 27:15,
27:16
**5.5** [1] - 45:3
**51** [1] - 84:13
**5:30** [1] - 23:25

## 6

**6** [3] - 12:7, 27:16,
27:21
**61** [1] - 69:11
**611(c** [1] - 86:19
**615(2)** [1] - 4:9
**6:04** [1] - 90:19
**6B** [1] - 3:5
**6th** [1] - 63:19

## 7

**7** [3] - 27:16, 27:21,
29:22
**70** [1] - 69:11
**76** [1] - 69:12
**7th** [1] - 64:25

## 8

**8** [1] - 27:20

## 9

**9** [3] - 12:9, 23:18,
27:21
**9:00** [1] - 23:16
**9:30** [2] - 12:11, 23:17

## A

**a.m** [3] - 12:7, 12:9,
23:16
**ability** [1] - 68:11
**able** [9] - 6:2, 15:10,
15:19, 16:2, 19:19,
20:24, 22:7, 82:1,
84:23

**about..** [1] - 29:11
**abroad** [4] - 77:1,
80:16, 81:4, 81:6
**absolutely** [2] - 59:19,
87:25
**accept** [7] - 27:4, 27:5,
30:5, 36:1, 41:4,
41:25, 42:3
**acceptable** [3] - 40:5,
56:11, 83:4
**accepted** [2] - 45:2,
45:5
**accepting** [1] - 54:5
**accepts** [1] - 44:25
**according** [4] - 28:19,
59:3, 75:20, 89:23
**accordingly** [1] -
62:24
**accurate** [1] - 90:21
**accurately** [1] - 24:19
**accused** [22] - 6:23,
8:8, 8:15, 8:20,
10:24, 11:14, 40:15,
49:7, 49:14, 65:12,
66:12, 66:17, 67:12,
69:5, 69:25, 70:2,
70:3, 70:11, 70:25,
71:7, 71:20, 72:4
**accuses** [1] - 7:1
**accusing** [1] - 10:13
**act** [4] - 46:3, 47:9,
47:11, 49:9
**Action** [1] - 3:10
**action** [4] - 26:14,
26:23, 71:17, 77:17
**actions** [4] - 46:6,
46:7, 49:20, 50:8
**active** [1] - 36:25
**acts** [1] - 47:17
**actual** [8] - 14:14,
15:23, 15:25, 16:8,
16:13, 58:1, 58:5,
77:9
**add** [3] - 48:17, 53:17,
83:25
**addition** [1] - 36:2
**additional** [2] - 41:22,
43:22
**additions** [1] - 39:22
**address** [4] - 12:2,
12:4, 12:5, 12:24
**addressed** [1] - 8:14
**adds** [4] - 44:14,
48:25, 67:3
**adequate** [1] - 54:19
**admissibility** [1] -
64:5
**admissible** [2] -
38:12, 71:9
**admit** [3] - 5:1, 5:12,

9:17
**admits** [2] - 71:19,
76:15
**admitted** [12] - 4:17,
4:19, 4:23, 5:3, 5:8,
5:14, 5:18, 5:21,
5:25, 6:3, 6:5, 79:11
**admittedly** [1] - 31:18
**adopted** [1] - 68:22
**advance** [3] - 6:11,
84:5, 85:9
**advanced** [1] - 85:7
**adverse** [3] - 86:18,
86:20, 86:21
**advertised** [1] - 74:4
**advisement** [1] -
52:18
**advising** [1] - 31:9
**affects** [1] - 33:6
**afternoon** [6] - 3:6,
3:13, 3:18, 3:23, 8:6,
23:23
**agenda** [2] - 81:24,
82:9
**agent** [1] - 86:4
**agree** [9] - 34:18,
38:13, 39:22, 61:8,
61:23, 63:13, 84:11,
90:6
**agreed** [7] - 4:4, 6:10,
11:17, 35:14, 63:20,
64:11, 64:16
**agreement** [6] - 5:24,
28:11, 56:20, 73:1,
73:8, 78:16
**agreements** [3] - 59:6,
62:10, 74:10
**agrees** [2] - 65:3,
65:16
**al** [1] - 1:5
**Albright** [1] - 90:14
**alerted** [1] - 69:13
**ALL** [1] - 90:11
**allegations** [1] - 18:7
**allege** [2] - 18:4, 55:7
**alleged** [7] - 51:14,
62:14, 63:8, 63:10,
77:24, 78:6, 78:9
**allegedly** [1] - 62:7
**alleges** [1] - 80:5
**alleging** [2] - 7:6,
74:11
**allocation** [1] - 11:19
**Allocco** [1] - 13:7
**allotted** [1] - 90:2
**allow** [2] - 63:23,
87:25
**allowed** [3] - 76:5,
80:14, 85:16
**alternative** [2] - 56:11,

83:4
**amazing** [1] - 5:8
**amended** [1] - 77:6
**amendment** [1] -
46:13
**amount** [6] - 4:22,
54:19, 55:25, 58:7,
58:8, 90:1
**AND** [1] - 1:2
**answer** [26] - 6:4,
18:9, 20:1, 32:11,
45:16, 48:10, 48:11,
48:12, 48:13, 48:14,
48:19, 48:20, 48:22,
49:2, 49:3, 52:15,
52:16, 71:1, 74:17,
74:19, 75:6, 75:7,
77:6, 85:1, 85:14,
86:17
**ANSWER** [1] - 75:5
**answered** [2] - 29:1,
29:2
**answering** [5] - 22:20,
83:8, 83:21, 88:24,
89:14
**answers** [2] - 24:19,
28:23
**anticipate** [2] - 12:22,
85:11
**anticipating** [1] -
62:22
**anyway** [1] - 35:8
**Aparna** [1] - 13:8
**appeal** [2] - 35:7,
61:10
**appear** [2] - 22:23,
69:18
**appearances** [1] -
3:12
**APPEARANCES** [1] -
2:1
**appeared** [2] - 23:12,
75:23
**application** [2] - 4:1,
69:18
**applications** [2] -
16:5, 16:7
**applied** [2] - 28:7,
66:11
**applies** [2] - 65:22,
68:7
**approach** [2] - 17:22,
84:7
**appropriate** [2] -
47:13, 55:1
**April** [1] - 67:11
**aprotanin** [1] - 79:8
**Arctic** [6] - 59:23,
60:1, 73:13, 74:5,
77:23, 80:11

**area** [1] - 29:12
**argue** [5] - 20:12,
64:23, 65:3, 65:12,
73:24
**argued** [1] - 80:14
**argues** [15] - 65:9,
66:8, 66:22, 67:6,
69:6, 75:18, 75:25,
76:4, 76:8, 76:12,
76:23, 77:4, 77:8,
77:11, 80:21
**argument** [10] - 6:20,
10:23, 17:5, 46:23,
52:8, 59:17, 64:16,
75:17, 87:16
**arguments** [4] - 16:5,
46:22, 62:9, 90:3
**arose** [1] - 58:25
**arrive** [1] - 12:8
**art** [5] - 18:14, 38:9,
41:20, 64:20, 66:6
**Art** [1] - 42:2
**article** [1] - 77:22
**articles** [2] - 78:1,
79:17
**articulate** [1] - 77:24
**assert** [2] - 65:9, 67:4
**asserted** [8] - 18:5,
18:11, 36:4, 36:7,
41:10, 52:15, 68:18,
69:10
**asserts** [4] - 36:4,
64:14, 67:11, 69:4
**attaches** [1] - 77:22
**attempt** [2] - 64:1,
64:2
**attempts** [1] - 64:8
**attend** [2] - 4:8, 87:8
**attendance** [2] -
86:24, 87:6
**attention** [1] - 11:25
**attorney** [1] - 71:23
**attorneys** [2] - 27:10,
27:14
**attorneys'** [1] - 5:12
**attributes** [1] - 40:21
**authority** [2] - 86:18,
88:14
**authorized** [1] - 78:8
**available** [2] - 33:15,
33:16
**avoid** [1] - 40:16
**awarded** [1] - 55:25
**aware** [6] - 4:16, 4:21,
11:6, 16:16, 17:16,
71:21

**B**

**bad** [3] - 32:15, 68:14,

70:20
**bad-faith** [2] - 68:14,
70:20
**bar** [2] - 78:7, 78:16
**BARTA** [1] - 2:13
**Barta** [1] - 3:20
**based** [4] - 21:7, 63:8,
64:11, 70:21
**basis** [3] - 18:7, 68:2,
88:4
**bearing** [1] - 19:23
**bears** [1] - 78:2
**become** [1] - 27:21
**BEFORE** [1] - 1:14
**beforehand** [1] - 7:9
**begin** [1] - 28:25
**beginning** [1] - 3:5
**begins** [1] - 77:21
**behalf** [2] - 3:14,
12:25
**believes** [2] - 77:25,
78:9
**belongs** [1] - 53:3
**benefit** [3] - 34:9,
62:22, 63:1
**benign** [2] - 33:8,
34:12
**Beth** [2] - 13:17, 13:24
**between** [3] - 9:24,
33:7, 61:24
**beyond** [3] - 32:7,
36:13, 40:15
**Bhave** [1] - 13:8
**BIDDLE** [1] - 2:11
**bifurcated** [4] - 15:8,
31:12, 31:25, 55:20
**bifurcation** [13] - 16:1,
16:13, 16:18, 17:6,
17:15, 17:16, 19:4,
22:8, 31:10, 32:12,
34:25, 36:17, 43:5
**bigger** [1] - 47:3
**bill** [2] - 84:18, 85:3
**bills** [1] - 84:18
**binders** [2] - 12:13,
12:15
**bioabsorbable** [2] -
63:2, 70:1
**biodegradable** [7] -
42:8, 70:4, 70:13,
76:20, 79:4, 79:22,
80:8
**bit** [3] - 33:10, 40:11,
40:20
**Bluni** [3] - 76:18,
78:25, 79:19
**BOARD** [1] - 1:4
**Board** [19] - 3:9, 24:8,
24:15, 24:16, 24:18,
24:22, 25:3, 25:9,

25:12, 25:14, 25:22,
25:24, 26:4, 26:10,
26:13, 26:19, 26:21,
26:25
**bona** [1] - 80:25
**borrowing** [1] - 38:21
**Boston** [171] - 3:9,
3:19, 3:21, 4:16,
6:20, 13:7, 13:8,
13:10, 13:17, 13:21,
14:5, 15:3, 18:9,
22:5, 22:19, 24:12,
27:19, 29:11, 30:4,
31:2, 31:24, 36:4,
36:6, 37:9, 37:14,
37:19, 37:21, 38:13,
41:9, 41:22, 41:25,
42:7, 44:8, 44:21,
45:2, 45:12, 45:15,
45:19, 45:24, 46:4,
46:7, 46:14, 46:24,
47:16, 47:22, 47:24,
48:3, 49:12, 49:16,
49:18, 49:21, 49:23,
49:24, 50:2, 50:3,
50:11, 50:24, 51:3,
51:5, 51:11, 51:13,
51:14, 51:19, 52:4,
52:9, 52:11, 53:2,
53:17, 53:20, 54:4,
54:5, 54:10, 54:13,
54:20, 54:25, 55:6,
55:17, 56:5, 56:24,
57:2, 57:4, 57:5,
57:7, 57:9, 57:12,
57:18, 57:22, 58:1,
58:4, 58:10, 62:23,
62:24, 63:20, 63:23,
63:25, 64:3, 64:7,
64:8, 64:10, 64:12,
64:22, 64:25, 65:3,
65:5, 65:8, 65:12,
65:16, 65:21, 66:1,
66:2, 66:8, 66:10,
66:11, 66:16, 66:20,
66:21, 66:24, 67:7,
68:18, 68:22, 69:13,
69:16, 69:19, 70:6,
70:14, 70:16, 70:23,
70:24, 71:3, 71:5,
71:19, 71:21, 71:22,
71:23, 72:1, 72:3,
72:13, 72:15, 75:11,
75:14, 75:17, 75:21,
75:25, 76:4, 76:8,
76:9, 76:12, 76:15,
77:4, 77:9, 78:17,
79:14, 79:25, 80:16,
80:21, 81:3, 81:14,
81:21, 83:6, 83:8,
86:3, 86:8, 86:10,

86:15, 87:14, 87:22,
88:15, 88:23, 89:5,
89:15
**boston** [1] - 67:3
**BOSTON** [1] - 1:7
**break** [8] - 14:21,
23:20, 23:21, 23:23,
23:24, 31:6, 31:7,
87:13
**brief** [10] - 22:15,
22:18, 22:20, 64:3,
75:2, 83:8, 87:19,
88:21, 88:24, 89:14
**briefing** [15] - 17:15,
17:16, 17:22, 17:25,
19:20, 43:11, 43:23,
55:11, 68:17, 82:25,
88:4, 88:20, 89:6,
89:22
**bring** [4] - 11:23, 15:3,
29:3, 88:5
**bringing** [1] - 21:8
**broken** [1] - 15:1
**brought** [2] - 9:21,
16:21
**BSC** [2] - 37:14, 45:19
**bunch** [1] - 88:1
**burden** [16] - 30:5,
30:9, 36:7, 36:11,
36:13, 41:10, 41:14,
76:9, 76:10, 78:2,
78:6, 78:10, 78:13,
80:1, 80:13, 89:12
**Burdens** [1] - 29:22,
54:21
**business** [3] - 27:13,
27:17, 42:21
**busy** [1] - 5:10
**buying** [2] - 20:17,
49:9
**BY** [4] - 2:3, 2:6, 2:9,
2:12

**C**

**California's** [1] - 41:24
**cannot** [1] - 80:17
**capable** [1] - 15:4
**capture** [1] - 27:15
**cardiologist** [1] -
14:16
**cardiologists** [1] -
14:15
**care** [5] - 39:23, 53:24,
61:17, 81:23, 82:3
**case** [47] - 8:16, 8:18,
10:13, 12:4, 14:3,
14:18, 15:9, 15:24,
15:25, 16:14, 18:2,
20:8, 20:9, 20:22,

20:23, 21:4, 24:1, 29:11, 29:25, 30:7, 31:12, 31:19, 35:1, 38:23, 43:20, 44:3, 49:1, 49:6, 52:11, 53:16, 53:21, 55:18, 55:20, 55:23, 58:14, 62:21, 66:14, 66:15, 68:13, 70:24, 78:16, 86:16, 87:1, 88:16, 89:3, 90:4
**Case** [1] - 1:5
**case-in-chief** [1] - 86:16
**cases** [3] - 21:16, 72:7, 88:1
**Cat** [6] - 59:23, 60:1, 73:13, 74:6, 77:23, 80:11
**caused** [1] - 51:19
**causes** [2] - 64:14, 65:13
**caveat** [1] - 71:8
**cc** [1] - 12:3
**certain** [11] - 9:18, 10:7, 12:23, 15:4, 31:25, 32:18, 34:15, 65:19, 67:14, 71:6, 75:15
**certainly** [1] - 5:20
**certify** [1] - 90:20
**CHAD** [1] - 2:12
**Chad** [2] - 3:19, 8:6
**challenge** [2] - 15:12, 62:10
**challenging** [2] - 36:5, 41:8
**CHAN** [1] - 2:5
**change** [4] - 11:21, 40:25, 50:23, 63:24
**changed** [1] - 10:11
**changes** [2] - 60:12, 60:22
**changing** [1] - 65:24
**channel** [1] - 77:14
**characterization** [2] - 6:14, 10:5
**characterize** [1] - 6:15
**charge** [3] - 6:8, 40:3, 59:24
**check** [2] - 9:4, 11:10
**Chen** [2] - 13:9, 14:4
**chief** [1] - 86:16
**CHIJIOKE** [1] - 2:6
**Chijioke** [1] - 3:16
**child** [1] - 27:12
**choice** [1] - 67:1
**Circuit** [1] - 68:7
**circumstance** [1] - 85:19

**circumstantial** [1] - 16:8
**cited** [1] - 16:4
**cites** [1] - 80:21
**Civil** [3] - 3:10, 67:24, 87:9
**claim** [24] - 18:5, 18:10, 30:9, 30:17, 37:6, 39:9, 39:10, 39:14, 39:20, 40:19, 47:6, 49:18, 51:10, 51:12, 53:3, 64:23, 65:6, 65:7, 65:10, 65:20, 66:14, 68:23, 70:12, 70:16
**claimed** [5] - 40:16, 40:17, 44:10, 64:10, 78:19
**claims** [29] - 18:11, 30:1, 31:2, 36:3, 36:4, 36:7, 37:16, 39:5, 39:8, 39:14, 41:10, 45:13, 45:16, 45:20, 45:22, 46:3, 46:6, 46:18, 49:7, 49:14, 50:12, 50:24, 51:6, 52:15, 57:3, 57:10, 75:24, 76:3, 79:18
**clarify** [3] - 12:22, 26:9, 26:11
**clear** [18] - 30:4, 30:9, 32:21, 35:25, 36:8, 36:10, 39:8, 40:2, 41:6, 41:11, 41:13, 51:5, 51:9, 80:2, 84:13, 87:7
**clearly** [6] - 5:20, 5:24, 6:3, 63:4, 80:10, 86:21
**clears** [1] - 39:18
**clerk** [2] - 12:4, 12:16
**clinical** [15] - 7:8, 7:9, 7:19, 7:22, 8:24, 9:14, 9:16, 10:2, 11:4, 15:20, 62:14, 62:22, 63:1, 63:8
**close** [3] - 42:21, 67:18, 77:7
**closer** [1] - 38:25
**closing** [2] - 6:20, 46:23
**coat** [1] - 69:4
**coated** [1] - 67:13
**coating** [13] - 65:13, 66:13, 66:18, 67:4, 67:23, 69:14, 69:15, 70:11, 70:15, 70:24, 71:19, 72:1, 72:25
**coatings** [1] - 70:5

**Code** [1] - 20:17
**coding** [2] - 10:12, 66:11
**colleague** [1] - 5:16
**column** [1] - 69:24
**combining** [1] - 38:20
**coming** [6] - 13:18, 13:25, 22:16, 34:21, 35:16, 85:8
**command** [2] - 86:23, 87:8
**comment** [1] - 32:7
**comments** [2] - 39:1, 56:18
**commercial** [1] - 7:18
**commercially** [3] - 10:8, 11:3, 11:7
**commit** [2] - 47:9, 47:11
**committed** [1] - 47:17
**common** [7] - 23:1, 23:8, 23:10, 64:24, 65:4, 65:10, 68:20
**company** [2] - 20:17, 88:4
**compared** [2] - 63:3, 70:6
**compel** [5] - 86:23, 87:4, 87:22, 88:4, 88:14
**compelled** [1] - 87:1
**compensate** [1] - 54:19
**complaining** [1] - 20:7
**complaint** [6] - 4:17, 4:20, 5:1, 6:4, 9:12, 77:6
**Complete** [1] - 38:22
**complete** [1] - 67:25
**completely** [1] - 21:15
**completes** [2] - 45:6, 56:21
**compliance** [4] - 59:3, 72:17, 76:8, 87:2
**complied** [3] - 57:16, 57:20, 59:3
**comply** [1] - 68:14
**complying** [1] - 87:15
**compositions** [1] - 78:25
**concern** [3] - 22:2, 46:1
**concerning** [4] - 38:11, 41:6, 41:19, 75:17
**concluded** [1] - 90:18
**confer** [14] - 5:23, 6:15, 34:17, 55:12, 56:19, 60:11, 60:13, 61:2, 61:5, 83:3,

83:14, 84:10, 86:9, 89:24
**conference** [4] - 3:4, 3:9, 40:3, 59:24
**Conference** [1] - 1:11
**conferred** [1] - 86:6
**confidential** [4] - 77:3, 80:15, 80:22, 81:8
**confidentiality** [1] - 59:6
**confirmed** [1] - 67:14
**conform** [1] - 67:15
**confront** [1] - 86:13
**confused** [2] - 25:6, 46:17
**confusing** [7] - 40:11, 40:20, 48:9, 48:18, 52:2, 62:20, 71:13
**confusion** [1] - 48:25
**connects** [1] - 71:22
**Connolly** [1] - 53:16
**consequence** [1] - 71:16
**consider** [2] - 41:21, 55:14
**consideration** [6] - 18:16, 19:22, 43:9, 52:20, 81:1
**considerations** [8] - 18:5, 18:13, 18:20, 42:12, 42:16, 43:6, 43:13, 43:17
**considering** [1] - 37:4
**consistent** [6] - 29:25, 43:10, 64:16, 68:5, 69:18, 89:21
**construction** [11] - 38:7, 63:21, 64:11, 64:17, 65:20, 66:14, 66:17, 67:21, 68:23, 70:22
**constructions** [2] - 30:18, 67:13
**construe** [1] - 63:13
**construed** [4] - 63:15, 64:19, 66:4, 70:17
**consulting** [1] - 74:9
**contain** [4] - 64:6, 67:25, 76:25, 77:12
**contained** [3] - 29:10, 29:17, 80:7
**containing** [1] - 63:18
**contains** [2] - 70:11, 70:13
**contend** [3] - 72:21, 74:18, 86:11
**contends** [1] - 81:9
**contention** [1] - 80:17
**contentions** [5] - 8:10, 9:2, 11:6, 11:9,

78:15
**contest** [1] - 81:3
**contested** [1] - 5:8
**continue** [2] - 14:2, 30:21
**continued** [1] - 77:19
**continuous** [3] - 69:23, 70:2, 77:13
**contract** [2] - 77:3, 81:8
**contrary** [2] - 21:15, 88:14
**control** [1] - 25:18
**controlled** [1] - 80:15
**convincing** [11] - 30:4, 30:10, 36:1, 36:8, 36:10, 41:6, 41:11, 41:13, 51:6
**coordinate** [1] - 23:9
**copied** [2] - 15:21, 16:15
**copies** [3] - 12:12, 12:13, 12:15
**copy** [9] - 15:18, 20:14, 29:9, 29:17, 29:20, 29:21, 30:16, 30:18, 56:14
**copying** [19] - 15:11, 15:23, 15:25, 16:8, 16:13, 17:6, 17:11, 17:17, 17:20, 18:2, 18:17, 19:2, 19:3, 19:5, 19:9, 19:22, 21:1, 21:19
**copyrights** [1] - 28:4
**Corey** [2] - 3:16, 85:25
**COREY** [1] - 2:6
**coronary** [1] - 28:14
**CORP** [1] - 1:7
**corporate** [3] - 4:7, 86:8, 88:18
**Corporation** [4] - 51:11, 51:13, 52:5, 86:4
**correct** [4] - 46:15, 58:16, 59:19, 81:16
**Counsel** [2] - 2:8, 2:15
**COUNSEL** [1] - 90:11
**counsel** [6] - 3:11, 3:15, 29:4, 52:8, 76:15, 86:6
**couple** [1] - 5:25
**course** [3] - 13:15, 26:1, 65:18
**Course** [1] - 30:23
**court** [8] - 12:16, 20:9, 32:6, 65:6, 78:14, 80:11, 87:13, 88:2
**Court** [93] - 4:11, 4:21, 5:9, 6:24, 9:3, 11:25,

12:1, 12:8, 12:10, 12:14, 14:1, 15:4, 15:23, 16:11, 16:16, 18:18, 19:21, 22:25, 23:3, 23:13, 24:9, 31:18, 31:19, 32:1, 32:11, 33:1, 33:12, 33:13, 33:20, 33:22, 34:1, 34:21, 35:1, 35:4, 35:5, 35:15, 38:15, 40:4, 42:8, 44:18, 44:24, 45:3, 45:4, 50:21, 51:1, 52:18, 55:10, 55:13, 56:14, 56:17, 56:24, 61:7, 61:23, 61:25, 62:18, 63:19, 63:23, 63:25, 64:7, 64:12, 64:19, 64:22, 65:7, 65:16, 65:23, 66:4, 68:21, 68:22, 68:23, 70:9, 70:10, 71:3, 71:10, 75:12, 78:11, 79:25, 81:13, 81:20, 81:21, 82:1, 82:2, 82:22, 82:24, 84:18, 84:21, 86:13, 88:3, 88:25, 90:1, 90:6, 90:23

**COURT** [113] - 1:1, 1:15, 3:6, 3:23, 4:12, 5:5, 5:19, 6:17, 6:19, 7:11, 7:21, 7:24, 8:2, 8:5, 8:23, 9:10, 9:22, 10:15, 10:21, 11:16, 13:5, 14:23, 17:1, 17:3, 17:23, 19:19, 21:11, 22:13, 24:21, 25:4, 25:18, 26:8, 26:12, 26:16, 32:9, 32:23, 33:1, 34:8, 34:16, 35:13, 37:8, 37:11, 37:21, 37:24, 38:2, 39:12, 39:16, 39:21, 40:6, 40:9, 40:24, 41:2, 41:18, 42:23, 43:3, 43:21, 44:7, 44:18, 46:9, 46:13, 46:16, 46:21, 47:20, 48:21, 49:4, 50:5, 50:13, 50:16, 50:21, 51:21, 51:23, 52:17, 52:20, 52:23, 53:11, 54:12, 54:14, 55:9, 56:1, 56:4, 59:7, 59:16, 60:8, 60:11, 60:15, 60:17, 61:5, 61:11, 61:16, 74:12, 74:15, 75:8, 75:11, 82:8, 83:2, 83:13, 83:15, 83:17,

83:20, 84:3, 84:9, 84:14, 85:6, 85:18, 85:24, 87:11, 88:7, 88:12, 88:19, 89:9, 89:12, 89:18, 90:16

**Court's** [16] - 11:25, 12:2, 30:17, 32:20, 36:17, 38:7, 50:8, 55:4, 56:15, 62:3, 65:20, 66:13, 67:13, 67:17, 68:15, 83:25

**Courtroom** [2] - 3:5, 28:24

**cover** [1] - 89:19

**covered** [3] - 46:2, 46:5, 46:18

**cross** [5] - 20:25, 21:2, 43:2, 44:4, 62:12

**cross-examination** [4] - 20:25, 21:2, 43:2, 62:12

**CRR** [2] - 1:25, 90:23

**cumbersome** [2] - 24:24, 25:22

**cure** [3] - 67:1, 68:11, 70:20

**cut** [1] - 56:13

**cutting** [1] - 14:17

**Cymed** [1] - 71:24

### D

**D.I** [1] - 69:11

**Damages** [1] - 55:15

**damages** [18] - 7:10, 10:7, 14:10, 15:9, 31:22, 35:7, 53:7, 54:19, 55:17, 55:24, 55:25, 58:7, 58:8, 62:21, 72:18, 75:17, 77:16, 77:19

**danger** [2] - 62:19, 71:12

**date** [2] - 58:5, 83:12

**dates** [1] - 78:20

**DAVID** [1] - 2:13

**David** [2] - 3:20, 32:10

**days** [6] - 23:15, 23:17, 32:19, 33:15, 84:5, 84:13

**deadline** [3] - 18:21, 18:24, 19:21

**deal** [13] - 4:1, 4:3, 6:1, 9:7, 11:7, 14:23, 16:19, 23:18, 23:19, 24:5, 29:23, 30:23, 86:13

**dealing** [3] - 4:6, 22:8, 82:15

**dealings** [1] - 27:13

**deals** [4] - 6:9, 6:19, 36:16, 63:13

**decide** [2] - 34:4, 34:11

**decided** [1] - 36:18

**decision** [5] - 16:13, 37:5, 55:4, 55:22, 77:23

**decisions** [1] - 32:2

**declaration** [3] - 66:20, 68:25, 69:3

**declined** [1] - 84:7

**Deere** [1] - 18:7

**Defendant** [2] - 1:8, 2:15

**defendant** [3] - 18:22, 35:12, 69:7

**defendant's** [1] - 67:21

**Defendant's** [1] - 23:7

**defendants** [3] - 12:25, 67:22, 88:11

**defendants'** [1] - 27:22

**defense** [6] - 17:9, 30:9, 34:24, 65:22, 76:11, 77:6

**defenses** [1] - 31:3

**define** [1] - 10:19

**defined** [1] - 10:18

**definitely** [2] - 6:16, 20:9

**definition** [1] - 10:20

**DELAWARE** [1] - 1:2

**Delaware** [2] - 1:10, 86:4

**delete** [1] - 11:14

**deleted** [1] - 27:7

**deliberate** [1] - 33:3

**delivering** [1] - 82:3

**demonstrated** [1] - 70:20

**demonstrative** [1] - 83:3

**demonstratives** [3] - 11:24, 82:16, 84:1

**denied** [3] - 62:8, 62:15, 63:11, 66:2, 71:8

**denies** [2] - 71:3, 81:21

**deny** [2] - 75:13, 81:14

**denying** [1] - 36:3

**dependant** [2] - 39:18, 39:20

**dependent** [4] - 39:6, 39:7, 39:10, 39:14

**deposition** [8] - 11:24, 12:6, 12:12, 12:15,

14:5, 74:22, 79:13, 87:23

**DEPUMPO** [1] - 2:5

**Deputy** [1] - 28:24

**describe** [2] - 42:12, 69:19

**described** [2] - 70:7, 75:20

**description** [2] - 8:20, 44:24

**designate** [2] - 23:6, 87:23

**designation** [4] - 12:20, 36:14, 56:9, 88:17

**designations** [4] - 11:24, 12:6, 12:13, 12:16

**designed** [1] - 77:13

**detail** [2] - 18:7, 66:3

**detailed** [1] - 15:16

**determine** [4] - 7:12, 39:4, 68:8, 86:14

**determining** [1] - 71:16

**developing** [2] - 79:3, 79:7

**development** [5] - 16:9, 20:16, 77:3, 78:24, 81:8

**device** [1] - 72:24

**devices** [3] - 16:9, 16:10, 28:14

**dictate** [1] - 87:1

**difference** [2] - 59:11

**different** [3] - 20:18, 22:25, 78:13

**differently** [1] - 7:16

**diligence** [2] - 59:13, 59:14

**dire** [4] - 24:4, 26:16, 28:22, 61:22

**direct** [11] - 12:3, 44:4, 47:5, 47:23, 48:1, 48:4, 51:10, 52:3, 52:5, 52:13, 72:9

**directed** [1] - 86:3

**directly** [11] - 37:15, 45:19, 47:11, 47:17, 47:24, 50:11, 50:20, 51:16, 51:21, 51:22, 74:17

**disagree** [1] - 6:14

**disagreement** [2] - 9:24, 35:25

**disclose** [2] - 20:8, 43:14, 43:16, 80:18

**disclosed** [8] - 15:19, 20:19, 20:20, 43:9, 43:12, 73:12, 73:22,

82:13

**disclosure** [1] - 21:16

**disclosures** [1] - 15:16

**discovered** [1] - 9:15

**discovery** [20] - 9:14, 18:1, 19:1, 19:2, 19:12, 19:13, 19:20, 21:5, 21:17, 22:12, 43:12, 75:18, 77:7, 80:19, 87:5, 88:6, 88:7, 88:9

**discrete** [2] - 63:17, 77:14

**discuss** [4] - 12:9, 38:19, 66:21, 82:10

**discussed** [1] - 30:18

**discussion** [1] - 20:9

**dismissed** [1] - 63:25

**dispersed** [1] - 63:18

**disposed** [1] - 69:20

**disposition** [1] - 81:2

**dispute** [26] - 10:19, 24:7, 27:3, 29:8, 29:23, 30:14, 30:22, 30:24, 35:19, 36:16, 38:5, 38:6, 38:11, 41:5, 41:19, 42:4, 42:5, 53:14, 53:22, 56:4, 58:14, 67:20, 68:21, 76:1, 85:10, 89:23

**disputes** [6] - 11:22, 11:23, 26:25, 62:8, 64:3, 90:3

**disrupt** [1] - 68:13

**dissolving** [1] - 63:14

**distinctions** [1] - 12:21

**DISTRICT** [3] - 1:1, 1:2, 1:15

**District** [3] - 41:24, 78:11, 90:23

**divided** [1] - 31:19

**docket** [1] - 5:10

**documents** [3] - 61:25, 71:25, 89:20

**domain** [1] - 70:2

**Dominic** [1] - 13:7

**done** [8] - 19:12, 25:12, 31:16, 32:17, 42:20, 49:11, 59:5, 90:7

**double** [2] - 9:1, 9:4

**doubt** [1] - 36:13

**down** [1] - 88:3

**Dr** [39] - 9:2, 9:6, 13:11, 20:10, 20:13, 21:24, 65:15, 65:17, 65:18, 65:22, 65:23,

66:8, 66:10, 66:14, 66:17, 66:19, 66:22, 67:1, 67:3, 67:6, 67:7, 67:11, 68:25, 69:2, 69:4, 69:6, 69:7, 69:14, 69:22, 70:10, 70:14, 70:15, 70:23, 70:25, 74:20, 76:17, 78:25, 79:11, 79:19
**drafted** [1] - 37:11
**DRAWN** [1] - 87:17
**Drinker** [1] - 3:21
**drinker** [1] - 8:7
**DRINKER** [1] - 2:11
**drop** [7] - 37:6, 37:18, 37:19, 37:24, 49:1, 50:1, 50:2
**DROWN** [29] - 2:12, 8:6, 9:1, 10:23, 12:24, 13:6, 17:2, 17:4, 17:24, 21:12, 38:24, 39:19, 40:8, 41:1, 43:4, 47:1, 47:25, 48:22, 51:8, 51:22, 51:24, 52:19, 60:18, 61:4, 61:9, 61:13, 74:14, 74:16, 89:11
**Drown** [2] - 3:20, 8:6
**drug** [17] - 28:15, 63:2, 63:17, 64:5, 67:8, 69:8, 73:10, 73:11, 76:20, 76:25, 77:12, 77:13, 78:25, 79:22, 80:8, 80:9
**drug-eluting** [2] - 28:15, 63:2
**drug-loaded** [5] - 67:8, 69:8, 78:25, 79:22, 80:9
**drug-loading** [1] - 76:20
**DTX** [1] - 23:7
**durable** [1] - 63:3
**during** [16] - 18:1, 19:12, 23:15, 26:11, 29:16, 53:20, 62:11, 64:24, 75:18, 78:20, 79:12, 82:4, 85:12, 86:16, 88:7, 88:9

## E

**e-mail** [6] - 12:2, 12:3, 12:5, 62:3
**early** [2] - 34:23, 37:5
**easier** [2] - 23:12, 23:13, 56:24
**Edge** [4] - 76:19, 77:2,

79:8, 79:21
**edit** [2] - 31:5, 44:19
**edited** [1] - 27:7
**edits** [2] - 40:5, 53:19
**education** [1] - 41:19
**effect** [2] - 33:5, 84:2
**efficient** [1] - 68:13
**effort** [1] - 4:24
**efforts** [4] - 57:15, 58:21, 59:2
**either** [8] - 25:1, 25:3, 30:5, 33:9, 38:18, 48:19, 65:9, 76:1
**either's** [1] - 36:1
**electronic** [1] - 62:2
**element** [7] - 40:17, 40:18, 40:19, 40:20, 40:23, 49:8, 52:25
**eliminate** [1] - 42:18
**eliminated** [1] - 44:13
**ELUTE** [5] - 76:21, 76:23, 79:24, 80:4, 80:5
**eluting** [2] - 28:15, 63:2
**embodies** [1] - 78:18
**embodiments** [2] - 75:16, 75:23
**emphasis** [1] - 44:14
**employed** [3] - 27:13, 27:18, 28:2
**employees** [1] - 13:21
**emulsion** [4] - 76:17, 76:18, 79:19, 79:20
**encompass** [1] - 67:22
**end** [17] - 15:22, 22:16, 22:18, 22:20, 23:2, 28:1, 28:24, 35:15, 35:20, 45:2, 56:17, 61:25, 83:18, 88:22, 88:25, 89:15
**ended** [1] - 20:18
**enforce** [2] - 58:20, 59:14
**engaged** [2] - 79:15, 79:16
**engineer** [1] - 14:5
**ensure** [3] - 57:15, 59:2, 59:13
**ensures** [1] - 34:13
**entire** [1] - 73:16
**entirely** [1] - 37:7
**entities** [1] - 53:3
**entitled** [1] - 58:10
**entity** [3] - 54:10, 73:4, 88:18
**equate** [1] - 64:1

**error** [1] - 41:16
**especially** [3] - 16:8, 20:24, 25:7
**ESQ** [11] - 2:3, 2:6, 2:6, 2:7, 2:9, 2:12, 2:12, 2:13, 2:13, 2:14, 2:14
**establish** [1] - 18:10
**established** [1] - 86:17
**et** [1] - 1:4
**etc** [6] - 6:11, 46:4, 46:20, 46:23, 49:19, 59:6
**Ethicon** [1] - 66:15
**Evan** [1] - 3:20
**EVAN** [1] - 2:14
**evening** [1] - 85:25
**everolimus** [5] - 64:5, 64:6, 64:9, 64:14, 64:15
**Evidence** [5] - 4:9, 21:16, 62:16, 71:9, 86:19
**evidence** [86] - 7:18, 9:20, 12:6, 12:23, 16:8, 16:14, 17:7, 17:10, 17:14, 17:18, 17:20, 18:2, 18:10, 19:4, 19:7, 20:4, 21:13, 22:9, 26:3, 29:24, 30:4, 30:10, 32:1, 32:2, 35:22, 36:1, 36:8, 36:9, 36:10, 36:11, 36:22, 37:13, 41:6, 41:11, 41:12, 41:13, 41:14, 42:12, 42:18, 42:19, 42:24, 45:11, 45:18, 46:14, 50:11, 50:23, 51:6, 53:23, 54:3, 54:19, 54:22, 57:2, 57:9, 57:14, 57:20, 57:25, 58:9, 62:9, 62:14, 62:17, 62:18, 63:7, 63:10, 68:10, 68:12, 68:16, 71:6, 71:9, 71:10, 71:11, 71:14, 71:16, 72:7, 72:8, 72:12, 72:16, 73:16, 74:24, 75:15, 75:17, 76:1, 84:19, 84:22
**evidentiary** [1] - 82:18
**exactly** [6] - 15:21, 16:10, 20:19, 21:22, 22:7, 32:25
**examination** [4] - 20:25, 21:2, 43:2, 62:12

**examinations** [1] - 25:10
**example** [1] - 22:3
**examples** [1] - 69:13
**except** [3] - 37:19, 61:21, 77:17
**exception** [2] - 80:23, 81:25
**exchange** [1] - 13:1
**exclude** [9] - 62:7, 62:14, 62:18, 63:7, 63:10, 64:12, 71:6, 71:11, 72:16
**excluded** [1] - 68:15
**excludes** [1] - 64:7
**exempt** [2] - 81:4, 81:8
**exhibit** [4] - 22:24, 23:2, 23:3, 23:11
**exhibits** [7] - 11:24, 22:22, 22:23, 23:1, 23:3, 23:4, 23:8
**Exhibits** [1] - 23:7
**exist** [2] - 18:5, 74:5
**expect** [2] - 32:8, 89:19
**expected** [1] - 81:1
**expedition** [1] - 80:11
**experience** [3] - 28:4, 28:14, 41:19
**expert** [29] - 8:10, 8:17, 13:10, 13:11, 14:11, 18:21, 18:22, 18:24, 19:2, 19:13, 19:24, 20:1, 21:19, 21:20, 21:24, 62:25, 64:7, 64:8, 64:13, 65:17, 66:16, 67:6, 67:18, 67:25, 76:1, 82:20
**expert's** [1] - 64:13
**experts** [3] - 14:14, 20:25, 65:9
**explain** [9] - 18:7, 25:13, 25:16, 32:4, 32:5, 39:7, 39:17, 46:22, 65:23
**explained** [3] - 63:20, 64:22, 67:19
**explaining** [1] - 65:19
**explanation** [1] - 72:23
**express** [1] - 68:1
**extent** [14] - 4:4, 6:6, 18:4, 23:1, 23:4, 23:7, 23:8, 29:2, 64:8, 64:13, 65:8, 68:12, 73:21, 85:8

## F

**facie** [2] - 17:10, 18:10
**fact** [19] - 4:4, 4:16, 5:24, 6:4, 9:4, 19:13, 19:15, 19:16, 30:11, 36:9, 41:12, 68:9, 68:22, 71:15, 71:16, 77:7, 77:11, 88:15
**factor** [1] - 17:7
**factors** [17] - 17:8, 17:11, 19:18, 21:18, 21:25, 41:23, 42:1, 66:23, 68:7, 70:9
**facts** [14] - 4:2, 4:19, 4:23, 5:1, 5:2, 5:6, 5:11, 5:13, 5:17, 5:20, 5:21, 5:22
**factual** [1] - 64:4
**factually** [2] - 59:20, 59:21
**Faegre** [1] - 3:21
**FAEGRE** [1] - 2:11
**failed** [4] - 20:18, 63:6, 66:21, 68:4
**failing** [2] - 20:16, 68:14
**fails** [1] - 77:6
**failure** [4] - 68:6, 68:8, 78:5
**fair** [2] - 21:5, 60:24
**fairly** [2] - 67:6, 69:6
**fairness** [1] - 21:9
**faith** [3] - 13:2, 68:14, 70:20
**fakery** [1] - 8:7
**falling** [1] - 79:17
**family** [7] - 16:6, 27:12, 27:17, 28:2, 28:7, 28:10, 80:4
**far** [3] - 15:7, 16:21, 84:21
**FARNAN** [3] - 2:9, 2:9, 3:18
**Farnan** [1] - 3:18
**favor** [15] - 45:14, 45:15, 45:23, 57:4, 57:5, 57:6, 57:7, 57:11, 57:12, 57:17, 57:21, 57:22, 58:3, 58:4
**FDA** [1] - 72:3
**feared** [1] - 80:12
**features** [3] - 40:13, 40:15, 40:21
**Federal** [7] - 4:9, 21:15, 62:16, 67:24, 71:9, 86:18, 87:9
**feelings** [2] - 66:9, 66:22

**fees** [1] - 5:12
**felt** [2] - 17:11, 20:15
**few** [3] - 5:15, 5:16
**FHU** [1] - 7:23
**fiber** [33] - 16:10, 38:6, 63:16, 63:18, 64:18, 64:19, 64:23, 65:4, 66:4, 66:15, 67:18, 67:20, 67:22, 68:18, 69:14, 69:23, 70:5, 70:11, 70:13, 70:17, 70:22, 72:2, 73:11, 75:19, 76:17, 76:18, 76:20, 79:4, 79:7, 79:19, 79:20, 79:22, 80:9
**fibers** [23] - 42:8, 65:9, 67:9, 67:13, 69:4, 69:9, 69:15, 69:17, 70:7, 71:20, 75:4, 75:15, 75:22, 76:2, 76:6, 76:13, 76:19, 78:25, 79:21, 80:6, 80:18, 80:20
**fibrous** [1] - 69:20
**fide** [1] - 80:25
**field** [3] - 42:6, 42:7, 42:9
**fifty** [1] - 84:5
**fifty-one** [1] - 84:5
**figure** [1] - 16:1
**filamentous** [1] - 68:19
**filaments** [1] - 69:17
**file** [2] - 87:19
**filed** [2] - 72:22, 77:7
**filing** [1] - 58:2
**final** [5] - 3:8, 35:17, 45:6, 53:25, 56:21
**finally** [1] - 31:1
**fine** [7] - 25:3, 40:24, 40:25, 41:1, 44:18, 82:5, 82:6
**finish** [1] - 23:25
**finished** [1] - 16:10
**finishing** [1] - 39:19
**firms** [2] - 27:10, 27:14
**first** [61] - 3:25, 7:20, 7:22, 8:25, 9:1, 9:16, 10:2, 13:6, 15:8, 15:10, 17:5, 17:15, 17:25, 19:8, 22:1, 22:10, 23:16, 26:20, 27:2, 27:4, 29:8, 29:10, 29:23, 30:16, 31:20, 33:6, 33:23, 35:6, 35:19, 38:11, 39:3, 41:4, 42:5, 44:3, 44:7, 45:4,

47:4, 47:13, 47:14, 48:9, 48:10, 48:13, 48:17, 48:24, 50:4, 52:1, 52:2, 53:14, 53:21, 55:15, 62:6, 63:13, 63:15, 64:2, 77:6, 80:2, 83:6, 86:15, 89:5, 89:8
**first-amended** [1] - 77:6
**fishing** [1] - 80:11
**five** [7] - 22:15, 42:1, 57:24, 68:15, 69:12, 79:1, 79:5
**flagged** [1] - 84:4
**floating** [1] - 8:13
**fly** [2] - 14:22
**folks** [2] - 28:25, 29:2
**follow** [6] - 22:11, 23:13, 23:14, 29:4, 29:18, 89:1
**follow-up** [1] - 29:4
**followed** [1] - 23:21
**following** [7] - 3:4, 12:1, 18:12, 45:13, 51:6, 57:3, 90:18
**footnote** [1] - 63:25
**FOR** [1] - 1:2
**force** [1] - 4:24
**foregoing** [1] - 90:20
**foreign** [1] - 28:8
**form** [12] - 45:8, 47:4, 48:9, 51:17, 56:23, 56:25, 60:12, 60:20, 61:6, 61:15, 65:14, 67:4
**formal** [1] - 60:21
**format** [1] - 70:5
**formed** [1] - 69:24
**former** [1] - 14:4
**forth** [3] - 19:21, 71:3, 81:21
**foundational** [1] - 82:20
**four** [10] - 27:8, 27:11, 30:15, 54:15, 57:19, 68:14, 75:22, 76:16, 79:22, 86:12
**fourth** [1] - 44:23
**framework** [1] - 62:11
**free** [2] - 32:21, 60:13
**Friday** [3] - 24:1, 32:16, 83:20
**full** [2] - 7:10, 14:17

**G**

**gel** [1] - 76:25
**general** [1] - 33:4
**Generally** [1] - 55:15

**generally** - 38:17
**Genomics** [1] - 38:22
**genuine** [1] - 68:21
**geometry** [1] - 72:5
**given** [10] - 30:21, 62:10, 65:19, 65:23, 73:9, 78:4, 78:5, 81:11, 81:18, 89:23
**goal** [1] - 23:25
**good-faith** [1] - 13:2
**goodwill** [1] - 90:15
**Graham** [1] - 18:6
**grant** [1] - 4:7
**granted** [1] - 63:11
**granting** [1] - 84:21
**grants** [1] - 65:8
**greetings** [1] - 90:15
**GREGORY** [1] - 1:14
**GRIMGRUD** [13] - 6:13, 6:18, 24:13, 25:2, 26:9, 26:15, 82:6, 82:11, 83:10, 83:14, 83:16, 83:19, 83:22
**GRIMSRUD** [1] - 2:12
**Grimsrud** [1] - 3:19
**GROSS** [6] - 2:13, 32:10, 32:25, 33:10, 34:14, 34:20
**Gross** [2] - 3:20, 32:10
**grouping** [1] - 11:4, 14:7
**guess** [3] - 10:23, 75:5, 90:10
**guys** [10] - 5:19, 10:21, 11:18, 23:9, 34:16, 38:18, 61:8, 61:23, 83:15, 84:10

**H**

**half** [1] - 44:3
**handed** [1] - 28:19
**handle** [7] - 16:11, 27:1, 28:21, 84:16, 84:17, 84:18, 85:5
**happy** [1] - 89:1, 89:6
**harmless** [4] - 66:9, 66:23, 68:6, 68:9
**head's** [1] - 82:22
**hear** [9] - 7:2, 22:13, 25:14, 25:23, 26:6, 26:21, 33:16, 52:21, 87:14
**heard** [4] - 17:4, 17:5, 36:12, 75:8
**hearing** [3] - 64:24, 67:19, 74:19
**heart** [1] - 14:15
**held** [1] - 3:5

**helpful** [3] - 13:15, 39:2, 39:3
**hereby** [1] - 90:20
**herring** [1] - 73:17
**hi** [1] - 90:17
**higher** [3] - 30:12, 36:10, 41:13
**highlighted** [1] - 21:9
**highly** [3] - 30:10, 36:9, 41:12
**hinted** [1] - 86:2
**hole** [1] - 73:18
**home** [2] - 34:23, 35:11
**honestly** [1] - 25:5
**Honor** [72] - 3:13, 3:17, 4:10, 6:13, 7:4, 7:15, 9:11, 11:8, 12:24, 13:24, 14:9, 14:13, 14:25, 17:2, 17:4, 17:13, 17:21, 17:25, 19:10, 21:12, 22:2, 24:13, 26:9, 26:15, 32:10, 32:13, 32:19, 32:25, 33:10, 34:6, 34:20, 38:24, 40:1, 40:8, 41:1, 42:21, 43:4, 43:10, 43:19, 44:2, 44:12, 46:1, 47:2, 47:8, 48:8, 51:8, 52:19, 52:22, 54:7, 55:20, 60:18, 60:20, 60:24, 61:3, 74:14, 75:6, 82:6, 82:7, 82:12, 83:10, 83:23, 83:24, 84:8, 85:21, 85:25, 87:17, 87:18, 88:10, 89:2, 89:17, 90:11, 90:12
**honor** [1] - 15:5
**Honor's** [3] - 22:8, 22:11, 74:17
**HONORABLE** [1] - 1:14
**honored** [1] - 22:11
**hope** [1] - 84:21
**hopefully** [1] - 55:12
**hospitals** [1] - 37:1
**hostile** [1] - 86:19
**hour** [1] - 23:22
**hours** [2] - 83:8, 84:1
**house** [4] - 7:22, 69:19, 80:6, 80:9
**human** [8] - 7:20, 7:22, 8:25, 9:16, 10:2, 15:13, 87:23, 88:5
**hundreds** [1] - 78:12
**hypothetical** [2] -

62:11, 63:5

**I**

**idea** [2] - 21:12, 50:4
**identifiable** [1] - 80:10
**identification** [1] - 78:14
**identified** [22] - 7:15, 8:9, 8:10, 8:24, 9:6, 9:23, 19:22, 59:25, 73:14, 74:6, 76:2, 76:6, 76:13, 78:3, 79:18, 80:8, 80:18, 80:20, 86:20, 86:21, 89:22
**identifies** [2] - 80:4, 86:7
**identify** [14] - 7:11, 7:25, 9:12, 17:14, 18:16, 19:19, 39:5, 42:17, 43:12, 59:23, 63:6, 73:13, 78:17, 78:19
**identifying** [3] - 8:15, 75:22, 78:12
**ignorance** [2] - 75:1, 75:5
**illicit** [1] - 88:9
**immediate** [5] - 27:12, 27:17, 28:2, 28:7, 28:10
**impact** [1] - 32:1
**impacts** [1] - 7:2
**impeach** [1] - 65:17
**impeachment** [2] - 65:15, 65:22
**implied** [1] - 71:19
**imploring** [1] - 90:6
**import** [1] - 46:8
**importance** [1] - 68:15
**important** [4] - 32:14, 32:17, 32:21, 33:14
**imported** [2] - 9:19, 46:20
**importing** [2] - 46:4, 49:10
**imposed** [1] - 47:7
**improper** [1] - 86:11
**IN** [2] - 1:1, 1:2
**in-house** [1] - 69:19
**Incapable** [1] - 63:14
**include** [12] - 5:5, 10:20, 27:22, 27:25, 30:15, 30:19, 32:18, 55:16, 56:6, 56:7, 67:8, 69:8
**included** [10] - 8:21, 10:17, 11:18, 13:4, 13:6, 67:5, 70:1,

73:2, 77:5, 78:24
**includes** [4] - 10:6,
11:4, 68:20, 87:10
**including** [6] - 6:24,
12:3, 18:8, 60:19,
70:4, 73:3
**inconsistent** [1] -
64:10
**incorporate** [2] -
39:21, 61:22
**incorporates** [1] -
78:18
**incorrect** [1] - 52:25
**incredibly** [1] - 48:18
**independent** [6] -
39:6, 39:7, 39:9,
39:10, 39:14, 39:18
**indicia** [4] - 18:12,
18:23, 42:15, 42:17
**indirect** [7] - 51:12,
51:14, 51:15, 51:17,
51:18, 51:25, 52:10
**individual** [1] - 61:1
**induce** [4] - 49:17,
49:20, 49:25, 50:3
**induced** [4] - 53:8,
54:4, 57:2, 72:10
**Induced** [1] - 55:3
**inducement** [14] -
37:3, 37:6, 47:8,
47:9, 48:7, 49:21,
50:5, 50:6, 50:17,
50:20, 51:13, 52:6,
53:10, 55:7
**inducing** [1] - 51:15
**Industries** [1] - 79:21
**industries** [1] - 76:19
**information** [5] - 16:4,
18:8, 20:14, 68:4,
68:5
**informed** [3] - 31:12,
34:23, 79:14
**informing** [1] - 40:4
**infringe** [24] - 7:14,
37:15, 39:14, 45:12,
46:2, 46:5, 46:19,
46:22, 47:18, 48:6,
49:13, 49:16, 49:17,
49:23, 50:20, 51:16,
51:21, 51:22, 53:3,
56:12, 66:18, 73:11,
77:19
**infringed** [11] - 31:22,
36:24, 45:20, 46:14,
46:25, 47:22, 47:24,
49:12, 50:11, 50:24,
70:16
**Infringement** [2] -
54:25, 55:3
**infringement** [58] -

7:1, 8:9, 8:11, 9:2,
10:13, 11:6, 11:9,
11:14, 15:14, 31:20,
36:25, 38:17, 39:5,
40:16, 46:3, 46:6,
47:5, 47:20, 47:23,
48:1, 48:4, 49:8,
49:9, 49:21, 50:14,
51:10, 51:12, 51:14,
51:17, 51:18, 51:25,
52:3, 52:4, 52:5,
52:10, 52:13, 53:1,
53:9, 53:10, 53:20,
54:4, 54:20, 55:23,
57:2, 57:10, 58:1,
58:5, 58:11, 66:19,
72:11, 77:7, 77:10,
77:17, 77:18, 77:20,
78:15
**infringer** [4] - 51:15,
77:18, 77:24, 78:9
**infringer's** [1] - 72:9
**infringers** [1] - 78:6
**infringes** [3] - 36:4,
46:5, 53:7
**infringing** [1] - 47:11
**initial** [2] - 10:22, 78:6
**inquiry** [1] - 63:24
**insert** [1] - 39:11
**insertion** [5] - 36:2,
42:15, 44:25, 45:1,
45:5
**inspect** [1] - 84:6
**instance** [3] - 36:6,
41:9, 54:23
**instead** [6] - 12:13,
31:5, 35:9, 36:2,
54:9, 69:6
**instruct** [3] - 8:2,
25:21, 26:1
**instructing** [5] -
11:25, 12:14, 22:25,
55:17, 55:24
**instruction** [21] -
29:22, 29:25, 30:14,
30:23, 31:4, 33:8,
38:15, 38:22, 38:24,
41:3, 41:24, 43:17,
48:11, 48:16, 48:18,
53:14, 53:16, 53:22,
54:24, 55:2, 60:9
**instructions** [22] -
6:18, 9:23, 10:1,
10:4, 24:25, 26:2,
26:18, 29:6, 31:8,
33:7, 35:18, 38:14,
38:20, 41:23, 45:6,
53:13, 53:24, 53:25,
56:21, 60:19, 60:22,
89:20

**intellectual** [1] - 28:4
**intend** [1] - 13:3
**intending** [2] - 60:20,
82:14
**intent** [7] - 13:19,
13:21, 13:23, 19:7,
47:17, 72:10
**interrogatory** [7] -
9:17, 9:20, 18:3,
21:13, 21:17, 78:22,
80:1
**Interrogatory** [1] -
18:3
**interventional** [2] -
14:14, 14:16
**introduce** [1] - 76:5
**introducing** [1] -
75:15
**Introduction** [1] -
53:15
**invalid** [5] - 31:22,
36:5, 36:7, 41:10,
51:7
**invalidity** [13] - 15:10,
15:11, 15:24, 16:14,
17:7, 17:8, 19:23,
20:5, 20:22, 20:23,
21:3, 21:21, 41:9
**Invalidity/Burden** [1] -
41:4
**Invalidity/Prior** [1] -
42:2
**invented** [2] - 44:9,
44:16
**invention** [12] - 15:14,
15:16, 15:18, 15:19,
15:21, 16:15, 42:7,
42:9, 62:22, 62:23,
78:3, 78:19
**inventor** [3] - 44:9,
44:16, 74:20
**inventors** [1] - 74:21
**invited** [1] - 84:6
**involved** [1] - 78:23
**irregardless** [2] - 35:6,
53:5
**irrelevant** [1] - 62:14
**issue** [50] - 4:6, 6:12,
6:24, 7:2, 7:5, 7:7,
8:16, 8:17, 9:17,
12:18, 13:16, 13:23,
14:13, 14:16, 15:7,
15:22, 16:18, 16:21,
21:9, 22:15, 24:5,
35:21, 36:15, 39:7,
41:6, 43:4, 44:15,
47:2, 47:3, 47:25,
55:7, 55:18, 58:13,
58:15, 58:16, 60:4,
66:13, 66:21, 73:17,

74:5, 81:12, 81:19,
82:11, 82:23, 85:8,
85:12, 85:22, 86:22,
87:14, 87:21
**issued** [1] - 18:18
**issues** [24] - 4:3, 6:6,
6:10, 6:16, 12:10,
15:2, 23:18, 32:2,
54:1, 55:10, 55:13,
62:20, 63:12, 71:13,
82:20, 82:21, 84:16,
86:13, 89:22, 89:25,
90:9
**items** [1] - 73:10
**itself** [3] - 46:8, 65:1

## J

**January** [2] - 1:11,
79:14
**job** [1] - 90:9
**Joe** [2] - 12:4, 38:16
**John** [1] - 18:6
**joint** [2] - 23:2, 23:3
**jointly** [2] - 12:1, 55:12
**Judge** [5] - 38:22,
53:16, 67:19, 70:21,
90:14
**judge** [2] - 12:17,
31:24
**JUDGE** [1] - 1:15
**judgment** [3] - 66:21,
68:17, 69:1
**judicial** [3] - 4:1, 4:15,
5:17
**jump** [1] - 24:4
**June** [1] - 68:17
**juror** [4] - 29:17,
29:19, 30:16, 81:25
**juror's** [2] - 82:1, 82:3
**jurors** [5] - 23:13,
23:21, 31:15, 32:14,
45:16
**jury** [41] - 7:12, 8:2,
12:10, 22:4, 23:17,
24:1, 25:13, 25:21,
26:5, 29:3, 29:25,
31:9, 31:11, 31:19,
31:25, 32:1, 32:4,
32:5, 32:12, 32:15,
33:20, 34:13, 34:22,
35:11, 35:17, 41:21,
41:24, 43:17, 44:5,
44:15, 45:6, 46:17,
47:23, 52:3, 53:12,
53:25, 56:21, 58:16,
58:24, 62:20, 71:13
**jury's** [1] - 31:14
**justified** [4] - 66:9,
66:23, 68:6, 68:8

## K

**Kate** [1] - 3:20
**KATHERINE** [1] - 2:14
**keep** [4] - 30:12,
42:21, 50:21, 56:1
**Kevin** [1] - 79:11
**kind** [1] - 24:25
**KLINE** [1] - 2:14
**Kline** [1] - 3:21
**KLINE-WEDEEN** [1] -
2:14
**Kline-Wedeen** [1] -
3:21
**knock** [1] - 88:3
**knowledge** [12] -
13:19, 13:20, 13:23,
19:6, 19:14, 19:15,
22:9, 28:13, 47:16,
72:9, 72:10, 72:13
**knows** [2] - 8:13,
15:23

## L

**Lab** [1] - 20:17
**label** [1] - 75:3
**labeled** [1] - 74:25
**Lane** [2] - 13:9, 14:4
**language** [12] - 30:6,
30:25, 34:12, 34:17,
34:19, 35:14, 35:23,
41:7, 50:8, 54:6,
59:7, 60:8
**large** [1] - 80:11
**large-scale** [1] - 80:11
**largely** [1] - 53:15
**last** [9] - 17:19, 30:24,
35:1, 39:3, 42:10,
42:11, 53:19, 56:5,
56:7
**LAUREN** [1] - 2:13
**Lauren** [1] - 3:20
**law** [12] - 4:25, 12:4,
18:16, 27:10, 27:14,
29:25, 30:7, 43:18,
73:25, 80:22, 87:1,
88:16
**lawsuit** [1] - 58:2
**lawyer's** [1] - 25:16
**lay** [1] - 76:5
**lead** [1] - 74:20
**lease** [1] - 81:2
**least** [5] - 11:17,
18:12, 68:19, 70:13,
78:11
**leave** [4] - 33:4, 33:6,
43:3, 43:24
**legal** [3] - 59:17,
77:15, 81:8

**length** [10] - 32:18, 38:10, 64:21, 66:7, 67:10, 69:10, 69:23, 70:4, 70:8
**length-to-length** [1] - 70:4
**less** [2] - 71:15, 90:3
**letter** [10] - 22:15, 22:18, 22:20, 43:11, 83:5, 83:8, 88:20, 88:21, 88:24
**level** [1] - 41:19
**liability** [2] - 33:18, 34:2
**liable** [1] - 52:10
**license** [2] - 28:11, 73:2
**licensed** [3] - 56:12, 80:25, 81:3
**licensee** [1] - 74:1
**licensees** [2] - 78:8, 79:16
**licenses** [1] - 79:15
**lidocaine** [3] - 76:18, 79:4, 79:20
**likely** [1] - 81:11
**limine** [20] - 59:21, 61:20, 62:5, 62:6, 62:7, 62:13, 63:9, 63:12, 66:1, 66:2, 71:4, 71:5, 71:8, 72:16, 75:12, 75:13, 81:14, 81:22, 81:24, 84:22
**limitation** [2] - 65:2, 70:12
**limitations** [7] - 47:6, 47:15, 48:1, 48:5, 48:16, 52:7, 52:14
**limited** [6] - 4:22, 5:10, 14:21, 18:22, 65:10, 90:1
**Limited** [10] - 37:10, 37:14, 37:19, 37:22, 45:19, 50:3, 50:4, 50:11, 54:13, 55:7
**limits** [2] - 65:7, 71:9
**LIPSCHUTZ** [6] - 2:6, 85:25, 88:10, 88:13, 89:1, 89:17
**Lipschutz** [2] - 3:16, 86:1
**lipschutz** [2] - 84:16, 85:22
**Liss** [1] - 12:4
**Liss's** [1] - 62:3
**list** [8] - 13:2, 15:1, 22:24, 23:2, 23:3, 42:18, 43:8, 43:25
**listed** [3] - 45:16,

45:22, 87:24
**listed-specific** [1] - 87:24
**listing** [1] - 30:17
**literal** [2] - 39:5, 39:14
**literally** [3] - 15:20, 43:7, 47:14
**live** [6] - 13:3, 13:9, 14:4, 14:6, 88:14
**LLC** [1] - 2:3
**LLP** [3] - 2:5, 2:9, 2:11
**loaded** [11] - 67:8, 69:8, 76:17, 76:18, 78:25, 79:4, 79:7, 79:19, 79:20, 79:22, 80:9
**loading** [1] - 76:20
**logistics** [1] - 82:3
**long-felt** [2] - 17:11, 20:15
**look** [3] - 11:8, 16:10, 38:25
**looking** [2] - 11:8, 39:2
**looks** [2] - 15:21, 53:15
**low** [2] - 78:7, 78:16
**luminal** [1] - 69:20
**lunch** [4] - 23:21, 23:24, 31:6, 31:7
**lunches** [3] - 81:25, 82:2, 82:3

## M

**magically** [1] - 20:18
**Magnolia** [1] - 53:16
**mail** [6] - 12:2, 12:3, 12:5, 62:3
**maintained** [1] - 65:5
**major** [1] - 59:11
**majority** [1] - 5:17
**manipulated** [1] - 62:4
**manufacturing** [5] - 65:1, 65:7, 65:11, 65:13, 80:22
**March** [1] - 79:13
**mark** [9] - 59:13, 72:24, 73:6, 74:1, 77:16, 78:5, 78:6, 79:12, 80:6
**marked** [5] - 72:21, 74:18, 75:7, 76:2, 78:20
**market** [1] - 74:4
**marketed** [1] - 62:24
**marketing** [2] - 57:16, 57:21
**marking** [24] - 58:14, 58:16, 58:18, 58:20,

58:23, 58:25, 59:12, 59:14, 59:17, 60:3, 60:4, 60:5, 60:6, 72:18, 73:17, 73:20, 74:5, 75:10, 76:11, 80:23, 81:5, 81:9, 81:12, 81:19
**Markman** [3] - 63:10, 64:24, 67:19
**markups** [2] - 26:17, 26:6
**Mary** [2] - 13:17, 13:24
**material** [2] - 68:22, 70:3
**Matt** [1] - 3:22
**matter** [7] - 24:15, 33:2, 44:10, 44:17, 64:4, 71:25, 73:25
**matters** [1] - 30:15
**mean** [11] - 16:2, 25:11, 25:12, 25:25, 42:23, 46:22, 47:22, 53:3, 57:5, 59:14, 61:6
**meaning** [6] - 18:6, 38:8, 47:18, 52:13, 64:20, 66:5
**means** [7] - 30:10, 36:9, 39:18, 41:12, 48:15, 66:16, 86:23
**measured** [1] - 70:8
**mechanism** [2] - 87:2, 89:3
**medical** [1] - 28:14
**meet** [15] - 5:23, 6:15, 34:16, 47:6, 55:11, 56:18, 60:13, 61:2, 61:5, 78:16, 83:2, 83:14, 84:10, 86:9, 89:24
**meeting** [1] - 19:16
**meets** [2] - 70:12, 78:13
**member** [4] - 27:11, 27:16, 28:6, 28:10
**memorandum** [1] - 63:19
**mention** [2] - 19:14, 32:11
**mentioning** [1] - 17:17
**merits** [1] - 84:9
**met** [3] - 13:20, 79:25, 80:13
**method** [3] - 65:1, 65:7, 65:11
**MICHAEL** [2] - 2:7, 2:9
**Michael** [2] - 3:15, 3:18
**Michele** [1] - 1:25, 90:23

**microphone** [1] - 54:9
**midday** [1] - 24:1
**middle** [1] - 88:6
**might** [5] - 33:14, 33:24, 33:25, 39:2, 39:3
**minimum** [1] - 70:20
**minor** [1] - 31:5
**minute** [2] - 17:19, 24:4
**minutes** [2] - 20:11, 23:22
**miscibility** [3] - 64:4, 64:9, 64:14
**miscible** [8] - 63:13, 63:14, 63:21, 63:24, 64:11, 64:15, 64:17
**misleading** [2] - 62:20, 71:13
**missed** [1] - 83:11
**mistakes** [1] - 60:10
**model** [3] - 41:24, 82:13, 82:17
**molecular** [2] - 64:24, 65:4, 65:10
**molecules** [1] - 68:20
**money** [1] - 54:19
**Mooney** [2] - 13:11, 66:17
**morning** [1] - 23:21
**most** [4] - 32:13, 32:17, 32:20, 54:25
**motion** [21] - 59:20, 62:6, 62:13, 62:15, 63:9, 63:10, 63:12, 65:8, 66:2, 69:1, 71:4, 71:5, 71:8, 72:15, 75:12, 75:13, 81:14, 81:22, 87:19, 89:4
**motions** [5] - 61:19, 62:5, 66:1, 81:24, 84:22
**mouth** [2] - 25:16
**mouthful** [1] - 25:10
**move** [2] - 29:5, 35:17, 61:19
**moving** [19] - 6:12, 26:16, 27:6, 29:22, 30:3, 30:22, 36:14, 38:6, 41:3, 45:3, 53:22, 53:25, 54:21, 54:24, 55:15, 62:5, 63:9, 66:1, 71:5
**Moynihan** [2] - 13:17, 13:24
**MR** [118] - 3:13, 3:18, 4:10, 4:13, 6:13, 6:18, 7:4, 7:15, 7:23, 8:1, 8:4, 8:6, 9:1,

9:11, 10:4, 10:18, 10:23, 12:24, 13:6, 14:25, 17:2, 17:4, 17:24, 19:24, 21:12, 24:13, 25:2, 25:5, 25:20, 26:9, 26:15, 31:11, 32:10, 32:25, 33:10, 34:14, 34:20, 34:22, 36:25, 37:9, 37:18, 37:23, 38:1, 38:24, 39:13, 39:17, 39:19, 40:1, 40:8, 40:10, 41:1, 41:15, 42:20, 43:1, 43:4, 43:19, 44:2, 44:12, 46:1, 46:11, 46:15, 46:17, 47:1, 47:25, 48:22, 49:5, 50:7, 50:14, 50:19, 51:8, 51:22, 51:24, 52:19, 52:21, 52:24, 54:7, 54:13, 55:6, 55:19, 56:3, 58:13, 59:9, 59:19, 60:10, 60:14, 60:16, 60:18, 61:2, 61:4, 61:9, 61:13, 72:23, 74:14, 74:16, 75:10, 82:6, 82:7, 82:11, 83:10, 83:14, 83:16, 83:19, 83:22, 83:24, 84:5, 84:13, 84:15, 85:13, 85:20, 85:25, 87:17, 88:10, 88:13, 89:1, 89:11, 89:17, 90:12
**multiple** [2] - 65:6, 76:24
**must** [16] - 4:5, 11:23, 39:4, 48:11, 48:12, 48:22, 49:2, 56:11, 64:23, 65:4, 65:9, 67:25, 76:13, 77:24, 80:14, 80:24

## N

**name** [3] - 7:19, 10:11, 25:22
**named** [1] - 27:10
**names** [1] - 9:15
**narrow** [1] - 14:2
**natural** [1] - 87:10
**NDA** [3] - 73:1, 73:23, 74:2
**NDAs** [1] - 74:10
**necessarily** [1] - 86:25
**necessary** [6] - 14:24, 26:11, 55:21, 58:22, 87:4, 87:5
**need** [16] - 15:18,

16:1, 16:2, 17:11, 20:15, 23:19, 24:5, 25:24, 29:3, 31:23, 33:3, 78:7, 82:10, 84:9, 85:3, 90:5
**needs** [2] - 16:16, 86:13
**negotiated** [1] - 28:11
**negotiation** [2] - 62:11, 63:5
**Nelson** [2] - 74:20, 79:11
**net** [1] - 80:24
**neutral** [1] - 34:25
**never** [19] - 4:18, 4:25, 21:18, 50:20, 52:11, 58:22, 58:23, 59:6, 59:25, 62:25, 67:4, 72:24, 74:6, 75:7, 77:4, 81:10, 81:17, 88:2
**new** [4] - 4:14, 27:15, 49:5, 66:24
**next** [34] - 4:6, 6:12, 6:19, 6:23, 12:18, 29:5, 30:3, 30:14, 30:22, 32:15, 32:19, 33:14, 34:5, 35:2, 35:17, 37:5, 37:6, 37:20, 41:3, 41:18, 42:2, 42:5, 42:10, 45:8, 53:12, 56:10, 56:17, 56:23, 60:25, 61:19, 61:24, 61:25, 78:2, 85:12
**night** [1] - 14:22
**no's** [2] - 28:17, 54:16
**nobody** [1] - 8:13
**nondisclosure** [2] - 73:1, 73:7
**nonobvious** [1] - 42:17
**nonobviousness** [4] - 18:6, 18:13, 18:23, 42:16
**Noreika** [2] - 38:22, 67:19
**Noreika's** [1] - 70:21
**normal** [1] - 31:15
**Northern** [1] - 41:23
**Note** [1] - 30:14
**note** [4] - 5:15, 30:21, 69:12
**NOTE** [1] - 3:4
**notebooks** [3] - 29:18, 29:19, 30:16
**notes** [2] - 67:17, 90:21
**nothing** [2] - 44:14, 48:25

**notice** [19] - 4:1, 4:15, 5:17, 10:14, 58:1, 70:15, 75:22, 77:9, 77:21, 77:22, 78:4, 78:5, 78:8, 80:8, 82:16, 84:4, 84:6, 85:7
**notified** [2] - 67:7, 77:18
**notifies** [1] - 69:7
**notify** [1] - 12:1
**notion** [1] - 8:21
**November** [4] - 58:2, 64:18, 64:25, 66:4
**number** [34] - 3:24, 17:17, 22:23, 26:18, 27:2, 27:7, 29:8, 29:22, 30:14, 30:23, 36:17, 37:12, 45:10, 51:3, 53:14, 54:1, 54:17, 54:24, 55:2, 58:7, 62:7, 62:13, 63:9, 66:2, 71:4, 71:6, 72:16, 74:6, 74:21, 75:12, 81:14, 81:22
**numbers** [4] - 10:8, 74:7, 74:8

# O

**o'clock** [3] - 23:18, 23:24, 87:12
**object** [2] - 60:21, 63:24
**objected** [1] - 89:11
**objection** [1] - 82:25
**objections** [7] - 6:10, 12:5, 12:22, 40:3, 60:25, 82:16, 86:10
**objective** [4] - 18:12, 18:23, 42:11, 42:17
**obtain** [1] - 87:2
**obtained** [1] - 28:7
**Obviously** [1] - 34:22
**obviously** [3] - 16:12, 21:6, 60:20
**obviously..** [1] - 48:4
**obviousness** [4] - 17:9, 17:10, 17:12, 18:10
**occurred** [4] - 67:18, 77:8, 80:15, 81:10
**occurring** [1] - 77:20
**October** [2] - 63:19, 69:2
**OF** [3] - 1:2, 1:4, 1:4
**of..** [1] - 39:5
**offer** [5] - 31:1, 49:19, 84:23, 84:24, 85:4

**offered** [4] - 46:20, 62:22, 76:21, 79:23
**offering** [3] - 15:15, 46:4, 79:16
**offers** [1] - 81:7
**Office** [1] - 28:3
**Officer** [1] - 33:13
**OFFOR** [9] - 2:6, 7:4, 7:15, 7:23, 8:1, 8:4, 9:11, 10:4, 10:18
**Offor** [1] - 3:16
**old** [1] - 27:15
**omission** [1] - 62:16
**omit** [1] - 67:1
**once** [2] - 33:16, 77:21
**one** [83] - 4:10, 5:10, 6:7, 11:4, 12:16, 12:17, 12:21, 12:23, 13:14, 13:16, 13:18, 13:21, 13:25, 14:12, 15:1, 15:2, 15:12, 15:23, 16:22, 17:17, 18:25, 23:3, 23:24, 25:11, 29:7, 31:13, 33:12, 34:9, 35:18, 36:20, 37:15, 37:20, 39:1, 40:10, 45:7, 45:9, 45:10, 45:20, 46:10, 46:11, 47:21, 48:19, 49:3, 49:5, 49:24, 50:12, 50:15, 50:23, 51:11, 52:4, 52:13, 53:4, 53:5, 53:7, 53:9, 55:4, 55:9, 55:12, 55:13, 56:25, 62:7, 63:3, 63:14, 64:2, 66:2, 68:9, 70:3, 70:13, 71:4, 72:14, 73:13, 78:10, 78:11, 78:24, 79:18, 80:11, 82:11, 82:16, 84:3, 84:5, 84:16, 85:22
**ones** [8] - 11:3, 16:22, 16:23, 23:8, 39:6, 39:8, 39:10
**opening** [9] - 19:24, 20:1, 22:3, 22:18, 46:23, 83:6, 83:17, 88:21, 89:13
**opined** [1] - 66:14, 66:17, 69:16, 69:22, 69:25, 70:24
**opines** [1] - 62:25
**opinion** [10] - 8:11, 45:3, 63:4, 65:21, 67:7, 69:3, 69:7, 69:14, 76:1, 82:20
**opinions** [9] - 65:17, 65:19, 65:24, 66:25,

67:12, 68:1, 69:13, 70:14, 70:21
**opportunity** [3] - 46:21, 60:21, 65:23
**oppose** [1] - 86:11
**opposed** [3] - 23:11, 60:23, 61:1
**opposing** [7] - 60:11, 86:6, 86:16, 87:2, 87:4, 88:17, 89:3
**opposition** [1] - 66:20
**order** [18] - 8:20, 9:8, 11:13, 11:23, 14:20, 17:13, 18:19, 22:8, 22:11, 36:18, 51:18, 63:19, 65:20, 68:15, 82:15, 83:1, 83:25
**ordered** [1] - 13:24
**orderly** [1] - 68:13
**ordinary** [7] - 38:8, 38:9, 41:20, 64:19, 64:20, 66:5, 66:6
**orientation** [1] - 64:24, 65:4, 65:10, 68:20
**original** [1] - 67:19
**outcome** [1] - 35:5
**outer** [1] - 69:22
**outstanding** [1] - 12:9
**outweighed** [2] - 62:19, 71:12
**overall** [3] - 24:5, 32:18, 47:4
**overcome** [1] - 16:6
**oversaw** [1] - 71:24
**own** [4] - 16:5, 16:6, 20:25, 86:16
**owned** [1] - 27:18
**owner** [1] - 24:20
**owns** [1] - 24:16

# P

**p.m** [2] - 3:5, 90:19
**packaging** [2] - 74:25, 75:10
**pad** [1] - 30:21
**page** [12] - 23:11, 27:6, 35:19, 35:21, 36:13, 41:17, 42:15, 44:23, 45:1, 69:11, 69:12, 83:8
**pages** [4] - 22:16, 83:5, 88:22, 88:24
**paginated** [1] - 23:10
**pagination** [1] - 23:11
**paid** [3] - 76:13, 79:10, 80:19
**pale** [1] - 32:7
**panel** [1] - 28:25

**paragraph** [16] - 9:11, 29:15, 30:3, 31:5, 35:20, 36:2, 39:3, 41:8, 42:6, 42:10, 44:7, 44:20, 44:23, 45:4, 55:16
**paragraphs** [1] - 69:12
**parameters** [4] - 66:3, 71:2, 81:13, 81:21
**parent** [1] - 27:12
**parsing** [1] - 34:8
**part** [10] - 10:13, 17:14, 33:4, 48:6, 59:20, 63:11, 72:11, 74:7
**particular** [2] - 55:25, 73:24
**particulate** [1] - 71:25
**particulates** [1] - 72:4
**parties** [35] - 5:23, 9:25, 11:23, 11:25, 12:8, 12:14, 12:22, 17:13, 22:25, 31:14, 35:14, 36:23, 37:15, 37:17, 37:25, 47:17, 47:18, 47:19, 47:21, 47:22, 48:5, 50:2, 55:11, 56:17, 60:13, 61:22, 63:13, 82:2, 83:2, 87:4, 88:19, 89:7, 89:24
**parties'** [4] - 30:5, 38:21, 41:5, 64:16
**parts** [1] - 33:3
**party** [30] - 4:18, 6:7, 6:9, 25:21, 28:10, 30:8, 36:5, 37:9, 41:8, 47:9, 47:10, 47:23, 51:15, 51:20, 52:6, 55:18, 68:3, 68:4, 68:10, 68:11, 73:1, 86:16, 86:17, 86:19, 86:20, 86:21, 87:2, 88:17, 89:3
**pass** [4] - 29:6, 38:16, 90:13, 90:14
**passed** [1] - 56:14
**past** [1] - 78:18
**patent** [69] - 16:2, 16:3, 16:4, 16:5, 16:7, 18:11, 19:7, 19:15, 20:19, 22:6, 22:9, 24:20, 28:8, 28:11, 29:10, 29:16, 29:17, 29:20, 29:21, 30:17, 30:18, 31:21, 31:22, 36:5, 36:6, 37:16, 40:12, 40:16, 40:23, 41:9, 41:24, 45:13, 45:21, 46:6,

49:8, 50:25, 51:7, 56:12, 56:13, 57:3, 57:10, 58:11, 66:15, 69:10, 69:18, 70:12, 70:17, 71:18, 71:21, 71:22, 72:13, 72:22, 73:3, 73:22, 74:2, 74:25, 75:4, 75:16, 75:20, 75:23, 76:3, 76:7, 76:16, 77:6, 78:10, 78:19, 79:12, 79:18

**Patent** [1] - 28:3

**patent's** [1] - 71:24

**patent-in-suit** [1] - 78:19

**patented** [7] - 15:14, 46:3, 62:21, 77:16, 77:22, 78:1, 78:3

**patentee** [5] - 77:15, 77:17, 77:21, 78:2, 78:7

**patentees'** [1] - 76:9

**patents** [7] - 16:6, 24:16, 28:4, 29:9, 29:12, 29:13, 29:14

**path** [1] - 67:15

**patient** [1] - 14:17

**patients** [3] - 37:1, 37:2, 62:23

**pattern** [1] - 69:20

**patterned** [1] - 72:5

**pay** [4] - 5:12, 80:24, 82:1, 82:2

**paying** [3] - 79:1, 79:4, 79:8

**payment** [1] - 79:5

**payments** [3] - 80:3, 81:12, 81:19

**Pedran** [3] - 76:17, 78:25, 79:19

**pen..** [1] - 30:21

**Pennypack** [3] - 66:23, 68:7, 70:9

**people** [4] - 15:3, 29:13, 59:13, 73:22

**per** [1] - 6:18

**percent** [3] - 79:1, 79:5, 79:9

**perhaps** [1] - 82:23

**period** [3] - 7:10, 21:19, 83:1

**permit** [2] - 70:10, 80:10

**permits** [1] - 62:16

**permitted** [2] - 4:8, 19:10

**person** [10] - 13:22, 21:14, 25:15, 38:9, 41:20, 64:20, 66:5,

73:4, 87:8, 87:9

**persons** [1] - 87:10

**perspective** [1] - 32:20

**persuasion** [1] - 78:11

**pharmaceutical** [1] - 76:19

**Pharmaceutical** [1] - 79:21

**phase** [77] - 12:20, 12:21, 12:23, 13:6, 13:14, 13:18, 13:23, 13:25, 14:8, 14:10, 14:19, 15:1, 15:8, 15:10, 16:22, 16:23, 17:15, 19:8, 22:10, 29:6, 31:20, 31:21, 32:3, 33:6, 33:18, 33:19, 33:21, 33:23, 33:24, 34:2, 34:3, 34:6, 35:5, 35:6, 35:18, 36:19, 36:20, 45:7, 45:9, 47:4, 47:14, 47:16, 48:17, 48:25, 50:6, 50:14, 50:18, 52:2, 53:4, 53:6, 53:8, 53:9, 53:10, 53:13, 53:21, 53:25, 54:1, 56:22, 56:23, 60:12, 60:19, 61:15, 61:18, 63:15, 63:17, 72:12, 72:13

**phased** [2] - 13:4, 13:12

**phases** [16] - 12:19, 14:7, 16:25, 31:20, 33:8, 33:23, 34:13, 35:1, 35:3, 38:12, 63:22, 64:1, 64:6, 64:11, 64:15, 90:5

**phasing** [2] - 12:18, 31:9

**phonetic** [1] - 79:8

**phrase** [3] - 31:17, 42:11, 47:21

**phrased** [2] - 31:18, 33:11

**physician** [2] - 14:11, 14:14

**physicians** [5] - 14:14, 37:2, 37:14, 37:24, 50:1

**pick** [5] - 27:20, 30:11, 30:20, 36:12, 44:10

**picked** [1] - 27:8

**pictures** [1] - 30:19

**Pitt** [18] - 9:6, 21:24, 65:15, 65:17, 65:18, 65:22, 65:23, 66:10, 66:14, 69:2, 69:4,

69:16, 69:22, 70:10, 70:15, 70:21, 70:23, 70:25

**pitt** [1] - 69:25

**Pitt's** [12] - 20:10, 20:13, 66:8, 66:19, 67:1, 67:7, 67:11, 68:25, 69:6, 69:7, 69:14, 70:14

**pitt's** [4] - 9:2, 66:22, 67:3, 67:6

**place** [2] - 37:1, 37:2

**placed** [1] - 72:24

**plain** [4] - 38:8, 64:19, 66:5, 87:7

**plaintiff** [12] - 6:21, 23:5, 24:6, 24:8, 24:9, 24:15, 24:19, 26:14, 26:22, 29:9, 53:15, 86:2

**plaintiff's** [4] - 27:3, 30:25, 35:22, 42:3

**plaintiffs** [23] - 3:15, 13:13, 14:2, 18:4, 18:11, 23:5, 27:24, 29:13, 29:24, 30:15, 31:1, 34:24, 36:21, 42:6, 45:17, 50:10, 54:2, 54:16, 54:17, 82:12, 82:13, 86:15, 86:23

**Plaintiffs** [2] - 1:5, 2:8

**plaintiffs'** [7] - 36:3, 37:12, 42:14, 44:25, 45:5, 51:2, 53:18

**plan** [2] - 16:22, 17:6

**plead** [1] - 76:10

**pleading** [1] - 6:15

**pleadings** [1] - 5:21

**PLGA** [6] - 64:4, 64:6, 64:9, 64:14, 64:15, 70:1

**point** [10] - 4:10, 16:19, 20:12, 35:11, 43:20, 44:2, 44:14, 70:24, 84:20, 89:2

**points** [2] - 69:3, 69:11

**polymer** [21] - 16:9, 42:8, 63:2, 63:15, 64:4, 65:13, 67:5, 67:9, 67:14, 68:18, 68:19, 68:20, 69:8, 70:1, 70:3, 70:5, 70:10, 70:13, 70:15, 70:24, 79:4

**portion** [3] - 10:12, 11:15, 63:16

**position** [3] - 15:17, 88:15, 88:16

**positions** [1] - 84:12

**possibility** [2] - 32:16, 66:25

**possible** [2] - 85:7, 85:8

**potential** [1] - 32:18

**potentially** [2] - 14:18, 31:13

**practice** [6] - 49:7, 49:13, 76:3, 76:6, 76:16, 78:3

**practiced** [1] - 78:10

**practices** [1] - 49:17

**practicing** [1] - 4:25

**pre** [3] - 63:10, 72:18, 75:17

**pre-Markman** [1] - 63:10

**pre-suit** [2] - 72:18, 75:17

**precise** [1] - 30:7

**preclude** [2] - 66:10, 75:14

**predate** [1] - 58:18

**prefer** [2] - 40:22, 89:6

**preference** [1] - 24:18

**prejudice** [7] - 33:9, 62:19, 67:1, 68:9, 68:11, 70:19, 71:12

**prejudiced** [1] - 66:24

**prejudicial** [3] - 31:13, 63:5, 63:7

**preliminary** [2] - 29:5, 53:12

**premature** [1] - 21:8

**prepared** [7] - 12:9, 21:6, 75:19, 76:19, 79:21, 87:24, 88:5

**preponderance** [20] - 29:24, 35:22, 36:11, 36:22, 37:13, 41:14, 41:16, 45:11, 45:18, 50:10, 53:23, 54:3, 54:18, 54:22, 57:1, 57:9, 57:14, 57:20, 57:25, 58:9

**presence** [1] - 40:14

**present** [12] - 17:6, 17:10, 17:20, 18:2, 42:18, 42:19, 42:24, 44:3, 52:25, 72:12, 77:11, 78:18

**presentation** [4] - 13:22, 16:3, 19:17, 68:12

**presented** [5] - 12:7, 21:5, 43:1, 54:1, 68:10

**presents** [2] - 63:12, 86:22

**positions** [1] - 84:12

**Pretrial** [1] - 1:11

**pretrial** [9] - 3:4, 3:8, 8:20, 9:8, 11:13, 11:22, 13:1, 82:15, 83:1

**pretty** [2] - 8:16, 59:22

**previously** [2] - 8:24, 11:20

**prima** [2] - 17:9, 18:10

**primary** [1] - 34:24

**private** [1] - 74:9

**probable** [4] - 30:11, 36:9, 41:12, 71:15

**probative** [2] - 62:18, 71:11

**problem** [1] - 32:22

**problems** [2] - 80:5, 82:18

**Procedure** [2] - 67:24, 87:10

**procedure** [1] - 85:11

**proceeding** [2] - 90:18, 90:22

**process** [4] - 13:2, 65:13, 82:15, 82:25

**processes** [1] - 75:20

**produce** [2] - 77:25, 86:8

**product** [18] - 10:5, 49:17, 52:6, 52:10, 56:11, 74:6, 74:7, 74:8, 77:5, 77:16, 77:25, 78:12, 78:18, 78:20, 80:7, 80:10, 81:3, 81:4

**production** [3] - 78:7, 78:10, 80:1

**products** [60] - 6:23, 6:25, 7:6, 7:8, 7:12, 7:13, 7:14, 7:17, 7:18, 7:21, 8:3, 8:8, 8:12, 8:15, 8:19, 8:20, 8:22, 9:4, 9:5, 9:9, 9:12, 9:13, 9:18, 9:19, 9:23, 10:16, 10:24, 10:25, 15:13, 40:15, 49:7, 49:14, 58:18, 60:1, 65:13, 66:17, 69:25, 70:2, 71:20, 72:21, 73:13, 73:23, 73:24, 75:19, 76:16, 76:20, 76:24, 78:3, 78:9, 78:15, 79:12, 79:23, 80:2, 80:9, 80:25, 81:6, 81:11, 81:18

**proffer** [1] - 85:15

**proffers** [1] - 84:19

**projects** [1] - 78:24

**Proof** [3] - 29:23, 41:4,

54:21
**proof** [8] - 36:10, 36:11, 36:13, 41:13, 41:14, 77:17, 78:11, 80:14
**proof..** [1] - 30:12
**proper** [3] - 72:7, 86:23, 87:2
**property..** [1] - 28:5
**proposal** [6] - 30:6, 41:25, 42:3, 44:9, 54:25, 55:16
**proposals** [1] - 38:21
**propose** [2] - 43:10, 61:14
**proposed** [30] - 27:21, 27:24, 28:12, 28:16, 29:12, 29:13, 35:14, 36:1, 41:22, 42:6, 42:7, 42:14, 44:22, 45:1, 45:5, 45:8, 46:13, 53:17, 53:18, 54:6, 54:15, 56:5, 56:15, 56:23, 56:25, 59:8, 60:9, 67:21, 68:23, 82:15
**proposes** [1] - 24:9
**propriety** [1] - 86:14
**prosecution** [1] - 71:24
**protein** [1] - 79:8
**prove** [32] - 4:5, 4:22, 5:11, 5:13, 5:22, 6:2, 17:9, 30:5, 36:7, 41:10, 45:11, 45:18, 47:16, 50:10, 51:5, 51:18, 51:19, 53:10, 57:1, 57:8, 57:14, 57:20, 57:25, 59:1, 76:5, 76:6, 77:25, 78:2, 80:14, 81:9, 81:10, 81:17
**proven** [8] - 36:21, 37:13, 39:4, 39:13, 54:3, 54:18, 58:9, 63:1
**provide** [4] - 15:1, 68:5, 74:1, 84:1
**provided** [10] - 4:23, 12:3, 13:1, 14:7, 61:23, 67:12, 72:25, 73:7, 75:25, 77:9
**provides** [4] - 11:23, 62:17, 71:10, 72:8
**providing** [1] - 78:24
**proving** [1] - 30:9
**PTX** [1] - 23:6
**public** [14] - 58:22, 59:6, 59:22, 59:23, 60:2, 60:6, 73:7,

73:14, 73:15, 73:16, 74:10, 74:11, 77:12
**purposes** [3] - 61:10, 72:7, 85:2
**pursuant** [4] - 4:9, 36:17, 74:9, 74:10
**pursue** [1] - 80:17
**pushback** [1] - 33:11
**put** [12] - 3:11, 10:25, 13:16, 16:22, 20:4, 40:14, 70:14, 74:4, 74:25, 78:7, 84:25, 85:16

## Q

**quash** [3] - 89:4, 89:7, 89:12
**QUESTION** [1] - 75:3
**questions** [5] - 27:16, 28:16, 29:4, 65:19, 72:19
**quickly** [3] - 4:11, 39:2, 60:23

## R

**rabbit** [2] - 73:18
**raise** [4] - 14:12, 55:19, 82:12, 82:24
**raises** [1] - 65:21
**rather** [4] - 63:22, 67:21, 77:14, 82:25
**ratio** [1] - 70:4
**RAZAVI** [1] - 2:14
**Razavi** [1] - 3:20
**re** [2] - 78:5, 78:6
**re-mark** [2] - 78:5, 78:6
**reach** [2] - 5:24, 55:22
**reacting** [1] - 60:23
**read** [16] - 18:3, 28:22, 30:1, 30:8, 30:25, 36:2, 38:18, 41:8, 42:23, 45:4, 45:10, 50:8, 51:1, 53:19, 54:2, 57:1
**reading** [2] - 10:1, 24:25
**reads** [1] - 59:1
**real** [3] - 58:13, 58:24, 67:20
**really** [3] - 55:20, 58:19, 86:13
**reason** [10] - 17:18, 17:21, 17:24, 19:11, 32:24, 34:24, 65:24, 68:2, 72:8, 81:7
**reasonable** [7] - 6:2, 36:13, 57:15, 58:10,

58:20, 58:21, 59:2
**reasons** [4] - 5:11, 15:12, 71:2, 81:20
**REATH** [1] - 2:11
**rebut** [4] - 17:12, 20:6, 20:24, 21:20
**rebuttal** [7] - 6:21, 6:22, 20:3, 20:8, 21:3, 31:2, 43:20
**rebuttals** [1] - 15:24
**rebutting** [1] - 21:14
**received** [3] - 13:12, 73:23, 81:1
**receiving** [1] - 73:4
**recently** [1] - 82:14
**recited** [1] - 64:23
**reconsider** [1] - 16:17
**record** [7] - 3:12, 6:13, 21:7, 28:22, 60:22, 81:16, 90:13
**recovered** [2] - 77:16, 77:20
**red** [1] - 73:17
**refer** [8] - 24:6, 24:7, 24:9, 24:21, 24:23, 25:10, 25:19, 26:19
**reference** [2] - 29:16, 68:24
**referred** [7] - 25:23, 26:3, 26:21, 29:20, 40:19, 63:21, 76:24
**referring** [2] - 23:10, 26:22
**refers** [2] - 25:11, 26:6
**reflect** [1] - 47:1
**refuse** [3] - 4:18, 5:2, 5:12
**refused** [3] - 5:7, 5:18, 15:5
**regard** [1] - 56:18
**regarding** [2] - 17:5, 21:16
**regardless** [2] - 76:24, 80:7
**REGENTS** [1] - 1:4
**Regents** [13] - 3:9, 24:8, 24:16, 24:18, 24:22, 25:9, 25:14, 25:22, 26:10, 26:13, 26:22, 26:25
**regions** [2] - 63:18, 77:14
**registered** [1] - 86:4
**relate** [1] - 17:8
**related** [3] - 32:3, 72:17, 78:15
**relates** [3] - 47:7, 63:4, 82:13
**relationship** [1] - 27:17

58:20, 58:21, 59:2
**released** [1] - 72:4
**relevance** [1] - 82:21
**relevant** [7] - 62:17, 62:18, 68:25, 71:10, 71:11, 71:14, 72:8, 72:10
**rely** [2] - 18:12, 21:18
**relying** [2] - 43:6, 43:13
**remain** [2] - 55:13, 68:22
**remand** [1] - 35:9
**remember** [1] - 10:1
**remove** [2] - 61:13, 61:14
**render** [1] - 35:10
**reply** [3] - 18:22, 18:24, 64:3
**report** [15] - 9:2, 18:21, 18:23, 18:24, 19:25, 20:2, 20:10, 20:13, 21:20, 21:21, 21:24, 66:19, 67:6, 67:11, 69:6
**reporter** [2] - 12:16, 87:13
**REPORTER'S** [1] - 3:4
**reports** [5] - 8:10, 19:2, 67:3, 67:18, 67:25
**represent** [1] - 9:3
**representative** [3] - 13:19, 82:19, 86:8
**representatives** [2] - 4:7, 4:8
**request** [3] - 4:8, 4:15, 6:20
**required** [7] - 5:22, 20:5, 59:3, 59:13, 59:15, 80:20, 86:25
**requirement** [15] - 57:21, 58:15, 58:17, 58:20, 58:23, 58:25, 59:12, 59:15, 60:4, 60:6, 73:6, 73:21, 77:22, 81:5, 81:9
**requirements** [1] - 57:16
**requires** [1] - 12:14
**requiring** [1] - 70:17
**rescinded** [1] - 75:21
**research** [2] - 16:9, 20:16
**resembling** [1] - 72:6
**reserve** [1] - 6:8
**resolution** [3] - 11:12, 11:22, 85:10
**resolve** [2] - 6:16, 83:15, 89:25
**respect** [33] - 11:19,

12:12, 12:18, 16:12, 18:4, 22:22, 23:15, 27:6, 35:13, 35:20, 35:21, 35:25, 36:20, 38:11, 38:14, 38:19, 39:25, 41:5, 41:20, 42:14, 42:15, 43:5, 55:2, 55:11, 61:21, 64:18, 65:15, 72:15, 75:11, 78:4, 80:13, 85:10, 86:12
**respective** [2] - 84:12, 88:20
**respond** [10] - 10:22, 21:23, 25:6, 43:14, 43:15, 52:23, 65:18, 74:15, 87:5, 87:20
**response** [14] - 4:17, 4:20, 5:1, 9:19, 15:11, 16:14, 21:13, 28:23, 39:12, 46:24, 65:25, 69:1, 78:23, 80:16
**responses** [2] - 9:17, 80:1
**responsive** [1] - 83:7
**rest** [1] - 30:12
**resubmit** [1] - 61:24
**resulted** [1] - 80:3
**resulting** [1] - 72:6
**results** [1] - 64:5
**revenue** [3] - 79:2, 79:5, 79:9
**reversal** [2] - 35:8, 35:9
**review** [1] - 84:19
**revised** [10] - 28:6, 28:9, 28:19, 38:15, 55:5, 55:10, 55:13, 56:14, 78:22, 89:19
**revision** [1] - 56:15
**revisions** [1] - 61:22
**ribbon** [2] - 70:6, 72:6
**ribbons** [1] - 69:17
**rich** [3] - 64:15, 70:2
**rings** [1] - 67:16
**role** [1] - 71:23
**Rolfe** [2] - 1:25, 90:23
**room** [1] - 29:3
**royalties** [3] - 76:13, 80:19, 80:24
**royalty** [5] - 58:10, 79:1, 80:3, 81:12, 81:18
**RPR** [2] - 1:25, 90:23
**rule** [7] - 33:5, 43:21, 43:22, 43:24, 43:25, 72:19, 75:9
**Rule** [13] - 4:9, 19:9, 19:10, 62:16, 62:17,

67:24, 68:3, 68:5, 71:9, 71:10, 87:7, 87:9, 87:25
**Rules** [2] - 21:16, 86:18
**rules** [5] - 5:11, 5:13, 22:12, 86:21, 87:25
**ruling** [4] - 21:8, 32:5, 33:21, 55:10
**rulings** [2] - 21:7, 33:20
**run** [1] - 84:20

## S

**sale** [13] - 37:3, 47:10, 58:22, 59:6, 60:7, 73:14, 73:16, 76:21, 79:16, 79:23, 80:22, 80:25, 81:2
**sales** [13] - 59:22, 59:23, 60:2, 73:15, 77:8, 80:14, 80:20, 80:25, 81:7, 81:10, 81:11, 81:17
**salutations** [1] - 90:15
**sample** [5] - 29:10, 29:16, 29:17, 29:20, 30:18
**samples** [10] - 59:5, 72:25, 73:5, 73:6, 73:12, 77:1, 77:2, 77:12, 77:13, 80:15
**save** [1] - 19:6
**scale** [1] - 80:11
**scales** [1] - 30:2
**schedule** [5] - 14:17, 18:20, 89:2, 89:21, 89:23
**Schedule** [1] - 31:4
**scheduling** [2] - 14:16, 18:19
**Scientific** [132] - 3:9, 3:19, 3:22, 4:17, 6:21, 13:7, 13:8, 13:10, 13:17, 13:22, 14:5, 15:3, 18:9, 22:5, 22:19, 27:19, 29:11, 30:4, 36:4, 36:6, 37:10, 37:14, 37:19, 37:21, 38:13, 41:9, 41:22, 42:7, 44:22, 45:2, 45:15, 45:19, 45:24, 46:4, 46:7, 46:14, 46:25, 47:16, 47:22, 47:24, 48:3, 49:12, 49:16, 49:18, 49:21, 49:23, 49:24, 50:3, 50:4, 50:11, 50:24, 51:5,

51:11, 51:13, 51:14, 51:19, 52:4, 52:9, 52:11, 53:3, 53:17, 54:4, 54:10, 54:13, 55:7, 55:17, 56:5, 57:2, 57:4, 57:5, 57:7, 57:12, 57:18, 57:23, 58:1, 58:4, 62:24, 63:20, 63:23, 64:10, 64:22, 64:25, 65:3, 65:5, 65:8, 65:12, 65:16, 65:21, 66:8, 66:10, 66:22, 66:24, 67:3, 67:7, 68:18, 69:14, 69:19, 70:7, 70:14, 70:23, 71:19, 71:21, 71:23, 72:3, 75:14, 75:18, 75:21, 75:25, 76:4, 76:8, 76:12, 76:15, 77:4, 77:9, 78:17, 79:14, 79:25, 80:21, 81:3, 83:6, 83:9, 86:3, 86:8, 86:10, 86:15, 87:14, 87:22, 88:15, 88:23, 89:5, 89:15
**SCIENTIFIC** [1] - 1:7
**Scientific's** [39] - 24:12, 31:2, 41:25, 44:9, 45:12, 51:3, 53:20, 54:5, 54:20, 54:25, 56:25, 57:9, 58:11, 62:25, 64:1, 64:3, 64:7, 64:8, 64:13, 66:1, 66:2, 66:12, 66:16, 66:20, 68:23, 69:16, 70:16, 70:25, 71:4, 71:5, 71:23, 72:1, 72:13, 72:15, 75:12, 76:10, 80:16, 81:14, 81:21
**scope** [3] - 6:23, 69:10, 79:17
**scriveners** [1] - 41:16
**seat** [1] - 28:25
**seated** [1] - 3:7
**second** [40] - 13:23, 14:8, 14:19, 15:7, 15:8, 20:3, 27:5, 30:20, 31:21, 32:3, 33:6, 33:19, 33:21, 33:24, 34:5, 34:6, 35:5, 35:20, 38:12, 42:6, 44:8, 44:20, 47:7, 47:15, 48:11, 48:12, 48:14, 48:17, 49:24, 50:12, 51:16, 51:24, 55:16, 61:15, 63:17, 72:11, 77:8,

86:22
**secondary** [18] - 17:7, 17:8, 17:11, 18:5, 18:13, 18:15, 18:20, 19:18, 19:22, 21:17, 21:25, 42:12, 42:16, 43:6, 43:8, 43:9, 43:12, 43:17
**section** [5] - 68:25, 76:10, 77:5, 78:1, 78:21
**Section** [1] - 76:9
**see** [10] - 4:14, 12:19, 20:8, 31:8, 35:5, 56:19, 59:16, 83:3, 85:7, 90:9
**seeing** [3] - 10:2, 11:9, 38:25
**seek** [1] - 86:7, 89:4
**seeking** [5] - 62:7, 62:14, 63:10, 72:16, 89:7
**seeks** [8] - 63:7, 66:10, 71:6, 71:18, 71:25, 72:7, 75:14, 86:5
**seem** [2] - 6:1, 89:7
**sell** [12] - 15:15, 37:1, 46:4, 46:7, 46:20, 47:19, 49:15, 49:18, 49:19, 52:9, 80:17, 86:25
**selling** [6] - 15:15, 46:3, 49:9, 52:12, 77:21, 79:17
**sells** [1] - 48:3
**send** [1] - 62:2
**sending** [1] - 81:4
**sense** [3] - 74:16, 82:23, 89:5
**sent** [8] - 13:22, 19:16, 59:5, 77:1, 77:2, 80:16, 81:5
**sentence** [19] - 27:4, 27:5, 29:11, 29:15, 30:8, 30:20, 30:24, 39:3, 39:19, 41:5, 42:11, 44:8, 53:19, 55:16, 55:21, 56:5, 56:6, 56:8, 56:11
**sentences** [1] - 27:4
**separate** [1] - 23:12
**separated** [2] - 32:3, 33:2
**sequestering** [1] - 4:6
**serpentine** [4] - 67:8, 67:15, 69:8, 69:24
**serve** [1] - 89:10
**served** [4] - 75:22, 86:2, 86:4, 86:10

**set** [4] - 19:21, 71:3, 80:10, 81:21
**settlements** [1] - 62:8
**several** [4] - 16:24, 75:19, 78:23, 86:7
**shall** [2] - 38:8, 77:16
**shape** [6] - 38:10, 64:21, 66:7, 67:10, 69:10, 72:5
**sheet** [1] - 61:18
**shooting** [1] - 24:2
**Shore** [1] - 3:15
**SHORE** [58] - 2:5, 2:7, 4:10, 4:13, 5:7, 14:25, 19:24, 25:5, 25:20, 31:11, 34:22, 36:25, 37:9, 37:18, 37:23, 38:1, 39:13, 39:17, 40:1, 40:10, 41:15, 42:20, 43:1, 43:19, 44:2, 44:12, 46:1, 46:11, 46:15, 46:17, 49:5, 50:7, 50:14, 50:19, 52:21, 52:24, 54:7, 54:13, 55:6, 55:19, 56:3, 58:13, 59:9, 59:19, 60:10, 60:14, 60:16, 61:2, 72:23, 75:10, 82:7, 83:24, 84:5, 84:13, 84:15, 85:13, 85:20, 90:12
**shore** [1] - 86:2
**short** [2] - 19:25, 82:24
**shortly** [1] - 42:13
**show** [11] - 15:11, 15:19, 16:2, 19:9, 21:5, 53:9, 71:19, 71:21, 72:1, 73:10, 77:12
**showing** [2] - 17:10, 36:24
**shown** [1] - 11:10
**shows** [1] - 87:3
**sibling** [1] - 27:13
**side** [9] - 21:24, 30:2, 33:9, 34:9, 34:10, 38:18, 54:23, 60:12, 70:5
**sides** [7] - 22:13, 22:14, 39:22, 40:2, 82:5, 83:5, 90:9
**sides'** [1] - 22:24
**significant** [1] - 63:1
**significantly** [1] - 66:24
**similar** [10] - 6:25, 7:13, 8:3, 8:12, 8:19, 8:22, 9:9, 10:25,

11:14, 71:20
**simple** [1] - 8:16
**simply** [4] - 31:19, 34:3, 52:13, 85:15
**single** [1] - 73:14
**sitting** [1] - 40:4
**situation** [3] - 49:16, 52:9, 74:3
**six** [2] - 58:7, 87:12
**skill** [4] - 38:9, 41:20, 64:20, 66:6
**skip** [3] - 26:24, 48:19, 49:2
**slight** [1] - 59:11
**slightly** [6] - 29:24, 30:2, 35:23, 53:24, 54:22
**small** [2] - 72:23, 84:15
**sneak** [1] - 19:17
**so-called** [1] - 42:11
**so..** [2] - 88:6, 90:5
**sold** [18] - 7:7, 9:12, 10:8, 11:3, 11:7, 46:20, 72:21, 73:6, 74:4, 75:15, 76:14, 76:17, 76:21, 76:25, 78:8, 79:19, 79:23, 81:6
**solely** [1] - 16:23
**solid** [1] - 70:2
**someone** [2] - 5:1, 49:20
**sometimes** [3] - 25:23, 60:10, 85:17
**sooner** [1] - 82:24
**sorry** [5] - 38:25, 40:10, 50:19, 54:8, 83:10
**sort** [8] - 4:2, 6:10, 24:1, 26:25, 35:8, 36:14, 36:15, 38:20
**sorts** [1] - 82:18
**sounds** [1] - 39:22
**specific** [12] - 7:12, 9:3, 9:22, 60:1, 73:13, 77:5, 78:8, 78:15, 80:2, 80:4, 80:6, 87:24
**specifically** [4] - 7:24, 9:6, 74:21, 80:8
**specimens** [1] - 67:14
**spend** [2] - 4:22, 20:11
**spouse** [1] - 27:12
**Stamatios** [1] - 3:14
**STAMATIOS** [1] - 2:3
**Stamoulis** [1] - 3:14
**STAMOULIS** [3] - 2:3, 2:3, 3:13

13

**stand** [1] - 21:14
**standard** [3] - 30:12, 35:23, 77:15
**stands** [1] - 24:14
**start** [9] - 3:11, 20:21, 22:17, 23:16, 23:17, 34:8, 44:21, 66:10, 89:13
**started** [2] - 12:10, 35:21
**starts** [1] - 44:24
**State** [1] - 31:18
**statement** [4] - 4:2, 22:3, 68:1, 75:21
**statements** [1] - 5:24
**STATES** [2] - 1:1, 1:15
**states** [2] - 72:3, 86:19
**States** [6] - 7:8, 28:3, 28:8, 29:9, 49:19
**status** [1] - 31:12
**stay** [1] - 11:20
**stays** [1] - 43:24
**stenographic** [1] - 90:21
**stent** [29] - 46:7, 46:18, 46:19, 47:10, 47:14, 47:25, 48:15, 52:12, 52:14, 62:24, 63:2, 66:12, 67:12, 67:14, 67:15, 69:5, 69:23, 69:24, 70:6, 70:11, 70:16, 71:8, 72:2, 72:4, 72:5, 82:17, 82:19
**stents** [32] - 8:9, 8:11, 8:15, 9:5, 10:6, 10:9, 10:17, 10:24, 11:2, 11:4, 11:7, 11:13, 11:17, 28:14, 28:15, 45:12, 46:2, 46:5, 47:5, 48:3, 49:7, 49:13, 67:4, 67:5, 67:8, 69:8, 69:15, 69:21, 70:3, 70:25
**stick** [1] - 90:2
**still** [4] - 6:24, 7:1, 7:5, 74:6
**stipulate** [4] - 4:18, 5:2, 5:18, 47:23
**stock** [1] - 27:18
**stop** [5] - 6:21, 6:22, 22:4, 23:22, 56:10
**strategic** [1] - 67:2
**streamline** [1] - 14:3
**Strickler** [3] - 71:18, 71:22, 71:24
**string** [2] - 70:7, 70:8
**strips** [4] - 67:5, 67:9, 67:14, 69:9
**structure** [9] - 38:10,

64:21, 65:14, 66:6, 67:10, 68:19, 68:24, 71:7, 72:6
**structures** [1] - 69:9
**stuck** [1] - 8:3
**stuff** [2] - 53:17, 90:3
**subject** [6] - 43:22, 44:10, 44:17, 66:3, 71:2, 78:1
**subjects** [1] - 15:4
**sublicensee** [1] - 73:5
**submit** [19] - 18:22, 18:24, 18:25, 22:15, 22:17, 22:19, 55:12, 83:5, 83:6, 83:7, 83:11, 83:17, 83:21, 84:11, 88:20, 88:21, 88:23, 89:6, 89:14
**submits** [1] - 83:9
**submitted** [4] - 44:5, 59:25, 68:25, 69:2
**subpoena** [17] - 15:6, 85:23, 86:3, 86:5, 86:6, 86:11, 86:12, 86:14, 87:1, 87:3, 87:8, 87:15, 87:21, 89:4, 89:8, 89:10, 89:13
**subpoenaed** [1] - 15:3
**subpoenaing** [1] - 88:16
**subpoenas** [1] - 87:4
**subsequent** [1] - 23:17
**subsidiary** [3] - 37:15, 45:19, 55:8
**substance** [2] - 35:19, 36:15
**substances** [2] - 63:22, 64:1
**substantially** [13] - 6:25, 7:13, 8:3, 8:12, 8:18, 8:22, 9:8, 10:25, 11:14, 62:19, 68:6, 68:8, 71:12
**substantive** [17] - 27:2, 29:8, 29:23, 30:22, 30:24, 36:16, 53:22
**succeed..** [1] - 44:21
**suddenly** [1] - 20:15
**sufficient** [1] - 81:4
**suggest** [5] - 5:22, 33:11, 33:22, 34:1, 60:22
**suggested** [5] - 27:3, 76:16, 87:18
**suggesting** [2] - 55:18, 55:24
**suit** [4] - 72:18, 72:22, 75:17, 78:19

**summary** [3] - 66:20, 68:17, 69:1
**supplement** [1] - 14:25
**supplemental** [2] - 66:19, 69:3
**support** [1] - 74:24
**supported** [1] - 44:4
**supporting** [2] - 80:22, 87:20
**supports** [1] - 88:16
**supposed** [3] - 19:15, 47:5, 83:25
**surface** [2] - 69:20, 69:22
**surgeries** [2] - 14:15, 14:22
**surgery** [1] - 14:17
**surprise** [2] - 68:9, 70:19
**surrebuttal** [1] - 6:20
**Synergy** [45] - 7:6, 7:16, 7:19, 7:20, 7:22, 8:9, 8:11, 8:15, 8:24, 9:5, 9:16, 10:2, 10:6, 10:11, 10:12, 10:17, 10:24, 11:2, 11:7, 11:13, 11:17, 15:13, 45:12, 48:15, 49:13, 52:12, 52:14, 66:12, 67:4, 67:8, 67:12, 69:5, 69:7, 69:21, 69:24, 70:11, 71:7, 72:2, 72:4, 82:17
**synergy** [1] - 7:18
**syringes** [1] - 76:25
**System** [3] - 25:8, 25:9, 25:23
**SYSTEM** [1] - 1:4

---

## T

**table** [1] - 3:15
**teaching** [3] - 18:13, 43:7
**technical** [3] - 13:10, 24:15, 78:23
**technically** [2] - 52:14, 52:24
**technology** [2] - 73:2, 73:3
**teed** [1] - 59:18
**tendency** [1] - 71:14
**term** [8] - 10:17, 10:19, 11:17, 38:8, 47:20, 64:10, 67:22, 70:22
**terms** [1] - 11:22
**test** [2] - 77:13, 80:15

**testify** [4] - 64:9, 70:10, 87:24, 88:5
**testifying** [2] - 15:4, 66:11
**testimony** [10] - 10:10, 64:8, 64:13, 67:1, 71:7, 72:17, 76:5, 86:5, 86:7, 88:11
**testing** [1] - 77:2
**Teva** [5] - 76:18, 77:1, 79:3, 79:20, 81:6
**Texas** [6] - 7:5, 24:14, 24:17, 25:7, 25:9, 25:23
**TEXAS** [1] - 1:4
**text** [1] - 87:7
**that'll** [1] - 83:20
**THE** [14] - 1:1, 1:2, 1:4, 3:6, 3:23, 4:12, 5:5, 5:19, 6:17, 6:19, 7:11, 7:21, 7:24, 8:2, 8:5, 8:23, 9:10, 9:22, 10:15, 10:21, 11:16, 13:5, 14:23, 17:1, 17:3, 17:23, 19:19, 21:11, 22:13, 24:21, 25:4, 25:18, 26:8, 26:12, 26:16, 32:9, 32:23, 33:1, 34:8, 34:16, 35:13, 37:8, 37:11, 37:21, 37:24, 38:2, 39:12, 39:16, 39:21, 40:6, 40:9, 40:24, 41:2, 41:18, 42:23, 43:3, 43:21, 44:7, 44:18, 46:9, 46:13, 46:16, 46:21, 47:20, 48:21, 49:4, 50:5, 50:13, 50:16, 50:21, 51:21, 51:23, 52:17, 52:20, 52:23, 53:11, 54:12, 54:14, 55:9, 56:1, 56:4, 59:7, 59:16, 60:8, 60:11, 60:15, 60:17, 61:5, 61:11, 61:16, 74:12, 74:15, 75:8, 75:11, 82:8, 83:2, 83:13, 83:15, 83:17, 83:20, 84:3, 84:9, 84:14, 85:6, 85:18, 85:24, 87:11, 88:7, 88:12, 88:19, 89:9, 89:12, 89:18, 90:16
**Therapeutics** [2] - 76:20, 79:22
**thereafter** [1] - 77:19
**therefore** [1] - 72:12
**therein** [1] - 69:16
**they've** [8] - 5:13,

5:18, 10:11, 10:14, 15:9, 15:17, 22:5, 47:7
**thin** [3] - 67:8, 69:8, 70:1
**thinking** [1] - 34:4
**thinks** [2] - 31:11, 32:15
**Third** [1] - 68:7
**third** [24] - 30:8, 31:5, 36:23, 37:9, 37:15, 37:17, 37:25, 42:10, 47:9, 47:10, 47:17, 47:18, 47:19, 47:21, 47:23, 48:5, 50:2, 51:4, 51:15, 51:20, 52:5, 72:25, 77:11
**thirty** [1] - 49:5
**thirty-two** [1] - 49:5
**thoughts** [1] - 56:16
**thread** [20] - 38:10, 64:21, 65:14, 66:6, 66:12, 66:13, 66:16, 66:18, 66:25, 67:2, 67:5, 67:9, 67:20, 68:19, 68:24, 69:5, 69:9, 69:15, 70:18, 70:25
**thread-like** [20] - 38:10, 64:21, 65:14, 66:6, 66:12, 66:13, 66:16, 66:18, 66:25, 67:2, 67:5, 67:9, 67:20, 68:19, 68:24, 69:5, 69:9, 69:15, 70:18, 70:25
**three** [29] - 12:15, 27:8, 27:9, 29:9, 30:16, 38:4, 41:22, 48:20, 51:3, 54:15, 54:17, 57:13, 61:14, 61:15, 63:9, 63:12, 68:11, 72:16, 75:12, 79:7, 79:9, 79:21, 80:2, 81:14, 81:22, 83:5, 83:8, 88:22, 88:24
**three-page** [1] - 83:8
**throughout** [3] - 26:25, 63:18, 87:9
**Thursday** [8] - 1:11, 60:25, 61:24, 62:1, 83:18, 88:25, 89:14, 89:16
**Tim** [1] - 3:19
**timeframe** [1] - 42:22
**TIMOTHY** [1] - 2:12
**tiny** [1] - 33:10
**tip** [1] - 30:2
**tips** [1] - 54:22

**TissueGen** [42] - 27:18, 31:1, 36:3, 36:21, 37:13, 39:4, 39:13, 45:11, 45:15, 45:18, 45:23, 54:3, 54:18, 57:1, 57:6, 57:8, 57:12, 57:14, 57:15, 57:17, 57:19, 57:22, 57:24, 58:3, 58:9, 59:2, 59:4, 75:3, 75:16, 75:19, 75:23, 76:12, 76:17, 76:21, 77:1, 78:22, 79:11, 79:19, 79:24, 80:6, 80:19, 80:24
**TissueGen's** [1] - 72:17
**TissueGens'** [1] - 30:1
**today** [11] - 3:19, 3:25, 11:10, 17:19, 17:25, 38:25, 40:4, 60:24, 89:19, 89:20, 90:8
**took** [3] - 20:14, 50:8, 59:8
**topic** [3] - 20:3, 88:20, 88:22
**topics** [7] - 86:7, 87:24, 88:6, 88:8, 88:12, 88:13, 88:18
**totally** [1] - 44:5
**towards** [1] - 86:3
**tracked** [2] - 30:6, 53:15
**tracks** [1] - 35:23
**trade** [1] - 73:9
**trademark** [6] - 76:22, 76:23, 79:24, 80:4, 80:5, 80:9
**Trademark** [1] - 28:3
**trail** [1] - 73:18
**training** [1] - 28:3
**transaction** [1] - 81:1
**transactions** [1] - 74:9
**transcript** [1] - 90:21
**transfer** [1] - 81:2
**Trial** [2] - 30:23, 31:4
**trial** [40] - 4:5, 4:8, 6:3, 6:7, 7:3, 11:20, 12:7, 12:19, 14:4, 15:13, 20:11, 21:15, 22:1, 22:22, 23:15, 26:11, 31:16, 32:3, 32:18, 66:11, 66:25, 68:4, 68:13, 72:12, 76:7, 82:4, 82:14, 84:25, 86:3, 86:5, 86:25, 87:3, 87:6, 87:8, 87:21, 87:24, 88:2, 88:5, 90:1
**trials** [6] - 7:9, 9:14,

15:18, 15:20, 63:1, 63:8
**tried** [2] - 5:5, 90:5
**trifurcate** [1] - 49:6, 49:22
**triggered** [8] - 58:15, 58:17, 58:23, 59:12, 59:17, 60:5, 73:21, 73:22
**triggering** [1] - 60:5
**triggers** [1] - 60:6
**trouble** [1] - 90:12
**true** [5] - 4:19, 30:11, 36:10, 41:13, 90:20
**Truitton** [1] - 3:22
**try** [11] - 5:23, 6:16, 14:2, 17:12, 17:19, 19:7, 23:24, 23:25, 89:25, 90:4, 90:6
**trying** [7] - 17:19, 19:6, 19:8, 47:12, 50:8, 59:16, 87:22
**Tuesday** [2] - 22:19, 43:15
**turn** [1] - 22:4
**two** [55] - 12:13, 12:19, 12:21, 13:14, 13:18, 15:1, 16:23, 26:18, 27:2, 27:3, 31:20, 33:3, 33:7, 33:23, 34:13, 34:25, 35:3, 36:19, 36:20, 37:12, 38:3, 45:17, 47:4, 48:19, 48:23, 49:2, 49:3, 49:5, 50:6, 50:22, 51:1, 51:3, 52:16, 53:6, 53:8, 53:10, 53:13, 54:1, 56:22, 56:24, 57:8, 60:12, 60:19, 61:18, 62:13, 64:3, 68:11, 71:6, 72:19, 79:3, 79:20, 84:15, 90:4, 90:10
**type** [1] - 4:3
**typical** [1] - 89:7
**typically** [4] - 23:20, 23:24, 89:2, 89:4

### U

**U.S** [2] - 79:17, 90:23
**U.S.C** [2] - 72:17, 78:21
**ultimate** [1] - 29:15
**ultra** [3] - 67:8, 69:8, 70:1
**unclear** [1] - 6:23
**uncontested** [2] - 4:2, 5:6

**under** [26] - 13:1, 18:16, 19:9, 52:18, 56:12, 59:23, 60:1, 66:23, 67:24, 68:3, 70:9, 73:1, 73:7, 73:13, 73:23, 74:2, 74:5, 76:21, 77:3, 78:20, 79:23, 81:7, 81:13, 83:1, 83:25, 86:4
**underlined** [1] - 67:15
**underlying** [1] - 72:5
**understood** [6] - 34:14, 34:20, 53:11, 61:9, 63:20, 83:22
**undisclosed** [1] - 82:20
**undisputed** [4] - 44:11, 58:17, 59:22, 60:1
**unfair** [2] - 62:19, 71:12
**unfairly** [2] - 63:5, 63:6
**unfamiliar** [1] - 29:12
**unfortunately** [1] - 59:9
**UNITED** [2] - 1:1, 1:15
**United** [6] - 7:8, 28:2, 28:7, 29:9, 49:18, 49:19
**UNIVERSITY** [1] - 1:4
**University** [18] - 7:5, 24:8, 24:10, 24:11, 24:14, 24:17, 25:7, 25:8, 25:9, 25:11, 25:22, 25:24, 26:4, 26:13, 26:21, 31:11, 55:22, 59:4
**University's** [1] - 20:19
**unknown** [1] - 35:10
**unless** [5] - 49:22, 50:19, 61:7, 68:5, 86:25
**unlikely** [1] - 81:18
**unmarked** [7] - 73:24, 75:22, 77:5, 77:25, 78:9, 81:11, 81:18
**unnecessary** [1] - 44:15
**unreasonable** [1] - 6:8
**unrelated** [3] - 62:7, 62:8, 71:7
**unsupported** [1] - 87:25
**up** [28] - 9:21, 15:2, 15:7, 15:22, 16:19, 16:21, 20:18, 20:21, 21:8, 24:22, 27:8,

27:20, 29:4, 30:11, 30:20, 34:17, 34:19, 35:7, 36:12, 38:15, 39:18, 44:10, 59:18, 73:25, 82:22, 83:4, 85:8, 87:3
**updated** [1] - 13:2
**urge** [1] - 89:24
**usual** [1] - 74:4
**UT** [79] - 4:5, 5:21, 6:2, 6:25, 22:17, 24:10, 24:14, 25:1, 25:2, 25:14, 25:24, 26:4, 26:13, 26:19, 26:21, 36:23, 36:24, 39:4, 42:16, 42:17, 42:19, 56:20, 62:10, 63:6, 64:3, 67:6, 67:11, 67:17, 69:3, 69:6, 69:11, 70:20, 71:18, 71:22, 71:25, 72:3, 72:7, 72:12, 72:19, 72:21, 75:14, 75:18, 75:21, 75:25, 76:4, 76:15, 76:23, 77:1, 77:4, 77:8, 77:11, 78:17, 78:18, 79:1, 79:5, 79:8, 79:15, 80:3, 80:5, 80:13, 80:14, 80:16, 80:21, 80:24, 81:3, 81:5, 81:7, 81:9, 81:10, 81:12, 81:17, 81:19, 83:7, 83:20, 88:21, 89:14, 89:15
**UT's** [13] - 4:1, 4:8, 6:22, 62:6, 62:9, 62:13, 62:21, 63:9, 63:12, 65:8, 80:1, 80:8
**UTBOR** [32] - 24:23, 25:1, 25:2, 26:13, 26:24, 27:18, 30:1, 31:1, 36:3, 36:21, 37:12, 45:10, 45:14, 45:17, 45:23, 54:2, 54:18, 56:20, 57:1, 57:4, 57:6, 57:8, 57:11, 57:13, 57:15, 57:17, 57:19, 57:22, 57:24, 58:3, 58:8, 59:14
**utilizing** [1] - 63:2

### V

**vague** [2] - 8:21, 9:8
**validity** [3] - 31:21, 36:6, 55:23
**value** [2] - 62:18,

71:11
**vast** [1] - 5:16
**VEGF** [3] - 76:17, 76:25, 79:18
**verdict** [12] - 32:16, 45:8, 47:4, 48:9, 51:17, 56:23, 56:25, 60:12, 60:20, 61:6, 61:15, 61:17
**version** [3] - 11:8, 13:12, 62:2
**versions** [2] - 62:3, 78:13
**versus** [1] - 3:9
**via** [2] - 12:1, 71:23
**video** [3] - 29:16, 29:20, 30:19
**view** [2] - 31:14, 67:13
**voir** [4] - 24:4, 26:16, 28:21, 61:21

### W

**Waco** [1] - 90:14
**waiting** [1] - 82:25
**waiving** [1] - 40:3
**wants** [3] - 23:3, 29:9, 49:6
**waste** [2] - 4:24, 6:5
**web** [1] - 70:3
**Wedeen** [1] - 3:21
**WEDEEN** [1] - 2:14
**Wednesday** [11] - 22:17, 22:21, 35:2, 35:16, 37:6, 42:21, 43:15, 56:18, 60:25, 88:23, 89:15
**week** [8] - 13:3, 32:15, 32:19, 33:14, 34:5, 37:5, 37:20, 60:25
**weeks** [1] - 90:10
**weight** [2] - 62:9, 62:10
**WEINBLATT** [1] - 2:3
**whatsoever** [1] - 19:14
**whole** [5] - 13:23, 21:1, 26:24, 43:25, 72:2
**Willful** [1] - 54:24
**willful** [1] - 57:11
**willfulness** [4] - 15:9, 22:9, 68:14, 72:11
**WILLIAMS** [1] - 1:14
**Wilmington** [1] - 1:10
**win** [3] - 55:18, 81:12, 81:19
**window** [1] - 14:21
**wires** [1] - 69:17
**wish** [1] - 88:13

**witness** [18] - 12:13,
12:15, 13:8, 13:10,
13:18, 13:19, 16:21,
68:1, 68:4, 76:5,
77:12, 84:25, 85:14,
86:18, 86:20, 88:14
**witness'** [1] - 25:16
**witnesses** [21] - 12:6,
12:19, 12:20, 12:23,
13:2, 13:4, 13:7,
13:13, 13:14, 14:9,
16:24, 21:10, 25:6,
25:7, 25:19, 26:10,
30:19, 31:2, 85:3,
86:24
**won** [1] - 55:22
**wondering** [1] - 31:14
**Word** [1] - 62:3
**word** [4] - 40:11,
40:23, 44:13, 87:8
**words** [6] - 32:6,
33:15, 34:14, 69:17,
69:18, 84:19
**works** [1] - 51:14
**worse** [1] - 18:18
**writing** [3] - 84:24,
85:9, 85:15
**written** [2] - 41:16,
44:24

## Y

**year** [1] - 4:14
**years** [6] - 4:13, 4:18,
4:25, 20:15, 20:16,
49:5
**Yen** [2] - 13:9, 14:4
**Yen-Lane** [2] - 13:9,
14:4
**yes/no** [1] - 65:25
**your..** [1] - 25:4