**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOARD OF REGENTS, THE<br>UNIVERSITY OF TEXAS SYSTEM<br>and TISSUEGEN, INC., | ) ) ) | |
| | ) | |
| *Plaintiffs*, | ) | C.A. No. 1:18-cv-00392-GBW |
| | ) | |
| v. | ) | |
| | ) | |
| BOSTON SCIENTIFIC<br>CORPORATION, | ) ) | |
| | ) | |
| *Defendant*. | ) | |

## FINAL JURY INSTRUCTIONS
## (PHASE 2)

# TABLE OF CONTENTS

1.    GENERAL INSTRUCTIONS ........................................................................... 1
  1.1    INTRODUCTION ................................................................. 1
  1.2    ISSUES PRESENTED IN PHASE 2.................................... 2
  1.3    BURDENS OF PROOF .......................................................... 3
2.    WILLFUL INFRINGEMENT ....................................................................... 4
3.    INDUCED INFRINGEMENT...................... **ERROR! BOOKMARK NOT DEFINED.**
4.    DAMAGES........................................................................................... 7
  4.1    DAMAGES GENERALLY ................................................... 7
  4.2    REASONABLE ROYALTY—THE ANALYTICAL METHOD ....................... 8
  4.3    REASONABLE ROYALTY—THE "HYPOTHETICAL
         NEGOTIATION" METHOD ................................................. 9
  4.4    REASONABLE ROYALTY—RELEVANT FACTORS TO THE
         HYPOTHETICAL NEGOTIATION METHOD................................ 10
  4.5    DAMAGES—APPORTIONMENT ...................................... 13
  4.6    DAMAGES—AVAILABILITY OF NON-INFRINGING
         ALTERNATIVES................................................................ 14
  4.7    DAMAGES—DATE OF COMMENCEMENT OF DAMAGES...................... 15
5.    DELIBERATION AND VERDICT ............................................................... 17

## 1.    GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION

Members of the jury: now it is time for me to instruct you about the law that you must follow in deciding this case.

I have given you instructions at the beginning of each phase and before you began deliberations for Phase 1. I will not repeat those instructions now. Instead, I will only explain the positions of the parties and the law you will apply in this phase. Please listen very carefully to everything I say. You will have a written copy of the instructions I have given you previously and of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2    ISSUES PRESENTED IN PHASE 2

During this phase of the case, you must decide the following issues according to the instructions that I give you:

1.    Whether Plaintiffs UTBOR and TissueGen have proven by a preponderance of the evidence that Boston Scientific's infringement of one or more claims of the '296 Patent was willful;

2.    Whether Plaintiffs UTBOR and TissueGen have proven by a preponderance of the evidence that Boston Scientific actively induced infringement by Boston Scientific Limited [a Boston Scientific subsidiary];

3.    Whether Plaintiffs UTBOR and TissueGen have proven by a preponderance of the evidence the amount of money damages adequate to compensate them for Boston Scientific's infringement.

### 1.3    BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In this phase of the case, Plaintiffs UTBOR and TissueGen bear the burden of proof on the issues. Plaintiffs UTBOR and TissueGen have the burden of proving willful infringement, the amount of money damages, and induced infringement by a "preponderance of the evidence." That means UTBOR and TissueGen had to prove to you, in light of all the evidence, that what they claim is more likely true than not. To say it differently, if you were to put the evidence of UTBOR and TissueGen and the evidence of Boston Scientific on opposite sides of a scale, the evidence supporting UTBOR's and TissueGen's claims would have to make the scales tip slightly to their side in each instance. If the scale should remain equal or tip in favor of Boston Scientific, you must find for Boston Scientific.

**2.      WILLFULNESS**

Because you have found that Boston Scientific infringed one or more claims of the '296 patent, then you must now also determine whether or not such infringement was willful.

To show that infringement was willful, Plaintiffs must prove by a preponderance of the evidence that Boston Scientific knew of the '296 patent and intentionally infringed at least one asserted claim of the patent. To show willfulness, you must find that Boston Scientific has engaged in conduct evidencing deliberate or reckless disregard for the Plaintiffs' patent rights. However, you may not find that infringement was willful merely because Boston Scientific knew about the '296 patent, without more. In determining whether Plaintiffs have proven that Boston Scientific's infringement was willful, you must consider all the circumstances and assess Boston Scientific's knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

3.    **INDUCED INFRINGEMENT**

[**Plaintiffs:** Because you have found that Boston Scientific Limited [a Boston Scientific subsidiary] directly infringed one or more claims of the '296 patent, you must now also determine whether or not Boston Scientific actively induced such infringement.]

Boston Scientific is liable for active inducement of a claim only if Plaintiffs UTBOR and TissueGen prove by a preponderance of the evidence:

(1) that acts actually carried out by Boston Scientific Limited directly infringed that claim;

(2) that Boston Scientific took action during the time the '296 patent was in force that was intended to cause and led to the infringing acts by Boston Scientific Limited; and

(3) that Boston Scientific was aware of the '296 patent and knew that the acts, if taken, would constitute infringement of that patent, or that Boston Scientific believed there was a high probability that the acts by Boston Scientific Limited would infringe the '296 patent and Boston Scientific took deliberate steps to avoid learning of that infringement.

[**Plaintiffs:** Here, you have already found that Boston Scientific Limited directly infringed the '296 patent, which satisfies the first element. In this Phase of trial, you must determine whether UTBOR and TissueGen have proven by a preponderance of the evidence elements (2) and (3).]

[**Boston Scientific:** improper, unnecessary, prejudicial]

If you find that Boston Scientific was aware of the patent, but believed that the acts it encouraged did not infringe that patent, Boston Scientific cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that Boston Scientific Limited directly infringed the claim. Nor is it sufficient that Boston Scientific was aware of the acts by Boston Scientific Limited that allegedly constituted the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Boston Scientific specifically intended Boston Scientific Limited to infringe the '296 patent or that Boston Scientific

believed there was a high probability that Boston Scientific Limited would infringe the '296 patent, but deliberately avoided learning the infringing nature of Boston Scientific Limited's acts. The mere fact, if true, that Boston Scientific knew or should have known that there was a substantial risk that Boston Scientific Limited's acts would infringe the '296 patent would not be sufficient to support a finding of active inducement of infringement.

4.      **DAMAGES**

4.1      **DAMAGES GENERALLY**

Given that Boston Scientific has infringed a valid claim of the '296 patent, you must consider what amount of damages to award Plaintiffs UTBOR and TissueGen for Boston Scientific's infringement. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

Plaintiffs UTBOR and TissueGen have the burden to establish the amount of their damages by a preponderance of the evidence. In other words, you should award only those damages that UTBOR and TissueGen establish that they more likely than not have suffered. While the Plaintiffs UTBOR and TissueGen are not required to prove the amount of their damages with mathematical precision, they must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork. The damages you award must be adequate to compensate Plaintiffs UTBOR and TissueGen for Boston Scientific's infringement. They are not meant to punish an infringer.

## 4.2   REASONABLE ROYALTY—THE ANALYTICAL METHOD

Plaintiffs UTBOR and TissueGen allege that they are owed a reasonable royalty as compensation for Boston Scientific's infringement. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires you to determine the value added only by the patented features, because the royalty you award should be only for the incremental value added by the patented features.

There are many acceptable methods of calculating a reasonably royalty. One way to calculate a reasonable royalty, called the analytical approach, is to subtract the infringer's usual or acceptable net profit from its actual or anticipated net profit realized from sales of infringing devices. The comparison used in an analytical approach must isolate the value of the patented features and no more.

8

### 4.3    REASONABLE ROYALTY—THE "HYPOTHETICAL NEGOTIATION" METHOD

Another way to determine a reasonable royalty is through the hypothetical negotiation approach. Under this approach, the reasonable royalty is the amount of royalty payment that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

### 4.4   REASONABLE ROYALTY—RELEVANT FACTORS TO THE HYPOTHETICAL NEGOTIATION METHOD

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent(s):

1.   Any royalties received by Plaintiffs UTBOR (or TissueGen) for the licensing of the patent-in-suit, to the extent those royalties prove or tend to prove an established royalty.

2.   The rates paid by Boston Scientific to license other patents comparable to the '296 patent.

3.   The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.   Plaintiffs UTBOR and TissueGen's established policy and marketing program (if any) to maintain its right to exclude others from using the patented inventions by not licensing others to use the inventions, or by granting licenses under special conditions designed to preserve that exclusivity.

5.   The commercial relationship between the two plaintiffs and Boston Scientific, such as whether or not they are competitors in the same territory in the same line of business.

6.   The effect of selling the patented product in promoting other sales of Boston Scientific, the existing value of the inventions to Plaintiffs UTBOR and TissueGen as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.   The duration of the '296 patent and the term of the license.

8.   The established profitability of the accused products; their commercial success; and their popularity.

10

9.      The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented inventions; the character of the commercial embodiments of it as owned and produced by or for the licensor; and the benefits to those who have used the inventions.

11.     The extent to which the infringer (Boston Scientific) has made use of the inventions; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

13.     The portion of the profit that arises from the patented inventions themselves as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as UTBOR or TissueGen) and a licensee (such as Boston Scientific) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article or process embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

11

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

### 4.5    DAMAGES—APPORTIONMENT

For any damages you award, the amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Boston Scientific's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

### 4.6     DAMAGES—AVAILABILITY OF NON-INFRINGING ALTERNATIVES

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing alternatives to the patented invention. A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not require using the asserted claims in the United States. You may consider whether a party had the necessary equipment, know-how, and experience to implement the alternative and the time and cost to the party of implementing the alternative. An acceptable alternative must be a product that is licensed under the patent or that does not infringe the patent.

### 4.7     DAMAGES—DATE OF COMMENCEMENT OF DAMAGES

In determining the amount of damages, you must determine when the damages period begins. UTBOR and TissueGen contend that damages begin on November 20, 2011. Boston Scientific contends that damages should not begin until the date that UTBOR and TissueGen filed this lawsuit, which was November 20, 2017.

You must first determine whether UTBOR and TissueGen can prove by a preponderance of the evidence that they did not make, offer to sell, or sell any products in the United States that practiced the '296 patent prior to November 20, 2017. You should only consider products that were shown or sold to third parties with whom there was no confidential agreement. If you find that UTBOR and TissueGen can prove that they did not make, offer to sell, or sell any products that practiced the '296 patent prior to November 20, 2017, then you should award damages beginning on November 20, 2011.

If you find that UTBOR and TissueGen made, offered to sell, or sold products that practiced the '296 patent in the United States prior to November 20, 2017, then you must begin the damages period on the date that UTBOR and TissueGen first notified Boston Scientific of their claim for patent infringement. UTBOR and TissueGen must prove by a preponderance of the evidence that Boston Scientific was put on notice of the claim for patent infringement as of the date UTBOR and TissueGen allege.

UTBOR and TissueGen can prove by a preponderance of the evidence that they gave notice in either of two ways. First, TissueGen may prove that it gave notice to the public in general by marking substantially all products it made, offered for sale, or sold within the United States that practiced the '296 patent as patented. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the

15

patented invention. The marking requirement may also be satisfied by including with the product an internet address to a posting that associates the patented articles with the number of the applicable patents. Since UTBOR is not alleged to have made, offered for sale, or sold any products that practice the '296 patent, you may find that UTBOR, but not TissueGen, complied with the "marking" requirement if UTBOR can prove by a preponderance of the evidence that it made reasonable efforts to ensure compliance with the marking requirements by its licensees, including by TissueGen.

A second way UTBOR and TissueGen can prove that they gave notice of the '296 patent is to prove that they directly notified Boston Scientific with a specific claim that the Synergy stents infringed the '296 patent. However, Boston Scientific's knowledge of a specific infringing device is not a legal prerequisite to such a finding. Instead, UTBOR and TissueGen must prove by a preponderance of the evidence that Boston Scientific knew of the '296 patent and of the alleged infringement by the Synergy stent. If you find this type of "actual notice," then damages start from the date Boston Scientific received the actual notice.

In summary, your damages award may begin no earlier than November 20, 2017 unless UTBOR and TissueGen can prove one of the following by a preponderance of the evidence: (i) they did not make, offer to sell, or sell products in the United States that practiced the '296 patent before November 20, 2017; (ii) they complied with the marking requirements before November 20, 2017; or (iii) they complied with the actual notice requirement before November 20, 2017.

5.      **DELIBERATION AND VERDICT**

I have completed my instructions on the law. All the instructions I gave you previously about the rules for deliberations still apply, and you will have a copy of them with you.

I will remind you that, when you start deliberating, do not talk to the jury officer, to me, or to anyone but each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole, including the instructions I gave you previously. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourself based on the evidence presented.

You may now retire and continue your deliberations.