

January 23, 2023

<small>Via E-Filing</small>
The Honorable Gregory B. Williams
844 N. King Street
Unit 26, Room 6124
Wilmington, DE 19801

> RE:   ***Board of Regents, Univ. of Texas Sys., et al. v. Boston Scientific Corp.***
> <u>**C.A. No. 18-cv-392-GBW**</u>

Dear Judge Williams:

Boston Scientific ("BSC") submits this response to Plaintiffs' letter brief regarding a "Stipulated Facts Dispute" to correct several inaccuracies by and disagreements with Plaintiffs. (D.I. 283.) The letter brief filed by Plaintiffs on January 18, 2023 purported to provide the Court with an "update" on the meet and confer, but also made arguments regarding the substance of its request. Below, BSC responds to Plaintiffs' arguments regarding (a) the "stipulation" proposed by Plaintiffs, (b) BSC's objections to Plaintiffs' proposal, and (c) the meet and confer.  Separately, pursuant to the Court's Order on January 19, 2023 (D.I. 291), BSC has filed a chart separately addressing each of the "facts" proposed by Plaintiffs.

## A.  Plaintiffs' Improper Request to Supplement the "Joint Statement of Uncontested Facts"

First, it is important to clarify that the "stipulation" proposed by Plaintiffs is a massive supplementation to the "Joint Statement of Uncontested Facts,"[1] which is different than Plaintiffs' prior request for "judicial notice."[2] Plaintiffs' request to supplement the "Joint Statement of Uncontested Facts" is improper and highly prejudicial to BSC.

The Local Rules provide that, prior to a pretrial conference, the parties shall jointly submit a proposed pretrial order including a "statement of the facts which are admitted and require no

---

[1] Plaintiffs' proposed supplementation to the "Joint Statement of Uncontested Facts" was sent to BSC on January 16, 2023, 4 days after the Pretrial Conference. (Ex. A (email/attachment sent by Plaintiffs at 5:11 p.m. on January 16).) Plaintiffs' proposed "Joint Statement of Uncontested Facts" included 99 separate statements, including new statements not previously proposed for "judicial notice." (*Compare* D.I. 266-20 (Plaintiffs' previous request for "judicial notice").)

[2] Previously, in December 2022, Plaintiffs sought "judicial notice" of 106 paragraphs of information. (D.I. 266-20 ("Plaintiffs' Application for Judicial Notice).) Plaintiffs are no longer seeking "judicial notice" of any facts. (D.I. 283 at 3 (no request for "judicial notice").) Rightfully so. None of the statements in Plaintiffs' proposal are appropriate for "judicial notice." (D.I. 262 at 18-20 (BSC's opposition to Plaintiffs' previous request for "judicial notice" explaining why "judicial notice" is improper); *see also* D.I. 288 at 3-4 (Pretrial Conference Transcript ("COURT: The first thing I wanted to talk about or deal with was to the UT's application for judicial notice. There's a statement of uncontested facts and that's sort of where you deal with those types of issues.").)  Plaintiffs' cited cases on "judicial notice" are therefore irrelevant (D.I. 283 at n.9, n.10), but also do not apply for the same reasons previously submitted (D.I. 262 at 17-18).

proof." L.R. 16.3(c)(3). Accordingly, in December, the parties worked together to compile and file a "Joint Statement of Uncontested Facts," including 17 paragraphs about the parties, the Asserted Patents, and the Accused Products. (D.I. 266-1.) Because what was going to be included in the Joint Statement needed to be **jointly agreed to**, the parties voluntarily waived all objections to the uncontested facts recited in the "Joint Statement of Uncontested Facts" and agreed that such statements could be read or introduced to the jury "**at any time without prior notice**:"

> Per agreement of the parties, the facts listed in Exhibit 1 are not contested for purposes of trial.  These uncontested facts shall require no proof at trial and will become part of the evidentiary record at trial once introduced to the jury.  **Any party may read or introduce any of the uncontested facts to the jury at any time without prior notice and the jury should be instructed that the undisputed facts are to be taken as true in their deliberations.**

(D.I. 262 at 5.)  BSC only agreed to this procedure because it understood that (a) the Joint Statement would include basic facts, not facts that relate to hotly contested issues, and (b) no fact—whether admitted in the case or not—could be included in the Joint Statement unless BSC **jointly agreed** to include it. This limitation was important because the "facts" in the Joint Statement could be read to the jury at "any time with prior notice."

At the Pretrial Conference, the Court ordered the parties to meet and confer to "try to reach agreement on those statements of fact that are clearly admitted." (D.I. 288 at 5.) Four days later, Plaintiffs sent BSC a "revised" proposal titled "Joint Statement of Uncontested Facts" with 99 separate statements. (Ex. A.) Plaintiffs' proposal to BSC was that all 99 statements may be read or introduced to the jury **"at any time without prior notice."** (Ex. B at 3 (Plaintiffs' January 16, 2023 Proposal).) In a good faith effort to narrow the dispute, BSC agreed to accept 29 statements proposed by Plaintiffs—including Statement No. 6, which Plaintiffs incorrectly state was "refused" by BSC.  (Ex. B (BSC's compromise proposal sent to Plaintiffs on January 18, 2023); *compare* D.I. 283 at 2 n.6 (incorrectly stating that Statement No. 6 was "refused" and citing no other examples).) However, as discussed below, the remaining statements are not appropriate for a "Joint Statement of Uncontested Facts" and BSC thus maintained its objections.

There is no procedural or legal basis for Plaintiffs' request to "compel" a "stipulation" to their proposed "Joint Statement of Uncontested Facts." Plaintiffs cite no local rules, federal rules, or case law supporting a party's request to "compel" a "stipulation" from an opposing party—or contemplating a forced-supplementation to a "Joint Statement of Uncontested Facts" submitted under Rule 16.3(c)(3). BSC cannot be forced to preemptively waive valid objections under the Federal Rule of Evidence, including Rule 402 and 403 objections. Again, Plaintiffs proposed to BSC that the 99 statements may be read or introduced to the jury **"at any time without prior notice."** (Ex. B at 3.) To be clear, even if statements were clearly admitted in the pleadings—*which is not the case here*—that does not mean such statements are "relevant" under Rule 402 or that such statements will not raise Rule 403 concerns such as "unfair prejudice, confusing the issues, confusing the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 402, 403. Plaintiffs cannot force BSC to preemptively waive all 402 and 403 objections—or objections that statements that would violate the Court's bifurcation order reserving certain issues for Phase Two of the trial (D.I. 260). Indeed, it would be a rare occurrence for a plaintiff to present its case to the jury through 99 "stipulated facts."

In addition, Plaintiffs cite no precedent for transforming the "Joint Statement of Uncontested Facts" from an agreed-upon "statement of facts which are admitted and require no proof" (as contemplated by L.R.16.3(c)(3)) into a heavily-skewed, highly-prejudicial document that is focused on Plaintiffs' view of the case. This would be manifestly unfair. The Local Rules contemplate a meet and confer process wherein the parties jointly compile and submit a "statement of the facts which are admitted and require no proof." L.R. 16.3(c)(3). There is nothing about L.R. 16.3(c)(3) that contemplates an adversarial, fact-finding process to be conducted weeks or days before trial, wherein one party contends that statements favorable to its own case are "admitted" and moves to "compel" a "stipulation" to such statements. Certainly, if this was supposed to be an adversarial, fact-finding process, BSC would have submitted statements from Plaintiffs' submissions to the Court, Plaintiffs' 30(b)(6) deposition, or Plaintiffs' other witnesses where Plaintiffs made admissions favorable to BSC's case. But that is not the practice in this District.

Accordingly, the Court should reject Plaintiffs' improper attempt to modify the parties' Joint Statement of Uncontested Facts that was filed with the Court on December 20, 2022 for the reasons stated above—and for the additional reason that Plaintiffs have not even attempted, nor can they meet, the manifest injustice standard required to amend the Pretrial Order. D.I. 262 at 21.

**B. The Statements in Plaintiffs' Proposal Are Not "Admitted" Facts**

In addition to the procedural issues, Plaintiffs' proposal is also improper because Plaintiffs' proposed statements are not straightforward "admissions" from BSC's Answer, as Plaintiffs have represented. BSC is not changing its positions stated in its Answer. But Plaintiffs are taking extreme liberties with their proposals—among other issues, Plaintiffs' omit/ignore clear denials and limiting language from BSC's Answer and substantially revise the language from BSC's Answer, removing words, phrases, and sentences that were unfavorable to Plaintiffs. Numerous additional issues are discussed below and identified in BSC's responsive chart (filed herewith).

1. **Plaintiffs' proposal includes 26 statements that BSC already agreed to.** (*See* Statement Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 20, 21, 23, 24, 25, 26, 27, 28, 29, 59, 60, 61.) Pursuant to the Court's instructions at the Pretrial Conference, BSC made a good faith effort to find statements within Plaintiffs' proposal to which BSC could agree—Plaintiffs are acting as if that never happened. BSC has been more than reasonable, agreeing to as many statements as it can, in an effort to narrow this dispute.

2. **Numerous statements have no relevance to Phase One.** For example, certain statements relate only to damages. (*See* Statement No. 55 ("In 2006, Boston Scientific paid approximately $540 million dollars to acquire Guidant's everolimus-eluting stent technology.").) In addition, Plaintiffs have included a whole category that they call "Boston Scientific's Prior Interactions With TissueGen." (Chart ¶¶ 30-52.) For example, Plaintiffs cherry-pick statements from U.S. Patent Application No. 11/395964 ("Strickler Application") (*see*, e.g. Statement Nos. 30-40) and highlight that it cites to the '296 Patent. Moreover, numerous statements refer to correspondence between Kevin Nelson and Mary Beth Moynihan, who will be a live trial witness in Phase Two, or Kevin Ballinger, who will testify by deposition in Phase Two. (*See*, e.g. Statement Nos. 42-44, 46-51.)  Plaintiffs include such statements only for purposes of demonstrating alleged knowledge and intent related to the '296 Patent, which the Court has ruled are only relevant to Phase Two of trial and may not be presented in Phase One of trial.

3. **In numerous instances throughout the proposal, Plaintiffs have improperly rewritten statements from BSC's Answer to make them more advantageous for Plaintiffs**, including by removing and words, phrases, and sentences that appeared in Plaintiffs' Complaint and/or BSC's Answer (or by adding language that does not appear in BSC's Answer). (*See*, e.g., Statement Nos. 96, 97 (BSC's Answer stated: "Boston Scientific admits that Boston Scientific has continued to import and sell SYNERGY Stents since November 2017 because they do not infringe any valid claim of the '296 Patent." Plaintiffs have improperly removed the phrase "because they do not infringe any valid claim of the '296 Patent" and have split the remaining words into two separate paragraphs.); *see also* Nos. 95 (removing first sentence); 92-93 (removing sentences); 65-66 (rewriting sentences); 67-71 (rewriting sentences); 72 (removing sentences, rewriting sentences); 84 (removing multiple portions of sentence); 85 (removing multiple portions of sentences); 92-93 (rewriting sentences and omitting sentences). Numerous additional examples are noted in the chart submitted herewith. Plaintiffs cannot edit the language of the pleadings to make statements more advantageous for Plaintiffs—and then declare that Plaintiffs' newly-drafted statements were nonetheless ***"admitted"*** in the pleadings.[3]

4. **In numerous instances, Plaintiffs have improperly rewritten statements from BSC's Answer to remove references to documents—now asserting that certain words, phrases, or sentences from the documents are factually undisputed, when that is not what the Complaint alleged and not what the Answer admitted.** (*See*, e.g. Statement Nos. 72 (removing references to SSED document); 74-76 (removing references to SSED document); 77-78 (removing references to website); 86-90 (removing references to SSED document). In each of these instances, the Complaint alleged only that words appeared in documents or on a website. Now, Plaintiffs pluck out-of-context words from the documents—removing other words from the document that were recited in BSC's Answer—and assert that Plaintiffs' cherry-picked, out-of-context words are factually undisputed, which is an incorrect characterization of the pleadings. In each of these instances, Plaintiffs also ignore clear statements in BSC's Answer that BSC ***"denied"*** the allegation "[t]o the extent the allegations [] attempt to characterize the SSED [document]," which Plaintiff is attempting to do.

5. **In other instances, Plaintiffs' proposed statements merely recite select words or phrases from documents, with vague references (or no references) to the underlying document**. (*See*, e.g. Statement No. 48 ("A portion of the April 17, 2009 email states . . . ."); *see also* Statement Nos. 46, 47, 49, 50; *see also* Statement No. 73 (Plaintiff edited the statement from BSC's Answer to omit reference to the underlying document).) For example, Chart ¶ 72 states: "The metal of the SYNERGY Stent is laser cut into a specific geometric pattern which consists of serpentine rings connected by links that are highly polished to a uniform rounded surface." BSC's Answer did not admit that statement. Rather, Plaintiffs' Complaint alleged: "BSX has

---

[3] Plaintiffs improperly suggest that the Court should take on the enormous task of rewriting Plaintiffs' proposal to fix the inaccuracies in their proposals. (D.I. 283 at n. 10 ("The Court can . . . amend the language if the Court believes the [proposed] stipulation language is inaccurate . . . .").) The Court should decline this suggestion that would shift the work of careful drafting to the Court two days before trial. Plaintiffs have had numerous opportunities to submit carefully-drafted proposals to the Court, beginning with their requests for "judicial notice" in December. Their choice to depart from the language of the pleadings was strategic and intended to benefit Plaintiffs.

represented the following to third parties" and then quoted an unidentified document. BSC's Answer responded: "Boston Scientific admits that paragraph 66 [of the Complaint] appears to be reciting portions of the SSED for the PMA No. P150003/SO58." BSC specifically stated: "To the extent the allegations in paragraph 66 attempt to characterize the SSED, Boston Scientific **denies** that allegation." Plaintiffs' proposal removes all reference to the SSED document and instead purports that cherry-picked words within the SSED document are factual admissions, which is an incorrect characterization of the pleadings.

6. **In five statements, Plaintiffs merely recite certain words, phrases, or sentences from the '296 Patent—words that were cherry-picked from the '296 Patent because Plaintiff views them as helpful to its case.** (*See*, e.g., Statement No. 17 ("A portion of the '296 Patent states . . ."); *see also* Statement Nos. 15-16, 18-19.) There is no dispute in this case about the literal language that appears in the '296 Patent, but the significance of certain language is hotly-disputed. BSC's Answer admitted that the words quoted in the Complaint appeared in the text of the '296 Patent, but also **denied** each allegation to the extent the allegations attempt to characterize the '296 Patent. (*See*, e.g., Statement No. 17 ("To the extent the allegations in paragraph 45 [of the Complaint] attempt to characterize the '296 Patent, Boston Scientific **denies** that characterization.").) Plaintiffs' proposal to include Plaintiffs' cherry-picked excerpts from the '296 Patent in the Joint Statement of Uncontested Facts—but not other language that Plaintiff finds unhelpful—is an improper attempt to characterize the '296 Patent and creates a substantial risk of jury confusion and prejudice, as jurors could incorrectly believe that *issues related to* those five statements are undisputed. The '296 Patent is already on the Joint Exhibit List and neither party objects to its admission. (D.I. 263-12.) Given the risks of juror confusion and prejudice, it is unnecessary and improper to include Plaintiffs' five favorite statements in the "Joint Statement of Uncontested Facts."

7. Plaintiffs' statements relating to the "Procedural History," (*see* Statement Nos. 91-99), provide a **misleading and inaccurate overview of the procedural history and/or claims** and would be improper to recite to the jury. For example, Plaintiffs want to tell the jury it is uncontested that "Boston Scientific's original answer did not include a counterclaim for invalidity" and that "35 U.S.C. § 315 barred Boston Scientific from filing a petition for inter partes review to challenge validity of the '296 Patent." (Statement Nos. 93-94.) This could suggest to the jury that BSC has not challenged the validity of the '296 Patent when it absolutely has. The only reason that Plaintiffs are proposing these isolated procedural facts for the "Joint Statement of Undisputed Facts" is to confuse the jury. For example, No. 93 asserts: "Boston Scientific's original answer did not include a counterclaim for invalidity." It is undisputed that BSC has challenged the validity of the '296 Patent and the jury will decide validity at trial.

8. Certain statements in Plaintiffs' proposal **were never mentioned in Plaintiffs' Complaint or Defendants' Answer**. (*See*, e.g., Statement Nos. 98-99.) Plaintiffs provide no reason that these new statements must be deemed "uncontested."

9. **Plaintiffs incorrectly construe legal contentions as "facts"** and fail to mention that BSC objected to certain statements because they are legal contentions. (*See*, e.g., Statement No. 94 (BSC's Answer Stated: "The allegations in Paragraph 75 are legal conclusions to which no answer is required.").)

10. In Statement No. 58, Plaintiffs are attempting to **remove a previously-agreed upon statement** from the "Joint Statement of Uncontested Facts" that was filed December 20, 2022.

11. An entire section of statements recites **irrelevant detailed information about certain aspects of everolimus**. (Statement Nos. 79-83.) For example, Plaintiffs want to tell the jury it is uncontested that "Everolimus is a primary alcohol, a secondary alcohol, an ether, a cyclic ketone, a cyclic acetal, and a macrolide lactam," (No. 83), and that "Everolimus is a macrocyclic lactone that is related to rapamycin by substituting a 2-hydroxyethyl ether for the hydroxy group attached to the cyclohexyl moiety," (No. 80). These detailed statements are not relevant to the disputed issues before the jury and would only serve to confuse the jury. Moreover, it is highly unlikely that Plaintiffs will actually rely on such statements in the presentation of their case. Instead, it appears that Plaintiffs simply want to have a long list of "99 admissions" that they can wave around to the jury.

**C. Meet and Confer**

Finally, BSC wishes to briefly respond to Plaintiffs' inaccurate "update" on the meet and confer that occurred on January 17, 2023. Any suggestion that BSC was "not prepared" for the meet and confer or that BSC failed to respond to Plaintiffs' proposal is incorrect. I attended the meet and confer on behalf of BSC, along with Lauren Barta and Kate Razavi from Faegre Drinker. I strongly disagree with Plaintiffs' characterization of the meet and confer. Despite Plaintiffs' late disclosure of a "revised" proposal on Tuesday night, BSC attended the meet and confer on Wednesday morning in good faith prepared to discuss the parties' positions and expected to narrow the dispute. Compromise was quickly taken off the table by ***Plaintiffs***, whose conduct during the call was combative and not productive. While BSC offered to send a compromise proposal, Plaintiffs' counsel (Mr. Shore) made clear that he was not interested in receiving any compromise proposal from BSC, stating: "Either you're going to admit to all of them or we're going to the Court" and "I will tell you right now, we are not accepting any edits." This was later confirmed in the emails that Plaintiffs attached to their letter brief. (D.I. 283-1 at 2 (Plaintiffs stating: "There is no 'compromise' on admitted facts.").) In a continued good faith attempt to narrow the dispute, BSC nonetheless sent Plaintiffs its compromise proposal the next morning on January 18. As predicted, it had no impact on Plaintiffs, who quickly dismissed BSC's proposal and filed their letter brief anyway.

Respectfully submitted,

/s/ *Michael J. Farnan*

Michael J. Farnan

cc:      Counsel of Record (via E-File)

6